FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

FEB 0 6 2013

BY D. MARK JONES, CLERK

DEPUTY CLERK

Wm. Hart
324 Hickory St., #8
Carlinville, Ill., 62626
(618) 570 – 9068

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH − CENTRAL DIVISION

WILLIAM MICHAEL HART,                    :

:         **AMENDED COMPLAINT**

        Plaintiff              :         AND JURY DEMAND

                             :

             v.                :

                             :         Civil No. 2:13-cv-011-DAK-BCW

SHERRY ANN SALOIS; TIMOTHY STRAUSSNER;   :

SHIRLEY HOPPER; BURL HOPPER; DOUGLAS     :

HOWARD; PEGGY PENDLETON; KATHERINE       :         District Judge Dale A. Kimball

WESSLING; REBECCA BEALMEAR; DOUGLAS      :

BEACH; JAMES VAN AMBURG; JANE DOE;       :

LEGAL ADVOCATES FOR ABUSED WOMEN;        :         Magistrate Brooke C. Wells

AIMEE NASSIF; CHERYL KELLY; JENNIFER     :

DOERING; KYLE DUBBERT; CITY OF CLAYTON,  :

MISSOURI; THOMAS J. BYRNE; EDWARD        :

HINRICHS; CITY OF OAK CREEK, WISCONSIN;   :

JOHN EDWARDS; OFFICER GALLAGHER; ST.   :

LOUIS COUNTY, MISSOURI; TIM FITCH; SGT.   :

HOOTS; TIMOTHY LACHANCE; TERRY   :

ROBERDS; DET. O'NEILL; OFFICER   :

WILLMERING; PLATTE COUNTY, MISSOURI;   :

RICHARD ANDERSON; ERIK HOLLAND;   :

UNKNOWN DEPUTY; MICHAEL D. BURTON;   :

ELLEN LEVY SIWAK; VICTORIA MULLEN   :

MCKEE; and THEA A. SHERRY,   :

   :

   Defendants.   :

# TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      1

        A.  Racketeering Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      1

        B.  Deprivation of Civil Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      3

                1.  Racketeering Enterprise  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      4

                2.  Legal Advocates for Abused Women . . . . . . . . . . . . . . . . . . . . . . . .      5

                3.  City of Clayton, Missouri; City of Oak Creek, Wisconsin;

                        St. Louis County: Platte County; State Actors . . . . . . . . . . . . . . . .      5

II.     JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      7

III.    VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      11

IV.     PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      13

        A.  Racketeering Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      14

        B.  Legal Advocates for Abused Women . . . . . . . . . . . . . . . . . . . . . . . . . . .      15

        C.  City of Clayton, Missouri . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      16

        D.  City of Oak Creek, Wisconsin . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      17

        E.  St. Louis County, Missouri . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      17

        F.  Platte County, Missouri . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      18

        G.  State Actors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      19

V.      FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      20

        A.  Racketeering Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      20

                1.  Bankruptcy Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      20

a.  Petition for Bankruptcy ................................. 21

    i.   Review of Petition ................................ 22

    ii.  Review of Declarations from Divorce ................ 24

    iii. Comparison of the Two Sets of Documents ............. 28

    iv.  Concealment within the Declarations Generally ........ 29

b.  Investigation of Assets ................................. 30

c.  Meeting of Creditors (341 Meeting) ...................... 30

    i.   Conspiracy in Alienation of Property .................. 31

    ii.  Concealment and Alienation Generally ................ 33

d.  The Discharge ........................................ 34

2.  Identity Fraud ............................................ 35

a.  Interstate Communication from Defendant Straussner ......... 35

    i.   Threats of Defendant Straussner ..................... 36

b.  The Jinkerson Order .................................. 39

    i.   Report to the Assistant Trustee ...................... 39

    ii.  Compliance with Directive .......................... 39

    iii. Service of Defendant Straussner ..................... 41

c.  The Jinkerson Account and the Jinkerson E-Mails ............ 42

d.  The Jinkerson Profile, The Jinkerson Comments,

    and the Jinkerson Blog ............................... 43

3.  Corrupt Endeavors ........................................ 46

a.  Statements of Law .................................... 47

        i.   Relation to the Bankruptcy .......................... 47

        ii.  Statutory Standards for Adult Abuse Orders

             of Protection in the State of Missouri .............. 48

        iii. Statutory Standards for Foreign Civil Injunctions

             Cognizable in the State of Wisconsin .............. 52

        iv. Rights Secured to Plaintiff by the United States

             Constitution and Its Laws ........................ 55

    b.  The Original Petition .................................. 57

        i.   Fraudulent Representations and Omissions ............. 59

        ii.  Conspiracy with Defendants Wessling

             and Legal Advocates for Abused Women ............ 63

        iii. Relation to the Bankruptcy .......................... 65

        iv. Extension of the Ex Parte Order ...................... 66

    c.  Interference with Process ............................... 67

        i.   Defendant Wessling ............................... 68

4.  Wire Fraud ............................................. 69

    a.  The Sherry Salois Blog ................................. 69

    b.  The Pendleton Comments ............................... 71

    c.  Interstate Communication from Defendant Shirley Hopper ..... 73

    d.  Online Harassment .................................... 74

5.  Extortion under Color of Official Right ........................ 75

    a.  Service of the Ex Parte Order ........................... 75

a.   The Consent Order ............................................ 76

b.   Evidence Tampering ......................................... 78

i.   Defendant Beach ................................. 80

6.   Retaliation and Interference with Revocation .................... 81

a.   Malicious Prosecution .................................. 81

b.   Other Complaints ...................................... 83

c.   The Platte County Order ............................... 84

d.   The Racketeering Enterprise Generally .................... 88

B.  Unlawful Seizure .............................................. 88

1.  The Ex Parte Order ........................................ 88

a.   Corrupt Acts of Defendant Burton ........................ 88

b.   Corrupt Acts of Defendant Siwak ........................ 90

c.   Execution of the Consent Order ......................... 92

2.  Defendant McKee .......................................... 93

3.  Defendant Sherry .......................................... 94

4.  Defendant Legal Advocates for Abused Women ................. 95

C.  Deprivation of Civil Rights ...................................... 96

1.  Clayton Missouri Police Department .......................... 96

2.  Oak Creek Wisconsin Police Department ...................... 97

3.  St. Louis County Missouri Police Department ................... 98

a.   Defendant Hoots ...................................... 98

b.   Defendant Lachance ................................... 99

iv

        c.  Defendant Roberds .................................... 100

        d.  Defendant O'Neill ..................................... 100

        e.  Defendant Willmering ................................. 101

        f.   Defendants Fitch and St. Louis County ..................... 101

    4.  Platte County Missouri Sheriff's Office ......................... 104

VI.  CLAIMS FOR RELIEF .................................................. 106

   A. Racketeering ................................................. 106

     1.  RICO – 18 U.S.C. § 1962(c) ................................. 106

     2.  RICO – 18 U.S.C. § 1962(d) ................................. 110

     3.  UPUAA – Utah Code Ann. 76-10-1603(3) ..................... 113

     4.  UPUAA – Utah Code Ann. 76-10-1603(4) ..................... 117

     5.  NMRA – 30-42-4 (C) NMSA 1978 ........................... 120

     6.  NMRA – 30-42-4 (D) NMSA 1978 ........................... 121

     7.  WOCCA – Wis. Ann. Stat. § 946.83(3) ........................ 122

     8.  WOCCA – Wis. Ann. Stat. § 946.85(2) ........................ 126

   B. Deprivation of Civil Rights under Color of State Law .................. 129

     1.  42 U.S.C. § 1983 ......................................... 129

        a.  Racketeering Enterprise ................................ 129

        b.  Defendant Edward Hinrichs ............................ 132

        c.  Defendant Gallagher .................................. 134

        d.  Defendants Hoots, Roberds, O'Neill, and Willmering ......... 136

        e.  Defendant Timothy Lachance ........................... 138

f.  Defendant Erik Holland ................................. 141

g.  Defendant Unknown Deputy ........................... 143

h.  Defendant Thomas J. Byrne ........................... 144

i.  Defendant John Edwards .............................. 147

j.  Defendant Tim Fitch ................................. 150

k.  Defendant Richard Anderson .......................... 154

l.  Defendant City of Clayton, Missouri .................... 158

m. Defendant City of Oak Creek, Wisconsin ................. 161

n.  Defendant St. Louis County ........................... 164

o.  Defendant Platte County .............................. 169

p.  Defendant Michael D. Burton .......................... 172

q.  Defendant Ellen Levy Siwak .......................... 175

r.  Defendant Victoria Mullen McKee ...................... 178

s.  Defendant Thea A. Sherry ............................ 180

2.  42 U.S.C. § 1985 (2) ...................................... 183

a.  Racketeering Enterprise ............................... 183

b.  Defendant Edward Hinrichs ........................... 185

c.  Defendant Timothy Lachance .......................... 187

d.  Defendant Michael D. Burton ......................... 188

e.  Defendant Ellen Levy Siwak ........................... 190

f.  Defendant Victoria Mullen McKee ...................... 192

g.  Defendant Thea A. Sherry ............................ 194

3.  42 U.S.C. § 1985 (3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   196

    a.  Racketeering Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   196

    b.  Defendant Edward Hinrichs . . . . . . . . . . . . . . . . . . . . . . . . . . .   197

    c.  Defendant Timothy Lachance . . . . . . . . . . . . . . . . . . . . . . . . . .   199

    d.  Defendant Michael D. Burton . . . . . . . . . . . . . . . . . . . . . . . . . .   200

    e.  Defendant Ellen Levy Siwak . . . . . . . . . . . . . . . . . . . . . . . . . . .   201

    f.   Defendant Victoria Mullen McKee . . . . . . . . . . . . . . . . . . . . . . .   203

    g.  Defendant Thea A. Sherry . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   204

C.  Electronic Communications Crimes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   206

  1.  18 U.S.C. § 2511 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   206

  2.  18 U.S.C. § 2701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   207

D.  Tort Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   208

  1.  Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   208

  2.  Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   209

  3.  Constructive Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   210

  4.  Fraudulent Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   211

  5.  Conversion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   213

  6.  Unjust Enrichment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   214

  7.  Spoliation of Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   215

  8.  Malicious Prosecution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   216

  9.  Abuse of Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   217

  10. False Imprisonment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   218

11. Assumption of Duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   220

12. Duress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   221

13. Breach of Fiduciary Duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   222

14. Tortious Interference with a Business Relationship . . . . . . . . . . . . . . . .   223

15. Assault . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   224

16. Stalking . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   226

17. Intentional Infliction of Emotional Distress . . . . . . . . . . . . . . . . . . . . . .   227

VII.      ATTORNEYS FEES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   229

VIII.     JURY DEMAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   229

IX.       VERIFICATION OF COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . .   231

# COMPLAINT

COMES NOW Plaintiff, William Michael Hart, and states for his Complaint as follows:

## INTRODUCTION

1.      This action arises under the United States Constitution, First, Fourth, Fifth, Seventh, and Fourteenth Amendments; under federal law, specifically, 18 U.S.C. §§ 1962(c) and (d), 28 U.S.C. § 2461(a), 42 U.S.C. §§ 1983 and 1985(2) and (3), and 18 U.S.C. §§ 2511 and 2701; under the Utah Pattern of Unlawful Activity Act set forth in Utah Code Ann. 76-10-1603(3) and (4), the New Mexico Racketeering Act in Subsections C, and D of Section 30-42-4 NMSA 1978, and the Wisconsin Organized Crime Control Act in Wis. Ann. Stat. §§ 946.83(3) and 946.85(2); under the governmental tort liability statutes of Missouri and Wisconsin; and under the common law of the States of Utah, Wisconsin, and Missouri for conspiracy, fraud, constructive fraud, fraudulent transfer, conversion, unjust enrichment, spoliation of evidence, abuse of process, false imprisonment, malicious prosecution, assumption of duty, duress, breach of fiduciary duty, tortious interference with a business relationship, assault, stalking, and intentional infliction of emotional distress.

## RACKETEERING ENTERPRISE

2.      Defendants Salois, Straussner, Howard, Shirley Hopper, Burl Hopper, Pendleton, Legal

- 1 -

Advocates for Abused Women, Wessling, Beach, Bealmear, Van Amburg, and Doe, each of them, combined, conspired, and formed together an enterprise (hereinafter, "Racketeering Enterprise").

3. These individual Defendants, each of them, conspired to act and acted in material participation in the operation and management of the Racketeering Enterprise, and as a single conspiracy of multiple objectives, including but not limited to:

    a. to alienate and conceal the assets of Defendant Salois in a Chapter 7 bankruptcy;

    b. to defraud Plaintiff, among other creditors, of his rightful claim in that bankruptcy;

    c. to hinder, impede, and obstruct investigation in relation to the bankruptcy;

    d. to enact a scheme of identity fraud, wire fraud, and computer crimes in furtherance of those criminal endeavors;

    e. to extort from Plaintiff by force and threat of force;

    f. to harass, threaten, intimidate, and retaliate against Plaintiff, among other persons, for attempts to expose and stay the enterprise;

    g. to direct the power and force of the state to intentionally and maliciously violate Plaintiff's civil rights, conspiring with state actors to do so, to the ends described above; and

    h. to obstruct justice, disrupt governmental process, and to conceal their wrong-doing.

4. As "it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse. Cf. Vickrey v. Dunivan, 1955, 59 N.M. 90, 279 P.2d 853." Yates v. Village of Hoffman Estates, Illinois, 209 F.Supp. 757 (N.D. Ill. 1962) (citation in original), Defendants Beach and Van Amburg are charged in their individual capacities as members of the

Racketeering Enterprise.

5.    Alternatively, inasmuch as to enter into conspiracy with a multi-state racketeering enterprise engaged in numerous and sundry felony crimes as described above and to consequently perform various racketeering predicate acts constitute judicial acts, Defendants Beach and Van Amburg are charged here in their official capacities.

6.    Plaintiff suffered as fairly direct and foreseeable loss in that of Plaintiff's rightful claim in the bankruptcy, legal fees and expenses incurred, including but not limited to travel expenses, lost wages and employment, and medical expenses resulting therefrom, substantial emotional distress, humiliation, mental anguish, intense fear for the safety of his person, loss of fraternity, deprivation of rights, and interference in relations with a labor organization, suffering significant risk of harm or significantly increased risk of substantial harm.

7.    Plaintiff sues these Defendants for monetary damages, forfeiture and divestment, and other prospective relief.

## DEPRIVATION OF CIVIL RIGHTS

8.    Plaintiff suffered wrongful and foreseeable loss in that of loss of Plaintiff's rightful claim in the bankruptcy, legal fees and expenses incurred, including but not limited to travel expenses, lost wages and employment, loss of medical insurance and medical expenses resulting therefrom, suffering significant risk of harm or significantly increased risk of substantial harm, substantial emotional distress, mental anguish, intense fear for the safety of his person, humiliation, loss of fraternity, deprivation of rights, and interference in relations with a labor organization.

- 3 -

9.      Plaintiff sues these Defendants for monetary damages, and other prospective relief.

## Racketeering Enterprise

10.     The Racketeering Enterprise combined and conspired together to act and acted, and conspired to act and acted under color of state law to deprive Plaintiff of certain constitutionally protected rights under the First, Fourth, Fifth, Seventh, and Fourteenth Amendments to the Constitution of the United States including, but not limited to: a) the right of free speech; b) the right of free press; c) the right against unlawful seizure; d) the right against malicious prosecution; e) the right against double jeopardy; f) the right of substantive due process; g) the right of procedural due process; h) the right to just compensation of property; i) the right of hearing in suits of common law; j) the right to be free from state action abridging privileges of citizens; and k) the right to equal protection under the law.

11.     The Racketeering Enterprise combined and conspired together to act and acted, and conspired to act and acted under color of state law to deprive Plaintiff rights secured by lawfully enacted statutes of the United States, and by Acts of Congress, including, but not limited to: a) the right to participate in a federal judicial proceeding in which Plaintiff was a party, a witness, and an informant; b) the right to enjoy the facility of the Thomas F. Eagleton Federal Courthouse without harm; c) the right to participate in state judicial proceedings in which Plaintiff was a party; d) the right to enjoy the St. Louis County Courthouse located in Clayton, Missouri free from harm; e) the right to obtain and maintain employment through a labor organization; and f) the right to pension and medical benefits secured through a labor organization.

12.    These Defendants acted reprehensibly with evil motive and intent, to repeatedly and maliciously deprive Plaintiff of civil rights, acting with force or threat of force, and acting in a deliberately deceptive manner, posing a substantial risk of continued harm to the general public.

<u>Legal Advocates for Abused Women</u>

13.    Action is brought against Defendant Legal Advocates for Abused Women for these Defendants' establishment of policies, customs, procedures, or practice or of regulation, ordinance, or statute; and failure to exercise proper care in hiring, training, supervision, discipline, or investigation of reports of abuse and misconduct. These Defendants acted with deliberate and callous indifference or actual knowledge and acquiescence to the foreseeable violation of constitutional rights, placing Plaintiff at foreseeable risk or substantially increased vulnerability to great risk of serious harm.

14.    These Defendants acted reprehensibly with wanton disregard in repeated misconduct, posing a substantial risk of continued harm to the general public.

City of Clayton Missouri, City of Oak Creek Wisconsin,

<u>St. Louis County, Platte County, State Actors</u>

15.    Action is brought against Defendants Hinrichs, Gallagher, Hoots, Lachance, Roberds, O'Neill, Willmering, Holland, and Unknown Deputy for these individual Defendants' failure to perform their duties, acting with deliberate and/or callous indifference or actual knowledge and

acquiescence to foreseeable violation of Plaintiff's civil rights, and placed Plaintiff at foreseeable risk or significantly increased vulnerability to substantial risk of injury to his person, business, and property, and violation of civil rights.

16.     Action is brought against Defendants Byrne, Edwards, Fitch, and Anderson for these individual Defendants' establishment of policies, customs, procedures, or practice; and failure to exercise proper care in training, supervision, discipline, or investigation of abuse and misconduct.   These Defendants acted with deliberate and callous indifference or actual knowledge and acquiescence to the foreseeable violation of constitutional rights, and placed Plaintiff at foreseeable risk or significantly increased vulnerability to substantial risk of injury to his person, business, and property, and violation of civil rights.

17.     Action is brought against Defendants City of Clayton Missouri, City of Oak Creek Wisconsin, St. Louis County, and Platte County for these individual Defendants' establishment of policies, customs, procedures, or practice or of regulation, ordinance, or statute; and failure to exercise proper care in hiring, training, supervision, discipline, or investigation of reports of abuse and misconduct.  These Defendants acted with deliberate and callous indifference or actual knowledge and acquiescence to the foreseeable violation of constitutional rights, and placed Plaintiff at foreseeable risk or significantly increased vulnerability to substantial risk of injury to his person, business, and property, and violation of civil rights.

18.     Action is brought against Defendants Burton, Siwak, McKee, Beach, Sherry, and Van Amburg for these individual Defendants' failure to perform their duties; for establishment of policies, customs, procedures, or practice; and failure to exercise proper care in investigation of reports of abuse and misconduct.  These individual Defendants acted with deliberate and callous

- 6 -

indifference or actual knowledge and acquiescence to the foreseeable violation of constitutional rights, and placed Plaintiff at foreseeable risk or significantly increased vulnerability to substantial risk of injury to his person, business, and property, and violation of civil rights.

19.    These Defendants acted under color of state law to deprive Plaintiff of certain constitutionally protected rights under the First, Fourth, Fifth, Seventh, and Fourteenth Amendments, including but not limited to: a) the right of free speech; b) the right of free press; c) the right against unlawful seizure; d) the right against malicious prosecution; e) the right against double jeopardy; f) the right of substantive due process; g) the right of procedural due process; h) the right to just compensation of property; i) the right of hearing in suits of common law; j) the right to be free from State action abridging privileges of citizens; and k) the right to equal protection under the law; and of certain rights secured by lawfully enacted statutes of the United States, and by Acts of Congress, including, but not limited to: a) the right to participate in a federal judicial proceeding in which Plaintiff was a party, a witness, and an informant; b) the right to enjoy the facility of the Thomas F. Eagleton Federal Courthouse without harm; c) the right to participate in state judicial proceedings in which Plaintiff was a party; d) the right to enjoy the St. Louis County Courthouse located in Clayton, Missouri free from harm; e) the right to obtain and maintain employment through a labor organization; and f) the right to pension and medical benefits secured through a labor organization.

## JURISDICTION

20.    This action arises under the United States Constitution, First, Fourth, Fifth, Seventh, and

Fourteenth Amendments.

21.    This action also arises under federal statutes, 18 U.S.C. § 1964(a) and (c); 28 U.S.C. § 2461; 42 U.S.C. §§ 1983, 1985, and 1988; 18 U.S.C. §§ 241, 242, and 245; and 18 U.S.C. §§ 2520 and 2707.

22.    This action also arises under Utah statutes, Utah Code Ann. 76-10-1605(1), (2), (4), and (10).

23.    This action also arises under the laws of the State of New Mexico, of Subsections A, C, and D of Section 30-42-6 NMSA 1978; and under Wisconsin law, Wis. Ann. Stat. § 946.87(1) and (4).

24.    The United States District Court for the District of Utah has jurisdiction of this action pursuant to 18 U.S.C. § 1965(a) and (b).

25.    The United States District Court for the District of Utah has jurisdiction of this action pursuant to Utah Code Ann. 76-10-1603.5(4) and (5)

26.    The United States District Court for the District of Utah has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343(a), and 1357.

27.    The United States District Court for the District of Utah has jurisdiction of this action pursuant to Utah Code Ann. 78A-5-102(1) and 77-8a-1(1)(b).

28.    The United States District Court for the District of Utah has jurisdiction of all inchoate offenses pursuant to 18 U.S.C. § 3237(a).

29.    The United States District Court for the District of Utah has jurisdiction of this action pursuant to Utah Code Ann. 76-1-201(1), (2), and (4); 78B-3-201(3); and 78B-3-205(1), (2), and (3).

30.     The United States District Court for the District of Utah has jurisdiction of forfeiture actions and civil penalties pursuant to 28 U.S.C. §§ 1355(a) and (b), 1356, and 1395.

31.     The United States District Court for the District of Utah has jurisdiction of forfeiture actions and civil penalties pursuant to Utah Code Ann. 76-10-1603.5(4) and (5).

32.     Supplemental jurisdiction of this Court is invoked, with respect to the statutory state claims, the common law state claims, and the state tort claims pursuant to 28 U.S.C. §§ 1367(a), on the grounds that they arise from a common nucleus of facts that fall within this Court's original jurisdiction.

33.     The following are subject to the jurisdiction of this Court:

     a.     Defendant SHERRY A. SALOIS;

     b.     Defendant TIMOTHY STRAUSSNER;

     c.     Defendant SHIRLEY HOPPER;

     d.     Defendant BURL HOPPER;

     e.     Defendant DOUGLAS HOWARD;

     f.     Defendant PEGGY PENDLETON;

     g.     Defendant KATHERINE WESSLING;

     h.     Defendant REBECCA BEALMEAR;

     i.     Defendant DOUGLAS R. BEACH;

     j.     Defendant JAMES VAN AMBURG;

     k.     Defendant JANE DOE;

     l.     Defendant LEGAL ADVOCATES FOR ABUSED WOMEN;

     m.     Defendant AIMEE NASSIF;

n.    Defendant CHERYL A. KELLY;

o.    Defendant JENNIFER DOERING;

p.    Defendant KYLE DUBBERT;

q.    Defendant CITY OF CLAYTON, MISSOURI;

r.    Defendant THOMAS J. BYRNE;

s.    Defendant EDWARD HINRICHS;

t.    Defendant CITY OF OAK CREEK, WISCONSIN;

u.    Defendant JOHN EDWARDS;

v.    Defendant OFFICER GALLAGHER;

w.    Defendant ST. LOUIS COUNTY, MISSOURI;

x.    Defendant TIM FITCH;

y.    Defendant SGT. HOOTS;

z.    Defendant TIMOTHY LACHANCE;

aa.   Defendant TERRY ROBERDS;

bb.   Defendant DET. O'NEILL;

cc.   Defendant OFFICER WILLMERING;

dd.   Defendant PLATTE COUNTY, MISSOURI;

ee.   Defendant RICHARD ANDERSON;

ff.   Defendant ERIK HOLLAND;

gg.   Defendant UNKNOWN DEPUTY;

hh.   Defendant MICHAEL D. BURTON;

ii.   Defendant ELLEN LEVY SIWAK;

jj.   Defendant VICTORIA MULLEN MCKEE; and

kk.   Defendant THEA A. SHERRY.

## VENUE

34.   Venue is proper in the United States District Court for the District of Utah Central Division pursuant to 28 U.S.C. § 1391(b) because:

a.   a substantial part of the events or omissions giving rise to the claims occurred in this District; and

b.   this Court's personal jurisdiction extends to Defendants.

35.   Venue is proper in the United States District Court for the District of Utah Central Division pursuant to 18 U.S.C. § 1965 because:

a.   Defendants conduct business within this judicial district;

b.   Defendants have agents within this judicial district; and

c.   Defendants may be found within this judicial district; and

d.   the ends of justice require that parties residing in other districts be brought before this Court.

36.   Venue is proper in the United States District Court for the District of Utah Central Division pursuant to 18 U.S.C. § 3237(a) because:

a.   an offense begun in one district and completed in another or committed in more than one district may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed; and

b. offenses involving the use of the mails or transportation in interstate commerce are continuing offenses and may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves.

37. Venue is proper in the United States District Court for the District of Utah Central Division pursuant to 28 U.S.C. §§ 1355 and 1395 because:

a. a forfeiture action may be brought in the district in which any of the acts or omissions giving rise to the forfeiture occurred; and

b. a civil proceeding for the recovery of a pecuniary fine, penalty or forfeiture may be prosecuted in the district where it accrues or the defendant is found.

38. Venue is proper in the United States District Court for the District of Utah Central Division pursuant to Utah Code Ann. 78B-3-307(1) because:

a. Plaintiff's causes of action did arise in this county; and

b. at least one defendant resides in this county at the commencement of the action.

39. Venue is proper in the United States District Court for the District of Utah Central Division pursuant to Utah Code Ann. 76-1-202(1) because:

a. the commission of an offense commenced outside the state was consummated within this state and within this county;

b. conduct constituting elements of an offense or results that constitute elements occurred in this county;

c. offenses were committed upon the person of another located in another county; and

d. inchoate offenses, including the agreement in conspiracy, were committed in this county; and

e.  solicitations, aidings and abettings, agreements, and attempts to aid others in the planning or commission of an offense occurred in this county.

40.  Venue is proper in the United States District Court for the District of Utah Central Division pursuant to 38-3-1 NMSA 1978 because:

a.  at least one defendant resides in this county;

b.  a cause of action originated in this county;

c.  a defendant may be found in this judicial district;

d.  defendants have rendered themselves liable through criminal acts committed in this county; and

e.  suits upon foreign corporations not maintaining an agent in the state may be brought in any county.

41.  Venue is proper in the United States District Court for the District of Utah Central Division pursuant to Wis. Ann. Stat. § 801.50(2) because:

a.  claims arose in this county; and

b.  a defendant resides or does substantial business in this county.


## PARTIES


42.  Plaintiff William Michael Hart is an individual residing in Macoupin County, Illinois who fled the State of Missouri in fear of his life for the very purpose of being a witness in a federal matter.

43.  Plaintiff was a resident of Milwaukee County, Wisconsin from November of 2008

through October of 2009.

44.     Plaintiff was a resident of Platte County, Missouri from October of 2009 through March of 2011.

## RACKETEERING ENTERPRISE

45.     Defendant Sherry Ann Salois is an individual residing in St. Louis County, Missouri.

46.     Defendant Timothy Lynn Straussner is an individual residing in St. Louis County, Missouri.

47.     Upon information and belief, Defendant Shirley Hopper is an individual residing in Scott County, Missouri.

48.     Upon information and belief, Defendant Burl Hopper is an individual residing in Scott County, Missouri.

49.     Defendant Douglas L. Howard is an individual residing in Scott County, Missouri.

50.     Upon information and belief, Defendant Peggy Pendleton is an individual residing in Salt Lake County, Utah.

51.     Upon information and belief, Defendant Katherine Wessling is an individual residing in St. Louis County, Missouri.

52.     Upon information and belief, Defendant Rebecca Bealmear is an individual residing in St. Louis County, Missouri.

53.     Upon information and belief, Defendant Douglas R. Beach is an individual residing in St. Louis County, Missouri.

- 14 -

54.     Upon information and belief, Defendant James Van Amburg is an individual residing in Platte County, Missouri.

55.     Upon information and belief, Defendant Jane Doe, an employee of Defendant Van Amburg, is an individual residing in Platte County, Missouri.

### LEGAL ADVOCATES FOR ABUSED WOMEN

56.     Defendant Legal Advocates for Abused Women is a corporation located in St. Louis, Missouri.

57.     Defendant Aimee Nassif, Board President of the Executive Committee of Legal Advocates for Abused Women, is charged in her official capacity with responsibility for Legal Advocates for Abused Women.

58.     Defendant Cheryl A. Kelly, Board Vice-President of the Executive Committee of Legal Advocates for Abused Women, is charged in her official capacity with responsibility for Legal Advocates for Abused Women.

59.     Defendant Jennifer Doering, Secretary of the Executive Committee of Legal Advocates for Abused Women, is charged in her official capacity with responsibility for Legal Advocates for Abused Women.

60.     Defendant Kyle Dubbert, Treasurer of the Executive Committee of Legal Advocates for Abused Women, is charged in his official capacity with responsibility for Legal Advocates for Abused Women.

61.     Upon information and belief, Defendants Nassif, Kelly, Doering, and Dubbert were

members of the Board of Directors Executive Committee of Legal Advocates for Abused Women at all relevant times.

62.   The individual Members of the Board of Directors Executive Committee of Legal Advocates for Abused Women are charged with responsibility for Legal Advocates for Abused Women.

63.   From this point on the individual Members of the Board of Directors Executive Committee of Legal Advocates for Abused Women will be collectively referred to as "Legal Advocates for Abused Women."

64.   Defendant Katherine Wessling, Managing Attorney for Legal Advocates for Abused Women, is also charged in her official capacity with responsibility for Legal Advocates for Abused Women, as well as being charged as an individual.

### CITY OF CLAYTON, MISSOURI

65.   Defendant City of Clayton is charged with responsibility for the City of Clayton Police Department.

66.   Defendant Thomas J. Byrne, Chief of Police, City of Clayton Police Department is charged in his official capacity with responsibility for the City of Clayton Police Department.

67.   Upon information and belief, Defendant Edward Hinrichs, an officer of the City of Clayton Police Department, is an individual residing in Clayton, Missouri.

68.   Defendant Edward Hinrichs is being charged as an individual and in his official capacity as an officer of the City of Clayton Police Department.

- 16 -

## CITY OF OAK CREEK, WISCONSIN

69.     Defendant City of Oak Creek, Wisconsin is charged with responsibility for the Oak Creek Police Department.

70.     Defendant John Edwards, Chief of Police, Oak Creek Police Department is charged in his official capacity with responsibility for the Oak Creek Police Department.

71.     Upon information and belief, Defendant Gallagher, an officer of the City of Oak Creek Police Department, is an individual residing in Oak Creek, Wisconsin.

72.     Defendant Gallagher is being charged as an individual and in his official capacity as an officer of the City of Oak Creek Police Department.

## ST. LOUIS COUNTY

73.     Defendant St. Louis County is charged with responsibility for the St. Louis County Police Department.

74.     Defendant Tim Fitch, Chief of Police, St. Louis County Police Department is charged in his official capacity with responsibility for the St. Louis County Police Department.

75.     Upon information and belief, Defendant Hoots, an officer of the St. Louis County Police Department, is an individual residing in St. Louis County, Missouri.

76.     Defendant Hoots is being charged as an individual and in his official capacity as an officer of the St. Louis County Police Department.

77.    Upon information and belief, Defendant Timothy Lachance, an officer of the St. Louis County Police Department, is an individual residing in St. Louis County, Missouri.

78.    Defendant Timothy Lachance is being charged as an individual and in his official capacity as an officer of the St. Louis County Police Department.

79.    Upon information and belief, Defendant Terry Roberds, an officer of the St. Louis County Police Department, is an individual residing in St. Louis County, Missouri.

80.    Defendant Terry Roberds is being charged as an individual and in his official capacity as an officer of the St. Louis County Police Department.

81.    Upon information and belief, Defendant O'Neill, an officer of the St. Louis County Police Department, is an individual residing in St. Louis County, Missouri.

82.    Defendant O'Neill is being charged as an individual and in his official capacity as an officer of the St. Louis County Police Department.

83.    Upon information and belief, Defendant Willmering, an officer of the St. Louis County Police Department, is an individual residing in St. Louis County, Missouri.

84.    Defendant Willmering is being charged as an individual and in his official capacity as an officer of the St. Louis County Police Department.

PLATTE COUNTY

85.    Defendant Platte County is charged with responsibility for the Platte County Sheriff's Department.

86.    Defendant Richard Anderson, Sheriff, Platte County Sheriff's Office is charged in his

official capacity with responsibility for the Platte County Sheriff's Office.

87.    Upon information and belief, Defendant Erik Holland, a deputy of the Platte County Sheriff's Office, is an individual residing in Platte County, Missouri.

88.    Defendant Erik Holland is being charged as an individual and in his official capacity as an officer of the Platte County Sheriff's Office.

89.    Upon information and belief, Defendant Unknown Deputy, a deputy of the Platte County Sheriff's Office, is an individual residing in Platte County, Missouri.

90.    Defendant Unknown Deputy is being charged as an individual and in his official capacity as an officer of the Platte County Sheriff's Office.

STATE ACTORS

91.    Defendant Michael D. Burton is a Judge presiding in the 21st Judicial Circuit of the State of Missouri, St. Louis County, Family Law Court.

92.    Defendant Michael D. Burton is being charged as an individual and in his official capacity as a Judge of the Family Law Court of the 21st Judicial Circuit of the State of Missouri.

93.    Defendant Ellen Levy Siwak is a Judge presiding in the 21st Judicial Circuit of the State of Missouri, St. Louis County, Family Law Court.

94.    Defendant Ellen Levy Siwak is being charged as an individual and in her official capacity as a Judge of the Family Law Court of the 21st Judicial Circuit of the State of Missouri.

95.    Defendant Victoria Mullen McKee is a Commissioner presiding in the 21st Judicial Circuit of the State of Missouri, St. Louis County, Family Law Court.

96.     Defendant Victoria Mullen McKee is being charged as an individual and in her official capacity as a Commissioner of the Family Law Court of the 21st Judicial Circuit of the State of Missouri.

97.     Defendant Thea A. Sherry is a Judge presiding in the 21st Judicial Circuit of the State of Missouri, St. Louis County, Family Law Court.

98.     Defendant Thea A. Sherry is being charged as an individual and in her official capacity as a Judge of the Family Law Court of the 21st Judicial Circuit of the State of Missouri.

99.     Defendant Douglas R. Beach is a Judge presiding in the 21st Judicial Circuit of the State of Missouri, St. Louis County, Family Law Court.

100.    Defendant Douglas R. Beach is being charged as an individual and in his official capacity as a Judge of the Family Law Court of the 21st Judicial Circuit of the State of Missouri.

101.    Defendant James Van Amburg is an Associate Judge presiding in the 6th Judicial Circuit of the State of Missouri, Platte County.

102.    Defendant James Van Amburg is being charged as an individual and in his official capacity as Associate Judge of the 6th Judicial Circuit of the State of Missouri.

## FACTUAL ALLEGATIONS

### BANKRUPTCY FRAUD

103.    Plaintiff originated and executed a series of loans to Defendant Salois (hereinafter, "Loans").

104.    The Loans were in the form of cash, checks, and account transfers in total of or around $10,462 occurring from May 28, 2007 through November 11, 2008.

105.    The e-mail address of nvisiblewmn@yahoo.com (hereinafter, "Nvisiblewmn Account") was the sole property of Defendant Salois at all relevant times.

106.    Defendant Salois authored a promissory note (hereinafter, "Note") to Plaintiff for the sum of the Loans.

107.    The Note specified that the Loans were to be secured by lien on the residence located at *** Toulon Drive, St. Louis, Missouri, ***** (hereinafter, "Toulon Address").

108.    Defendant Salois directed the Note to Plaintiff by electronic mail from the Nvisiblewmn Account on May 29, 2007.

109.    Check no. 1376 from Plaintiff's personal bank account (hereinafter, "Check no. 1376") was a part of the Loans.

110.    Plaintiff had executed Check no. 1376 in the amount of $600 November 11, 2008 payable to Defendant Salois and directed same to Defendant Salois by United States postal mail.

111.    Defendant Salois received Check no. 1376 from Plaintiff by United States postal mail shortly after November 12, 2008 at the Toulon Address.

112.    Plaintiff sent notice (hereinafter, "Notice") by registered mail to Defendant Salois on April 15, 2009 stating that Plaintiff would proceed with a claim in a court of law for payment of debt in relation to the Loans were arrangements not made within 30 days.

113.    The Notice was received by Defendant Salois on April 17, 2009.


### Petition for Bankruptcy


- 21 -

114.    Defendant Salois petitioned the United States Bankruptcy Court of Eastern Missouri (hereinafter, "the Bankruptcy Court") for discharge of debt under Chapter 7 of title 11, U.S.C. in case no. 09-bk-44199 (hereinafter, "the Bankruptcy") dated May 6, 2009 establishing a bankruptcy estate (hereinafter, "Bankruptcy Estate"), and all non-exempt property of Defendant Salois then belonged to the Bankruptcy Estate.

115.    From November 6, 2008 and thereafter Defendant Salois engaged in acts in relation to or in contemplation of the Bankruptcy, including but not limited to completion of the credit counseling required for eligibility for discharge under Chapter 7 of title 11, U.S.C., and execution and submission of the petition, schedules, and related documents to the Bankruptcy Court.

116.    Defendant Salois consented to investigation of all assets as a condition of discharge of debt in the Bankruptcy.

117.    Plaintiff received notice of the Bankruptcy by United States Mail.

118.    Defendant Salois' use of the mail to notify Plaintiff of the Bankruptcy was foreseeable.

## Review of Petition

119.    In effort to demonstrate due diligence, Plaintiff reviewed the petition and documents executed and/or submitted by Defendant Salois pursuant to the Bankruptcy, and noted figures which indicated material discrepancies in the declarations of Defendant Salois in relation to the Bankruptcy.

120.   Defendant Salois executed and/or submitted to the Bankruptcy Court declarations of average monthly income of $1485.56 in Schedule I (Current Income of Individual Debtor).

121.   Defendant Salois executed and/or submitted in relation to the Bankruptcy declarations of average monthly expenses of $2376.16 in Schedule J (Current Expenditures of Individual Debtor).

122.   Defendant Salois executed and/or submitted in relation to the Bankruptcy declarations of monthly net income of a loss of $886.30 in Schedule J described above.

123.   Defendant Salois executed and/or submitted in relation to the Bankruptcy a Chapter 7 Statement of Current Monthly Income and Means-Test Calculation (hereinafter, "Means Test") declaring annualized income of $52,333 for a household of three in relation to the median of $58,473 for a household of that size.

124.   Figures in the Means Test indicate income roughly 89% of the relevant median income.

125.   The average monthly expenses of $2376.16 declared in Schedule J described above demonstrate annualized household expenses of $28,514 (hereinafter, "Annualized Expenses from Schedule J").

126.   The Annualized Expenses from Schedule J indicate roughly 54% of annualized income declared in the Means Test.

127.   Defendant Salois withheld from the trustee in the Bankruptcy entitled to its possession documents, records, or papers related to Check no. 1376.

128.   Defendant Salois identified Plaintiff as a creditor holding unsecured non-priority debt in Schedule F of the Bankruptcy.

129.   Defendant Salois' categorization of debt in the Bankruptcy of funds secured by property

- 23 -

per the Note as unsecured non-priority claim was a material misrepresentation adversely affecting Plaintiff's claim.

130.    Upon information and belief, Defendant Burl Hopper married Defendant Shirley Hopper in 2008.

131.    Upon information and belief, as one of the first orders of business thereon, Defendant Burl Hopper's will was altered to grant a full inheritance from the estate of Defendant Burl Hopper to the natural children of Defendant Shirley Hopper, Defendant Salois and Defendant Howard (hereinafter, "Inheritance").

132.    Upon information and belief, the Inheritance  included but was not limited to the multi-million dollar structured settlement in connection with a workplace accident that happened years ago, which left Defendant Burl Hopper badly burned.

133.    Upon information and belief, over the objections of the natural children of Defendant Burl Hopper, the last will and testament of Defendant Burl Hopper was altered shortly following Defendant Burl Hopper's marriage to Defendant Shirley Hopper for the express purpose of granting the natural children of Defendant Shirley Hopper a full inheritance from the estate of Defendant Burl Hopper as described above.

134.    Upon information and belief, Defendant Salois maintained undeclared pecuniary interest in the estate of Defendant Burl Hopper in relation to and in contemplation of the Bankruptcy and throughout those proceedings.


<u>Review of Declarations from Divorce</u>

135.    Defendant Salois' divorce from a former student in an English class that Defendant

Salois taught at Southeast Missouri State University, Eric Michael Salois, was finalized on

December 14, 2007 in the 21st Judicial Circuit of the State of Missouri, St. Louis County, in

Cause no. 2107FC-03787 (hereinafter, "the Divorce").

136.    The debt which Defendant Salois incurred as a result of the Divorce was not subject to

discharge in the Bankruptcy, but only non-exempt debt which Defendant Salois incurred from

the time of December 14, 2007 through May 6, 2009 was subject to discharge in the Bankruptcy.

137.    The 21st Judicial Circuit of the State of Missouri executed pursuant to the Divorce on

December 14, 2007 various documents, including but not limited to Table 1, Marital Property to

Be Awarded to Wife, Table 5, Debts to Be Paid by Wife, and Table 6, Debts to Be Paid by

Husband.

138.    Defendant Salois executed on August 3, 2007 a Statement of Income and Expenses in

relation to the Divorce.

139.    Plaintiff compared statements of income and expenses executed by Defendant Salois in

relation to the Divorce to the declarations executed and/or submitted by Defendant Salois in

various schedules and documents of the Bankruptcy, cancelling expenses related to Defendant

Salois' prior enrollment in a certificate program for purposes of comparison.

140.    The expenses from Statement of Income and Expenses executed by Defendant Salois in

relation to the Divorce, adjusted as described above, and those of Schedules I (Current Income of

Individual Debtor) and J (Current Expenditures of Individual Debtor) executed and/or submitted

by Defendant Salois in the Bankruptcy to be within 3.5% of each other.

141.    Table 1 from the Divorce, Marital Property to Be Awarded to Wife, declared values of

$1900 in appliances, not including a TV valued at $400 or the desktop computer low-balled at $200, and $850 in a non-exhaustive listing of items of furnishings, for a total of $3350 of assets of said class.

142.    Defendant Salois executed and/or submitted pursuant to the Bankruptcy a Schedule B, Personal Property declarations of the value of "Household goods and furnishings, including audio, video, and computer equipment" declaring $2500 of assets of said class.

143.    Defendant Salois executed on August 3, 2007 in relation to the Divorce a Statement of Income and Expenses declaring $46,919 in student loan debt.

144.    Defendant Salois executed and/or submitted to the United States Bankruptcy Court in the Bankruptcy on May 6, of 2009 a Statistical Summary of Certain Liabilities declaring of $73,477.18 in student loan debt.

145.    Defendant Salois' declarations in the Statement of Income and Expenses executed by Defendant Salois in relation to the Divorce and the Statistical Summary of Certain Liabilities indicate a difference of or about $26,558.

146.    Upon information and belief, Defendant Salois attended Webster University in the relevant time, enrolled as a part-time student in the teacher certification program.

147.    The expenses described above were incurred in relation to three semesters of said enrollment.

148.    Upon information and belief, Defendant Salois' class schedule in enrollment as described above comprised relatively few credit hours, and a significant portion of Defendant Salois' class time was spent in practicum.

149.    Defendant Salois' expenses for the above described educational purposes were declared

as 'Books and Tuition' in Schedule J (Current Expenditures of Individual Debtor) in the Bankruptcy.

150.    The amount of student loan debt averaged over three semesters of part-time enrollment to a figure of $8,853 and declared annualized household income in the Means Test of $52,333 while the Annualized Expenses from Schedule J of $28,514 indicate expenditures, including books and tuition, of less than 55% of that total annual income.

151.    The student loans alone for two semesters of part-time enrollment would cover 62% of said annualized expenses, including books and tuition, in and of themselves, or roughly 7 ½ months of said expenses.

152.    Defendant Salois executed on August 3, 2007 in relation to the Divorce a Statement of Income and Expenses declaring of $21,174 in other than student loan debt.

153.    The above described Table 5, Debts to Be Paid by Wife pursuant to the Divorce declared only one item of credit card debt; that of a Bank of America Visa with a balance of $5275.

154.    The above described Table 6, Debts to Be Paid by Husband pursuant to the Divorce declared only two items of credit card debt balances totaling $14,794.

155.    Defendant Salois executed and/or submitted to the Bankruptcy Court declarations of credit card debt of $64,555 in Schedule F (Creditors Holding Unsecured Non-Priority Claims).

156.    The sum of the amounts in Table 5, Debts to Be Paid by Wife, and Table 6, Debts to Be Paid by Husband, executed in relation to the Divorce indicate a difference from the declarations of Schedule F described above in the amount of $44,486.

157.    The period of time from the above described Table 5 and Table 6 from the Divorce unto the Schedule F described above comprised a span of some 17 months.

- 27 -

Comparison of the Two Sets of Documents

158.    Through the relevant time period that Defendant Salois' student loan debt increased by $26,558 that the above described credit card debt increased by $44,486, Defendant Salois executed and/or submitted declarations of annualized income of $52,333 in the Means Test.

159.    Through the relevant time period that Defendant Salois' student loan debt increased by $26,558 and credit card debt by $44,486, representing a sum in excess of $70,000, the Annualized Expenses from Schedule J of $28,514 comprised a total percentage of some 54% of the annualized income of $52,333 in the Means Test.

160.    As the increase in student loan debt for three semesters, annualized to $17,705 and the increase in credit card debt, annualized to $31,402, together with income declared in the Means Test represent a sum of some $101,440 for the year, expenses declared were some 28% of that amount, while the value of declared assets from the Divorce to the Bankruptcy decreased by over 25%.

161.    The difference between the total income, annualized as described above, and the Annualized Expenses from Schedule J represent property not properly declared in the Bankruptcy.

162.    The value of declared assets from the Divorce to the Bankruptcy decreasing by over 25% represent material misrepresentations, notwithstanding the difference between total annualized income as described above.

Concealment within the Declarations Generally

163.    Action if provided for failure to disclose "all property interests, whether reachable by state-law creditors or not, and whether vested or contingent. This definition draws into the estate all of the Debtor's property interests as of the filing date, save [the restricted transfer of beneficial interest in a trust.]" In re DeWeese, 47 B.R. 251, 254 (W.D.N.C.Bankr.1985) (citation omitted); see also In re Shore Air Conditioning & Refrigeration, 18 B.R. 643, 646 (D.N.J.Bankr.1982) (Clear wording and intent of drafters demonstrates that scope of Sec. 541(a) is very broad and encompasses all interests of debtor as of date its petition is filed.)." United States v. Cardall, 885 F.2d 656, 677 (reh'g denied) (10th Cir. 1989) (citations in original)

164.    "18 U.S.C. Section 152 does not limit, in a concealment case, an illegal concealment to property of a prospective bankrupt that is ultimately determined to be the property of a bankrupt estate. United States of America v. Camp, 140 F.Supp. 98." United States v. Martin, 408 F.2d 949, 953 (7th Cir.), cert. denied, 396 U.S. 824 (1969) (citation in original) The Code requires disclosure of "any legal, equitable, or beneficial interest of the debtor in property" United States v. Moody, 923 F.2d 341, 348 (5th Cir. 1991), and "includes equitable as well as legal interests" United States v. Weinstein, 834 F.2d 1454, 1461 (9th Cir. 1987), "[e]ven if the asset is not ultimately determined to be property of the estate under the technical rules of the Federal Bankruptcy Code, Section 152 properly imposes sanctions on those who preempt a court's determination by failing to report the asset." .United States v. Cherek, 734 F.2d 1248, 1254 (7th Cir. 1984)

165.    Defendant Salois withheld documents, records, or papers from the trustee in the

Bankruptcy, including but not limited those related to Check no. 1376 and her pecuniary interest in the estate of Defendant Burl Hopper in the Bankruptcy.

166. Defendant Salois withheld the documents, records, or papers knowingly and fraudulently.

167. Defendant Salois acted with intent to defeat the provisions of title 11, to improperly avoid denial of discharge or conversion to Chapter 13 by the Bankruptcy Court, and to present an appearance of no non-exempt assets for distribution by the trustee.

168. The acts of Defendant Salois described above constitute violations of paragraphs (1), (2), (3), (7), (8), and (9) of 18 U.S.C. § 152; of paragraphs (1), (2), and (3) of 18 U.S.C. § 157; and of 18 U.S.C. §§ 1503, 1519, and 1623.

## Investigation of Assets

169. Plaintiff reported suspected fraud to the Assistant United States Trustee, who directed Plaintiff to state suspicions of fraud in writing and to submit that document to his Office. Plaintiff complied with this directive.

170. In effort to demonstrate due diligence, through the latter weeks of May of 2009 Plaintiff engaged in a series of discussions with several of the other creditors in the Bankruptcy for the purpose of pooling resources to perform an asset investigation pursuant to that matter.

171. In effort to demonstrate due diligence, Plaintiff retained the services of a private detective (hereinafter, "the Detective") to perform an asset investigation pursuant to the Bankruptcy.

## Meeting of Creditors (341 Meeting)

172.    Plaintiff attended the meeting of creditors (hereinafter, "341 Meeting") pursuant to the Bankruptcy on June 9, 2009 at the Bankruptcy Court in St. Louis, Missouri, driving the seven hours to St. Louis specifically for the purpose of attending the 341 Meeting.

173.    Defendant Salois gave sworn testimony at the 341 Meeting that Defendant Salois voluntarily terminated her employment at St. Dominic High School of O'Fallon, Missouri in March of 2009.

174.    Upon information and belief, Defendant Salois' contract with St. Dominic High School of O'Fallon, Missouri was for a term to expire in May of 2009.

175.    Defendant Salois' voluntary termination of her employment as described above reduced household income for purposes of the Means Test.

176.    Defendant Salois acted with intent to defeat the provisions of title 11 in doing so.

A.    Conspiracy in Alienation of Property

177.    Defendant Salois gave sworn testimony at the 341 Meeting that Defendant Straussner was her fiancé, indicating a continuity of purpose.

178.    Defendant Salois gave sworn testimony at the 341 Meeting that Defendant Straussner currently co-habited with her at the single-family residence located at the Toulon Address, having established residency at the that single-family residence in March of 2009.

179.    Defendant Salois gave sworn testimony at the 341 Meeting that Defendant Straussner constituted a household-on-his-own within that single-family residence.

180.    Defendant Straussner contributed a total of $78.55 per month in upkeep to the household-

- 31 -

on-his-own that Defendant Straussner constituted within the Toulon Address which Defendant Straussner shared in co-habitation with Defendant Salois as having been converted into two households as stated in the sworn testimony of Defendant Salois in the 341 Meeting.

181.    The sum of $78.55 per month in upkeep to the household-on-his-own that Defendant Straussner constituted within the above described single-family residence Defendant Straussner co-habited with Defendant Salois following conversion of that single-family residence into two households in accord with the sworn testimony of Defendant Salois represented at best a wash sale of assets well below fair market value.

182.    Upon information and belief, no permit from the County or similar documentation was ever produced by Defendant Salois, nor any record or other documentation of additional income resulting from division of expenses of the above described single-family residence as being claimed as income to substantiate the claim on the property of the Bankruptcy Estate in the above described single-family residence that Defendant Salois co-habited with Defendant Straussner in the conversion into two households in accord with the sworn testimony of Defendant Salois.

183.    The single-family residence of the Toulon Address was the property of the Bankruptcy Estate in a matter under title 11, U.S.C. at the relevant times.

184.    Any and all rents, monies obtained for room and board, and any other manner of income due and just compensation for use of the property of the Bankruptcy Estate in the household-on-his-own which Defendant Straussner constituted within the above described single-family residence Defendant Salois co-habited with Defendant Straussner were the property of the Bankruptcy Estate.

185.    Such alienation of property of the estate, in permitting the free use and enjoyment of the above described single-family residence to Defendant Straussner, must necessarily be compensated to be lawful.

186.    The sum of $78.55 per month in upkeep to the household-on-his-own that Defendant Straussner constituted within the above described single-family residence Defendant Straussner co-habited with Defendant Salois following conversion of that single-family residence into two households in accord with the sworn testimony of Defendant Salois is indicative of a particular scheme of bankruptcy fraud known as a "white knight bleed-out."

187.    Defendant Salois gave sworn testimony at the 341 Meeting that the difference of expenses and income as declared in the various schedules in the Bankruptcy were made up by a "loan" from Defendant Straussner.

188.    The loan or loans from Defendant Straussner to which Defendant Salois testified were not declared within the petition or accompanying schedules of the Bankruptcy, nor were any terms of said loan or loans ever disclosed.

189.    The loan or loans from Defendant Straussner to which Defendant Salois testified were barred from actions for collection by the automatic stay, were not eligible for status as a secured claim against the estate, and prohibited from payment by Defendant Salois pending distribution to secured creditors.

B.      Concealment and Alienation Generally

190.    That Defendant Straussner established residency in the same month that Defendant Salois voluntarily terminated her employment, the lack of records and documentation, permitting,

- 33 -

declarations of income, and lack of mutual consideration and other manner of inconsistencies in the declarations and testimony of Defendant Salois in the Bankruptcy gave just cause and reasonable suspicion that no enforceable contract, verbal or otherwise, existed in the establishment of a second household within the property of the Bankruptcy Estate in the single-family residence located at the Toulon Address which Defendant Salois co-habited with Defendant Straussner.

191.    Lack of enforceable contract renders Defendant Straussner's tenancy in the above-described single-family residence void as a household-on-his-own as a matter of law.

192.    The loan or loans from Defendant Straussner to which Defendant Salois testified, being ineligible for collection or payment actions, were, as such, donations.

193.    Upon information and belief, the donations as described above constituted credit above $500 taken within 60 days of Defendant Salois filing a petition under title 11.

194.    The acts of Defendant Salois described above constitute violations of 18 U.S.C. § 152(1), (2), (3), (7), (8), and (9); and of 18 U.S.C. §§ 1621 and 1623.

195.    The acts of Defendant Straussner described above constitute violation of 18 U.S.C. § 152(5).

196.    The acts of Defendant Salois and the acts of Defendant Straussner in participation thereof, as described above, constitute violations of 18 U.S.C. §§ 371 and 1503.

### The Discharge

197.    The discharge of debt in the Bankruptcy was entered on August 10, 2009.

198.    Defendant Salois improperly obtained discharge of debt in the Bankruptcy, as the matter should have been converted to Chapter 13 or denied due to fraud on the Court.

199.    The period for revocation of discharge in the Bankruptcy pursuant to 11 U.S.C. § 727(e)(1) began as of August 10, 2009.

200.    The final decree in the Bankruptcy was entered on October 5, 2009.

201.    The period for revocation of discharge in the Bankruptcy pursuant to 11 U.S.C. § 727(e)(2) began as of October 5, 2009.

202.    The period for revocation of discharge pursuant to 11 U.S.C. § 727(e) effectively heightened the bar for proof in documentation for Plaintiff in his Objection.

203.    Defendant Salois improper categorization of Plaintiff's claim in the Bankruptcy adversely affected Plaintiff's Objection in relation to the Bankruptcy.

204.    Defendant Salois purchased the single-family residence located at the Toulon Address on June 8, 2010; being just under ten months to the day of the granting of discharge.

205.    On April 18, 2012, Defendant Salois' former student and ex-husband, Eric Salois, filed a number of documents, including but not limited to financial statements, in the Chapter 7 bankruptcy of In re Salois, case no. 12-bk-43675, in the United States Bankruptcy Court of Eastern Missouri which list the single-family residence located at the Toulon Address as an "Investment Property" of Eric Salois, while misstating the address of Defendant Salois.

IDENTITY FRAUD

Interstate Communication from Defendant Straussner

206. Plaintiff received a telephone call from Defendant Straussner from the cell phone of Defendant Salois at or around 9 pm on May 29, 2009.

207. Upon information and belief, Defendant Salois solicited, requested, or induced Defendant Straussner to use her cell phone to place the call to Plaintiff as described above, or otherwise attempted to promote or facilitate Defendant Straussner in his call to Plaintiff.

208. Upon information and belief, Defendant Straussner was located in St. Louis County, Missouri at the time of the above described call.

209. Plaintiff was in or around the vicinity of Bovina, Texas in Parmer County at or around 9 pm on May 29, 2009 driving in a southerly direction on Highway 60.

210. Plaintiff was unable to withstand any more of Defendant Straussner's abusiveness, threats, and violent, intimidating behavior some 16 minutes into the above described call and intentionally disconnected from that call.

211. Plaintiff was in Texico, New Mexico, having arrived by driving in a southerly direction on Highway 60, at the time that Plaintiff intentionally disconnected from the above described interstate telephone call placed by Defendant Straussner by means of the cell phone of Defendant Salois in St. Louis County, Missouri at or around 9:15 pm on May 29, 2009.

A. Threats of Defendant Straussner

212. Defendant Straussner identified himself to Plaintiff by the false name of "George" (hereinafter, the "Jinkerson Identity") in the above described telephone call.

213. Defendant Straussner identified himself to Plaintiff as the fiancé of Defendant Salois in

the above described telephone call.

214.    Defendant Straussner directed Plaintiff to, "Leave Sherry alone," roughly thirty times as the initial words of conversation.

215.    Defendant Straussner referred specifically to Defendant Salois in Defendant Straussner's directive as described above.

216.    Defendant Straussner spoke forcefully without allowing Plaintiff to speak during the course of Defendant Straussner's repetition of directive as described above.

217.    Defendant Straussner repeatedly warned Plaintiff regarding the futility of issuing objection to the discharge of debt in the Bankruptcy (hereinafter, "Objection") in the course of the above described call.

218.    Defendant Straussner used violent, combative, and intimidating language in communications to Plaintiff during the above described call.

219.    Defendant Straussner used racial slurs in communications to Plaintiff during the above described call.

220.    Defendant Straussner threatened Plaintiff with physical violence during the above described call.

221.    Defendant Straussner stated that Plaintiff was unaware of the law in communications to Plaintiff during the above described call.

222.    Defendant Straussner stated, "There's nothing you can do about it," in relation to the Bankruptcy and Objection in communications to Plaintiff during the above described call.

223.    Defendant Straussner stated that Defendant Salois could "do anything she wants" as far as the Bankruptcy was concerned.

224.    Defendant Straussner was aware of Plaintiff's status as a creditor in the Bankruptcy at the time of the above described call.

225.    Defendant Straussner was aware of investigation in relation to the Objection at the time of the above described call.

226.    Defendant Straussner acted in effort to dissuade Plaintiff from Plaintiff's rightful claim in the Bankruptcy in expressing futility of Objection as described above.

227.    Upon information and belief, Defendant Salois acted with intent that Defendant Straussner would act toward Plaintiff as described above in permitting, soliciting, requesting, inducing, or otherwise attempted to promote or facilitate Defendant Straussner in his call to Plaintiff.

228.    The acts of Defendant Straussner described above constitute violations of 18 U.S.C. § 1512(a)(2), (b), and (d)(1); of 18 U.S.C. §§ 875(b), 1952, and 1959(a)(4); and of 47 U.S.C. § 223(a)(1)(C).

229.    The acts of Defendant Straussner and the acts of Defendant Salois in participation thereof, as described above, constitute violations of 18 U.S.C. § 1512(c)(2) and (k); of 18 U.S.C. §§ 1503, 1343, and 1951; and of 18 U.S.C. §§ 241 and 245(b).

230.    The acts of Defendant Salois described above constitute violation of 47 U.S.C. § 223(a)(2).

231.    The acts of Defendant Straussner, and the acts of Defendant Salois in participation thereof pursuant to Tex. Pe. Code Ann. §§ 7.01, 7.02, 15.02, and 15.03, as described above, constitute violations of Tex. Pe. Code Ann. §§ 15.01, 29.02, and 32.51.

232.    The acts of Defendant Straussner, and the acts of Defendant Salois in participation

thereof pursuant to 30-28-3, 30-28-2, and 30-1-13 NMSA 1978, as described above, constitute violations of 30-16-2, 30-28-1, and 30-16-6 NMSA 1978.

<u>The Jinkerson Order</u>

A.     Report to the Assistant Trustee

233.   Plaintiff reported the threats of physical violence received from Defendant Straussner to the Assistant United States Trustee on June 1, 2009, and the Assistant Trustee made statements to the effect of providing for additional security to be present at the 341 Meeting for the purpose of ensuring that Plaintiff was able to participate in that federal process without harm.

234.   On June 1, 2009 the Assistant United States Trustee directed to Plaintiff by electronic communication statements directing Plaintiff to:

> contact your local police in order to get immediate action for your protection if you believe that is warranted.

235.   On June 1, 2009 the Assistant United States Trustee directed to Plaintiff by electronic communication statements to the effect of directing Plaintiff to request that the local authorities:

> discuss with you the procedure for obtaining a restraining order if you deem it appropriate.

B.     Compliance with Written Directive of the Assistant Trustee

236.   Plaintiff complied with the written directive of the Assistant United States Trustee in reporting to Defendant Hoots at the 4th precinct of the St. Louis County Police Department the threats of physical violence from Defendant Straussner that Plaintiff received in interstate

communication on May 29, 2009 from the cell phone of Defendant Salois as described above.

237.   Plaintiff complied with the written directive of the Assistant United States Trustee in that Plaintiff on June 9, 2009 in petitioning the 21st Judicial Circuit of the State of Missouri for an Order of Protection against Defendant Straussner under the Jinkerson Identity.

238.   Plaintiff was in imminent fear of the safety of his person due to the threats of physical violence from Defendant Straussner.

239.   Plaintiff's ability to participate in official federal judicial proceedings without serious bodily injury had been compromised and/or placed in jeopardy due to threats of physical violence against his person from Defendant Straussner.

240.   On June 9, 2009 in Cause no. 09SL-PN02411, styled Hart v. Jinkerson (hereinafter, the "Jinkerson Order"), the Hon. Mark D. Seigel of the 21st Judicial Circuit of the State of Missouri, executed and issued an ex parte Order of Protection with a finding of Stalking against Defendant Straussner, under the Jinkerson Identity used by Defendant Straussner in relation to or in contemplation of a matter under title 11, U.S.C.

241.   The Jinkerson Order was executed and issued he 21st Judicial Circuit of the State of Missouri as described above to protect Plaintiff due to threats of physical violence that Plaintiff received in the above described interstate telephone call.

242.   The Jinkerson Order was executed and issued by the 21st Judicial Circuit of the State of Missouri as described above to protect Plaintiff in being able to participate freely in a federal judicial process to which he was a party.

243.   The 21st Judicial Circuit of the State of Missouri had jurisdiction to hear this matter in relation to or arising from a pending matter under title 11, U.S.C. in that the Jinkerson Order did

- 40 -

not affect the administration of the Bankruptcy Estate or core issues per 28 U.S.C. § 157(b).

244.    Plaintiff was not required to petition the District Court to grant leave pursuant to Fed.R.Bank.P. 9027 that a civil matter in relation to or arising from a pending matter under title 11 be heard in a state court pursuant to 28 U.S.C. § 1334(c)(2) as the administration of the Bankruptcy Estate and core issues of the Bankruptcy proceedings were unaffected, and the Bankruptcy Estate had not claimed any of the property of Defendant Straussner.

C.    Service of Defendant Straussner

245.    Special Process Server David Pearson (hereinafter, "SPS Pearson") was appointed by the Hon. Mark D. Seigel to provide service of the Jinkerson Order on Defendant Straussner.

246.    Upon information and belief, SPS Pearson located the vehicle of Defendant Straussner outside the Toulon Address and was unsure as to how he might be able to get the persons inside to answer the door for a black man they did not know in a neighborhood that is over 97% white; and so donned a uniform for the United Parcel Service and approached holding a box over his clipboard to knock on the door.

247.    Upon information and belief, Defendant Straussner answered the door of when SPS Pearson knocked.

248.    Upon information and belief, SPS Pearson said, "Package for George Jinkerson," to Defendant Straussner when Defendant Straussner answered the door of that residence.

249.    Upon information and belief, Defendant Straussner made movement to sign for the package for the Jinkerson Identity offered by SPS Pearson.

250.    Upon information and belief, SPS Pearson moved the box out of the way when

- 41 -

Defendant Straussner made movement to sign for it as described above, and stated, "You've been served."

251.    The acts of Defendant Straussner described above constitute violation of 18 U.S.C. § 1349.


### The Jinkerson Account and the Jinkerson E-Mails


252.    Defendants Salois and Straussner combined, conspired, and acted together to access, seize, and use the e-mail account of georgejinkerson@hotmail.com (hereinafter, the "Jinkerson Account").

253.    Defendants Salois and Straussner combined, conspired, and acted together to originate and transmit threatening and harassing e-mails (hereinafter, the "Jinkerson E-mails") in interstate communication by means of the Jinkerson Account.

254.    Plaintiff received the Jinkerson E-mails from the Jinkerson Account in July of 2009.

255.    Each of the Jinkerson E-mails originated from the Toulon Address.

256.    Certain of the Jinkerson E-mails were signed "George."

257.    The terms of service agreement for Hotmail prohibits imposture.

258.    The first of the Jinkerson E-mails stated:

> You're a vulture that preys on and manipulates its victims. . . . Remember, I laugh as you cry. It must be humiliating.

259.    The second of the Jinkerson E-mails stated:

> Pictures and emails are all before I came and took her from you (which,by [*sic*] the way, was pretty easy to do). . .   You're someone that preys on

- 42 -

vulnerable women and slithers into their lives, just to suck the life out of them . . .

260.    The third of the Jinkerson E-mails stated:

> Why don't you post my emails on a blog? You're hurting my feelings. :-( LOL...LOL....

261.    The fifth of the Jinkerson E-mails stated:

> LOL.. [*sic*] LOL.. [*sic*] LOL...LOL...LOL.Do [*sic*] you really think people give a darn about someones [*sic*] divorce?

262.    The Jinkerson E-mails referred to Defendant Salois as the "wife" and/or "fiancée" of "George Jinkerson."

263.    The Jinkerson E-mails were intentionally enacted to corruptly influence Plaintiff in relation to the Bankruptcy.

264.    The Jinkerson E-mails' references to Defendant Salois as described above were enacted in effort to hinder, impede, and obstruct investigation of assets pursuant to the Bankruptcy.

265.    The Jinkerson E-mails were intended to harass Plaintiff, and to cause substantial emotional distress to Plaintiff.

266.    The acts of Defendants Salois and Straussner as described above constitute violations of 18 U.S.C. § 1028(a)(1) and (a)(7); of 18 U.S.C. § 1029(a)(1), (a)(2), (b)(1), and (b)(2); of 18 U.S.C. § 1512(b), (c), (d), and (k); and of 18 U.S.C. §§ 1028A(a)(1), 1030(a)(6)(A), 1343, 1503, 1519, 1951, and 1952.

267.    The acts of Defendants Salois and Straussner as described above constitute violations of Wis. Ann. Stat. § 943.70(2)(a)1, 3, 4, and 6; and of Wis. Ann. Stat. §§ 943.201(2) and 943.70(3).

<u>The Jinkerson Profile, the Jinkerson Comments, and the Jinkerson Blog</u>

268.    Defendants Salois and Straussner combined, conspired, and acted together to access, seize, possess, and use the Blogger profile number of 08856219593707711670 (hereinafter, "the Jinkerson Profile"), using its access codes and defeating its security features to do so.

269.    Defendants Salois and Straussner combined, conspired, and acted together to access, seize, possess, and use the blog at the web address of http://georgejinkerson.blogspot.com (hereinafter, the "Jinkerson Blog").

270.    Defendants Salois and Straussner combined, conspired, and acted together to originate and transmit in interstate communication by means of the Jinkerson Profile comments to Plaintiff's blog (hereinafter, the "Jinkerson Comments") and posts to the Jinkerson Blog.

271.    Plaintiff began receiving the Jinkerson Comments on his blog in July of 2009.

272.    The Jinkerson Comments originated from the Toulon Address.

273.    Defendants Salois and Straussner conspired and acted together to possess and use the name of "George Jinkerson" in the Jinkerson Profile for purposes of the Jinkerson Comments.

274.    Defendants Salois and Straussner conspired and acted together to access, seize, possess, and use the Jinkerson Profile to affect the Jinkerson Comments for purposes of stating false and malicious attacks against Plaintiff, including but not limited to:

    a.  publicly declaring Plaintiff to be "a vulture;"

    b.  publicly declaring Plaintiff to be a "child abuser;"

    c.  publicly declaring Plaintiff to had been "stalking [Defendant Salois] for over a year;"

    d.  publicly accusing Plaintiff of crimes.

275.    Defendants Salois and Straussner conspired and acted together to publicly post

defamatory materials concerning Plaintiff on the Jinkerson Blog, including, but not limited to, wrongfully accusing Plaintiff of crimes.

276.     Defendants Salois and Straussner conspired and acted together to publicly post on the Jinkerson Blog at the web address of: http://georgejinkerson.blogspot.com/2009/07/william-michael-hart-ht-510-60-wt-170.html, stating:

> (EVIDENCE AND WITNESSESS ARE ON HAND) Manipulates and verbally abuses women to persuade them to his advantage

277.     Defendants Salois and Straussner conspired and acted together to access, seize, possess, and use the Jinkerson Profile to affect the use of the Jinkerson Comments and the access and use of the Jinkerson Blog for purposes of harassing and intimidating Plaintiff, and to cause substantial emotional distress to Plaintiff.

278.     Defendants Salois and Straussner conspired and acted together to access, seize, possess, and use the Jinkerson Profile to affect the use of the Jinkerson Comments and the access and use of the Jinkerson Blog for purposes of exerting corrupt and undue influence Plaintiff in relation to the Bankruptcy and the investigation pursuant thereto.

279.     The acts of Defendants Salois and Straussner as described above constitute violations of 18 U.S.C. § 875(b) and (d); of 18 U.S.C. § 1028(a)(1) and (7); of 18 U.S.C. § 1029(a) and (b); of 18 U.S.C. § 1512(b), (c), (d), and (k); of 18 U.S.C. § 1513(e) and (f); of 18 U.S.C. §§ 1028A(a)(1), 1030(a)(6)(A), 1343, 1503, 1519, 1951, and 1952; and of 47 U.S.C. § 223(a)(2).

280.     The acts of Defendants Salois and Straussner as described above constitute violations of Wis. Ann. Stat. § 943.70(2)(a)1, 3, 4, and 6; and of Wis. Ann. Stat. §§ 943.201(2), 943.30, 943.31, and 943.70(3).

- 45 -

## CORRUPT ENDEAVORS

281.    Defendant Salois held in her hand the Respondent's copy of the Jinkerson Order immediately following the 341 Meeting.

282.    Defendant Salois made use of profanity and demonstrated her middle finger to Plaintiff immediately following the 341 Meeting.

283.    Defendant Salois was physically restrained by Defendant Straussner from battering Plaintiff immediately following the 341 Meeting.

284.    Defendant Salois stated immediately following the 341 Meeting that Plaintiff "need[ed] a restraining order against [him]."

285.    Defendant Salois' statement that Plaintiff needed a restraining order against him was baseless and unfounded.

286.    Defendant Salois' statement that Plaintiff needed a restraining order against him was intended to communicate Defendant Salois' intent of infringement of Plaintiff's rights secured by the United States Constitution and its laws under color of state law.

287.    Defendant Salois' statement that Plaintiff needed a restraining order against him was intended to intimidate Plaintiff.

288.    Defendant Salois' statement that Plaintiff needed a restraining order against him was extortionate in nature.

289.    Defendant Salois' statement that Plaintiff needed a restraining order against him was intended to impede the investigation in relation to the Bankruptcy.

290.    The acts of Defendant Salois as described above constitute violations of 18 U.S.C. §

875(b) and (d); of sub-paragraphs (a)(2)(A) and (a)(2)(B), and of paragraphs (b)(1), (b)(2),

(c)(2), and (d)(1) of 18 U.S.C. § 1512; of 18 U.S.C. § 1513(e) and (f); of 18 U.S.C. §§ 1503 and

1951; and of 18 U.S.C. § 245(b)(4(A).

291.    The acts of Defendants Salois as described above constitute violations of Wis. Ann. Stat.

§§ 943.30 and 943.31.


### Statements of Law


A.    Relation to the Bankruptcy

292.    28 U.S.C. § 1334 establishes original and exclusive jurisdiction over bankruptcy matters

to the United States district courts.

293.    28 U.S.C. § 1334(b) establishes concurrent jurisdiction over civil matters arising from or

in relation to a bankruptcy to the state courts.

294.    11 U.S.C. § 157(b)(2)(G) defines:

                motions to modify, annul, or modify the automatic stay
as core issues ineligible for removal to the State courts.

295.    11 U.S.C. § 157(b)(2)(G) governs motions from debtors, creditors, interveners, and third

parties.

296.    Fed.R.Bank.P. 9027 establishes the means of removal of civil matters arising from or in

relation to a bankruptcy to the state courts.

297.    Fed.R.Bank.P. 9033 requires that a bankruptcy judge issue recommendations to a district

judge in civil matters removed to a state court.

298.   11 U.S.C. § 362(b)(2)(A)(v) makes provision to exempt proceedings for domestic violence for removal to the state courts in relation to the automatic stay.

299.   11 U.S.C. § 707(b)(2)(A)(ii)(I) sets forth the definition for "domestic violence" for matters under Chapter 7 of title 11; being that of section 302 of the Family Violence Prevention and Services Act of 1984 as codified in 42 U.S.C. § 13925(a)(6).

300.   The definition for "crime of violence" in relation to Chapter 7 of title 11 is that of 18 U.S.C. § 16.

301.   The definition for "domestic violence" for Chapter 7 of title 11 closely parallels, if not mirrors entirely, the elements of common law battery.

302.   Local Rule 75(1) of the 21st Judicial Circuit of the State of Missouri requires a suggestion of bankruptcy to be filed when State court decisions may affect the automatic stay in a pending matter under title 11.


B.     Statutory Standards for Adult Abuse Orders of Protection in the State of Missouri

303.   Unless specifically stated otherwise, all references given herein to the Revised Missouri Statutes are to those statutes as effective in 2009 and 2010.

304.   The jurisdictional limits of the family law courts of the State of Missouri are set forth in R.S.Mo. § 487.010.

305.   R.S.Mo. § 487.010(7) confers jurisdiction of:

> [a]dult abuse and child protection actions and all actions provided for in
> chapter 455

to the family law courts of the State of Missouri.

306. R.S.Mo. § 487.010 states that the jurisdiction of the family law courts of the State of Missouri is original and exclusive in matters under Chapter 455 of the Revised Missouri Statutes, making no manner of exception for matters reserved to the original and exclusive jurisdiction of the United States District Courts.

307. R.S.Mo. § 487.010 states that the jurisdiction of the family law courts of the State of Missouri are original and exclusive in matters under Chapter 455 of the Revised Missouri Statutes, making no manner of exception or provision for rights secured by the United States Constitution or its laws.

308. Merely because someone happened to scribble something on a form provided by the county in no way ensures that the content of that document might meet the bar for the family law courts of the State of Missouri to exercise subject matter jurisdiction.

309. Upon information and belief, Courts dismiss actions for lack of subject matter jurisdiction on a regular basis.

310. The Revised Missouri Statutes effective in 2009 gave no definition for "domestic violence" in R.S.Mo. §§ 455.010 to 455.085.

311. The definition for "domestic violence" in Chapter 455 of the Revised Missouri Statutes effective in 2009 is found in R.S.Mo. § 455.200, being the section providing definitions in relation to shelters and the funding of shelters.

312. "Domestic violence" as set forth in R.S.Mo. § 455.200 is:

> attempting to cause or causing bodily injury to a family or household member, or placing a family or household member by threat of force in fear of imminent physical harm[.]

313. The definition of "domestic violence" as set forth in R.S.Mo. § 455.200 comports with

that set forth in 11 U.S.C. §§ 362(b)(2)(A)(v) and 707(b)(2)(A)(ii)(I), in 42 U.S.C. § 13925(a)(6), and in 18 U.S.C. § 16, as well as satisfying the essential elements of common law battery.

314.   R.S.Mo. §§ 455.010 to 455.085 set forth the standards by which the family law courts of the State of Missouri might lawfully issue an adult abuse order of protection, inclusive of ex parte orders.

315.   R.S.Mo. § 455.035 establishes the standards for the lawful issuance of an ex parte order of protection.

316.   R.S.Mo. § 455.035 requires "good cause," which is defined as:

> [a]n immediate and present danger of abuse to the petitioner[.]

317.   R.S.Mo. § 455.020 limits the relief of an adult abuse order of protection to persons subject to "abuse" or "stalking" as defined by R.S.Mo. § 455.010.

318.   R.S.Mo. § 455.020 requires a petitioner seeking the relief of an order of protection pursuant to R.S.Mo. §§ 455.010 to 455.085 to:

> fil[e] a verified petition alleging such abuse or stalking by the respondent

as such terms are defined by R.S.Mo. § 455.010.

319.   R.S.Mo. § 455.010(1) defines "abuse" as:

    a.   to compel to conduct or abstention from conduct;

    b.   causing to engage in any sexual act involuntarily by force or duress; or

    c.   holding, confining, detaining, or abducting another against that person's will;

inclusive of threats or attempts of such acts; as well as the following with the mens rea of purposely or knowingly:

    a.   placing another in fear of physical harm;

- 50 -

    b.  causing physical harm to another; or

    c.  engaging in a course of conduct serving no legitimate purpose, excepting constitutionally protected activity, which:

        i.  would cause fear of danger of physical harm, or

        ii.  would cause a reasonable person to suffer substantial emotional distress and actually does so;

inclusive of any threats or attempts of such acts.

320.   R.S.Mo. § 455.010(10) defines "stalking" as:

    a.  purposely and repeatedly,

    b.  engaging in an unwanted a pattern of conduct,

    c.  evidencing a continuity of purpose,

    d.  that serves no legitimate purpose,

    e.  that causes fear of danger of physical harm to another person under the reasonable person standard.

321.   The definitions for "abuse" and "stalking" as set forth in R.S.Mo. § 455.010(1) and (10) indicate that the intent of the legislature was to provide relief in the form of a civil injunction for the common law torts of duress, sexual battery, assault, battery, and intentional infliction of emotional distress; and limited to these alone rather than other types of complaints.

322.   R.S.Mo. § 455.035 specifies the effective time of an ex parte order of protection as immediately upon being entered by the court.

323.   R.S.Mo. § 455.035 specifies that an ex parte order of protection will:

       remain in effect until there is valid service of process and a hearing is held

> on the motion[,]

providing no manner of provision for expiration on its own.

324.   R.S.Mo. § 455.040(2) states that:

> [f]ailure to serve or mail a copy of the full order of protection to the
> respondent shall not affect the validity or enforceability of a full order of
> protection.

This provision is an infringement on due process rights, both procedural and substantial, secured

by the Fourth and Fourteenth Amendments of the United States Constitution.

325.   R.S.Mo. § 455.020 set the effective territorial limit for adult abuse orders of protection,

inclusive of ex parte orders, to:

> throughout the state in all cities and counties.

326.   R.S.Mo. § 455.032 contains provisions for parties not in residence subject to a protection

order pursuant to R.S.Mo. §§ 455.010 to 455.085 to be subject to an order upon entering the

State.

327.   Nothing in R.S.Mo. §§ 455.010 to 455.085 provides for extraterritorial relief.

328.   Adult abuse orders of protection are statutorily prohibited from:

> be[ing] res judicata to any subsequent proceeding.

as set forth in R.S.Mo. § 455.060(3).

329.   R.S.Mo. § 455.085(2) and (7) provide for the arrest and initiation of criminal charges

against a respondent in an ex parte order of protection only in instances in

> which the respondent has notice.

C.   Statutory Standards for Foreign Civil Injunctions Cognizable in the State of Wisconsin

330.   The allegations of Defendant Salois in the Original Petition, even if taken as true on their

face, do not arise to the level of "domestic abuse" as set forth by Wis. Ann. Stat. § 813.12(1)(am); namely, of:

    a.  Intentional infliction of physical pain, physical injury or illness;

    b.  Intentional impairment of physical condition;

    c.  Sexual assault pursuant to Wis. Ann. Stat. § 940.225(1), (2), or (3);

    d.  Damage to property pursuant to Wis. Ann. Stat. § 943.01, involving property that belongs to the individual; or

    e.  A threat to engage in said conduct.

331.    The allegations of Defendant Salois in the Original Petition, even if taken as true on their face, do not arise to the level of "harassment" as set forth by Wis. Ann. Stat. § 813.125(1); namely, of:

    a.  Striking, shoving, kicking or otherwise subjecting a person to physical contact;

    b.  Child abuse pursuant to Wis. Ann. Stat. § 48.02(1), being:

        i.  Physical injury inflicted on a child by other than accidental means;

        ii.  Sexual intercourse or contact with a child;

        iii.  Sexual exploitation of a child, or permitting, encouraging or allowing a child to engage in prostitution;

        iv.  Causing a child to view or listen to sexual activity;

        v.  Exposing genitals or pubic area to a child;

        vi.  Manufacture of methamphetamine in the presence of a child; or

        vii.  Refusal to provide treatment for emotional damage of a child for reasons other than poverty;

c.  Sexual assault pursuant to Wis. Ann. Stat. § 940.225;

d.  Stalking pursuant to Wis. Ann. Stat. § 940.32, being:

  i.  To intentionally and knowingly engage in a course of conduct

  ii.  Which would cause a reasonable person to:

    a)  Suffer serious emotional distress,

    b)  Fear bodily injury, or

    c)  Fear the death of himself or herself or a member of his or her family or household.

332.    Defendant Salois, by her allegations in the Original Petition, was not eligible for a domestic abuse civil injunction in the State of Wisconsin pursuant to Wis. Ann. Stat. § 813.12(5)(a).

333.    Defendant Salois, by her allegations in the Original Petition, was not eligible for a harassment civil injunction in the State of Wisconsin pursuant to Wis. Ann. Stat. § 813.125(5)(a).

334.    Defendant Salois, by her allegations in the Original Petition, was not eligible for a domestic abuse temporary restraining order in the State of Wisconsin pursuant to Wis. Ann. Stat. § 813.12(3)(a).

335.    Defendant Salois, by her allegations in the Original Petition, was not eligible for a harassment temporary restraining order in the State of Wisconsin pursuant to Wis. Ann. Stat. § 813.125(3)(a).

336.    That Defendant Salois failed to disclose the automatic stay in the Bankruptcy in the Original Petition would have rendered void any civil domestic abuse injunction or temporary

- 54 -

restraining order in the State of Wisconsin pursuant to Wis. Ann. Stat. § 813.12(5)(a)(4), or any civil harassment injunction or temporary restraining order pursuant to Wis. Ann. Stat. § 813.125(5)(a)(4).

337. The Ex Parte Order did not meet the standards of due process for enforceability of a foreign protection order as set forth in Wis. Ann. Stat. § 806.247(2)(a)(1) , including but not limited to the extension without notification to Plaintiff beyond a time reasonably allowable.

338. The Ex Parte Order did not meet the standards of due diligence in due process for enforceability of a foreign protection order as set forth in Wis. Ann. Stat. § 806.247(2)(a)(1), including but not limited to Defendant Salois' failure to enter Plaintiff's proper address in the Original Petition.

339. The Ex Parte Order does not meet the standards of personal jurisdiction of the court for enforceability of a foreign protection order as set forth in Wis. Ann. Stat. § 806.247(2)(a)(2).


D.     Rights Secured to Plaintiff by the United States Constitution and Its Laws

340. Upon information and belief, it has been adjudicated by the courts of the State of Missouri that merely maintaining a website accessible from the State of Missouri subjects a respondent to violation of an order of protection.

341. Access of a website requires an affirmative act on the part of the user; pop-up windows notwithstanding.

342. To prohibit publication of lawful materials due to the possibility that some person wishing not to view them possibly might if they go out of their way to do so is an infringement on the rights secured by the First Amendment of the United States Constitution.

343.   In the Plaintiff's case, the subject matter required deleted from publication for consumption of the general public as described above included the following excerpt from notable civil rights luminary Martin Luther King, Jr. from his book, Strength to Love, p. 37:

> [U]nenforceable obligations are beyond the reach of the laws of society. They concern inner attitudes, genuine person-to-person relations, and expressions of compassion which law books cannot regulate and jails cannot rectify.  Such obligations are met by one's commitment to an inner law, written on the heart.  Man-made laws assure justice, but a higher law produces love.

344.   R.S.Mo. § 455.085 provides for the arrest of a respondent who, having received notice of an ex parte order, violates such an order; including but not limited to publication of material as public speech on a website as described above.

345.   That the family law court of the 21st Judicial Circuit of the State of Missouri acted in absence of jurisdiction to compel Plaintiff to remove the quote from Rev. King from public availability as described above was an infringement of Plaintiff's civil rights.

346.   That Plaintiff did not protest personal jurisdiction of the court immediately upon appearance pursuant to the Ex Parte Order did not constitute waiver of right in a federal hearing conducted in a state court pursuant to 28 U.S.C. § 1334(b).

347.   Plaintiff's failure to protest personal jurisdiction of the court immediately upon appearance pursuant to the Ex Parte Order, as a federal hearing being conducted in a state court pursuant to 28 U.S.C. § 1334(b), constitutes a forfeiture of right, in that "[a] waived claim or defense is one that a party has knowingly and intelligently relinquished; a forfeited plea is one that a party has merely failed to preserve." Wood v. Milyard, 132 S.Ct. 1826, 1832 n.4 (2012); see also United States v. Olano, 507 U.S. 725, 733 (1993); United States v. McGehee, 672 F.3d

- 56 -

860, 873 (10th Cir. 2012) ("Waiver is accomplished by intent, but forfeiture comes about through neglect." (quotation marks, citation, alterations omitted)).

348.     Being a federal hearing conducted in a state court pursuant to 28 U.S.C. § 1334(b), the Ex Parte Order does not meet the standards of subject matter jurisdiction of the court for enforceability of a foreign protection order as set forth in Wis. Ann. Stat. § 806.247(2)(a)(2).

349.     "[S]ince Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law.  Ex parte Young teaches that when a state officer acts under a state law in a manner violative of the Federal Constitution, he

> 'comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.' *Id.*, at 159—160, 28 S.Ct., at 454. (Emphasis supplied.)

Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974) (citations in original)


## The Original Petition


350.     Defendant Salois, combined, conspired, and acted together with other members of the Racketeering Enterprise in executing and/or submitting to the 21st Judicial Circuit of the State of Missouri an original petition for an ex parte Order of Protection (hereinafter, "Original Petition") in Cause no. 09SL-PN02974, styled Salois v. Hart, (hereinafter, the "Ex Parte Order") on July

13, 2009.

351. Defendant Salois' statements in the Original Petition were made under oath and affirmation.

352. There was no legitimate basis for Defendant Salois to contemplate, execute, and/or submit the Original Petition.

353. Whereas Defendant Salois entered Plaintiff's Wisconsin address on Schedule F for the Bankruptcy, Defendant Salois entered the Missouri address of Plaintiff's storage facility on the Original Petition.

354. Defendant Salois knowingly and intentionally misrepresented the acts of Plaintiff in the Original Petition.

355. Defendant Salois knowingly and intentionally misrepresented the acts of the Detective in the Original Petition.

356. Defendant Salois knowingly and intentionally misrepresented the acts of SPS Pearson in the Original Petition.

357. Milwaukee County, Wisconsin is some 400 miles away from St. Louis County, Missouri.

358. Milwaukee County, Wisconsin is a 7-hour drive from St. Louis County, Missouri.

359. It is not feasible for a person in Milwaukee County, Wisconsin to batter a person in St. Louis County, Missouri.

360. Plaintiff never at any time committed, nor attempted or devised a scheme to commit, a crime of violence against Defendant Salois.

361. No act of Plaintiff's conduct comported with the definitions of "abuse" or of "stalking" as set forth by R.S.Mo. § 455.010.

A.     Fraudulent Representations and Omissions

362.    Defendant Salois stated in the Original Petition concerning Plaintiff:

Harassing phone calls since January 2009

intentionally and corruptly omitting that said calls were in attempt by Plaintiff to obtain

Plaintiff's tax records which Defendant Salois had maliciously concealed.

363.    Defendant Salois' above described statement in the Original Petition concerning phone

calls from Plaintiff intentionally and corruptly omitted that said calls were in attempt by Plaintiff

to make arrangements for Plaintiff to recover other of his property which Defendant Salois had

attempted to convert.

364.    Telephone harassment is a crime in the State of Missouri pursuant to R.S.Mo. §

565.090(3).

365.    Defendant Salois stated in the Original Petition concerning Plaintiff:

Has come to my house unannounced and uninvited twice since March
2009

intentionally and corruptly omitting that Plaintiff requested assistance from the St. Louis County

Police Department to remove Plaintiff's property from the Toulon Address during one said visit.

366.    Defendant Salois stated in the Original Petition concerning Plaintiff:

Called my brothers & indicated that he's watching me and fiance 6/10

to intentionally and corruptly misrepresent the activities of the Detective in the investigation

pursuant to the Bankruptcy.

367.    Defendant Salois stated in the Original Petition concerning Plaintiff:

Had fake restraining order "served" on my fiance at my house 6/9

to intentionally and corruptly misrepresent the activities of SPS Pearson in serving the summons on Defendant Straussner, who was then using the Jinkerson Identity, in Cause no. 09SL-PN02411 as described above.

368.    Simulating legal process is a crime in the State of Missouri pursuant to R.S.Mo. § 575.130.

369.    Defendant Salois stated in the Original Petition concerning Plaintiff:

> Came to my residence after being told to stay away 5/26

which is a statement false in part; as it was not until Plaintiff received the telephone call from Defendant Straussner in interstate communication as described above that Plaintiff was "told to stay away" from Defendant Salois.

370.    Defendant Salois stated in the Original Petition concerning Plaintiff:

> Threatening to make baseless allegations to state about my children

which is a false statement; and nonetheless does not establish "good cause" pursuant to R.S.Mo. § 455.035 for seeking an order of protection or for granting an ex parte order of protection, even were the statement itself true.

371.    Making a false report of child abuse is a crime in the State of Missouri pursuant to R.S.Mo. § 210.165(2).

372.    Defendant Salois stated in the Original Petition concerning Plaintiff:

> Has stated on the blog, in emails, and in phone calls something more is yet
> to come and I "have been warned."

which is false in part; and nonetheless does not establish "good cause" pursuant to R.S.Mo. § 455.035 for seeking an order of protection or for granting an ex parte order of protection, even were the statement itself true.

373.    Defendant Salois intentionally and corruptly omitted in the "warning" referenced in the Original Petition consists of the following:

> Truth will endure where falsity fails.
> You are warned.

which is to say that Plaintiff had warned Defendant Salois specifically regarding the enduring nature of the truth.

374.    Plaintiff's exhortation to truthfulness is tantamount to the relevant statements of Julio Díaz to Alma Febus, which "in essence, advises her to be better informed, cautions her against future defamation towards him[,] and mentions a potential civil action" Maldonado v. Municipality of Barceloneta, 2009 WL 636016 (D.P.R. 2009) as a matter of law.

375.    Plaintiff's exhortation to truthfulness, like that at issue in Maldonado described above, did not amount to intimidation as a matter of law.

376.    Defendant Salois' allegation that Plaintiff's exhortation to truthfulness constituted good cause for a reasonable person to fear was an intentional and corrupt misrepresentation.

377.    Defendant Salois stated in the Original Petition concerning Plaintiff:

> Create website to post pictures and my personal information, including my
> full name 7/10

intentionally and corruptly misrepresenting the purpose of Plaintiff's website.

378.    Defendant Salois' above described statement in the Original Petition concerning Plaintiff's website intentionally and corruptly omitted that Defendant Salois at the relevant time already had a number of websites where her photos and full name were posted.

379.    Defendant Salois' above described statement in the Original Petition concerning Plaintiff's website intentionally and corruptly omitted that the "personal information" referred to

by Defendant Salois was in fact a matter of public record.

380.   Defendant Salois, having combined, conspired, and agreeing to act together with other members of the Racketeering Enterprise, has repeatedly made the claim that the phrase "ignorant whore" constitutes "personal identifying information" of Defendant Salois, both individually and through counsel.

381.   Defendant Salois stated in the Original Petition concerning Plaintiff:

> I am afraid of [Plaintiff], and there is an immediate and present danger of abuse and stalking of me

which statement is wholly false, intentionally and corruptly misrepresenting the activities of Plaintiff, the Detective, and SPS Pearson.

382.   Defendant Salois stated in the Original Petition concerning Plaintiff:

> Continues to escalate intimidating behavior

which statement is false on its face.

383.   Defendant Salois' above described allegation in the Original Petition concerning "intimidating behavior" of Plaintiff intentionally and corruptly misrepresented the acts and/or conduct of Plaintiff, the Detective, and/or SPS Pearson.

384.   Defendant Salois stated in the Original Petition concerning Plaintiff:

> Blames my children for ending relationship

which is a false statement; and is nonetheless does not establish "good cause" pursuant to R.S.Mo. § 455.035 for seeking an order of protection or for granting an ex parte order of protection, even were the statement itself true.

385.   Defendant Salois stated in the Original Petition concerning Plaintiff:

> Has been violent toward my youngest child

- 62 -

which is a false statement; and is nonetheless does not establish "good cause" pursuant to R.S.Mo. § 455.035 for seeking an adult abuse order of protection or for granting an adult abuse ex parte order of protection, even were the statement itself true.

386.    Defendant Salois' above described allegation in the Original Petition concerning violence toward her child intentionally and corruptly omitted to identify or indicate how any person in Milwaukee County, Wisconsin might pose a continuing threat to a child in St. Louis County, Missouri.

387.    Abuse or neglect of a child is a crime in the State of Missouri pursuant to R.S.Mo. § 568.060.

388.    The acts, misrepresentations, and omissions of Defendant Salois in, of, and/or in relation to the Original Petition described above constitute violations of 18 U.S.C. § 157(2) and (3); of 18 U.S.C. § 152(2) and (3); of sub-paragraphs (a)(2)(A), (a)(2)(B)(1), (b)(2)(A), and (b)(2)(D), and of paragraphs (b)(1), (c)(2), and (d)(1) of 18 U.S.C. § 1512; of 18 U.S.C. § 1513(b)(1) and (e); of 18 U.S.C. § 1952; and of 18 U.S.C. §§ 1621 and 1623.

389.    The acts, misrepresentations, and omissions of Defendant Salois in, of, and/or in relation to the Original Petition described above constitute violations of Wis. Ann. Stat. §§ 943.30 and 943.31.

B.    Conspiracy with Defendants Wessling and Legal Advocates for Abused Women

390.    Defendant Legal Advocates for Abused Women combined, conspired, and agreed with Defendant Salois and other members of the Racketeering Enterprise.

391.    Defendant Wessling combined, conspired, and agreed with Defendant Salois and other

members of the Racketeering Enterprise.

392.    Defendants Salois, Wessling, and Legal Advocates for Abused Women devised or intended to devise a scheme or artifice to deprive Plaintiff of right, interest or property by deceit.

393.    Defendants Salois, Wessling, and Legal Advocates for Abused Women for the purpose of knowingly executing or attempting to execute the scheme submitted the Original Petition as described above and related documents and acts in relation to the Original Petition.

394.    "An attorney's license is not an invitation to engage in racketeering."   Handeen v. Lemaire, 112 F.3d 1339, 1349 (8th Cir. 1997)

395.    Defendants Wessling and Legal Advocates for Abused Women committed fraud in determining that Defendant Salois was "low-income" as per the mission statement of, the grant requests for, and corporate donor statements to Defendant Legal Advocates for Abused Women; although Defendant Salois declared annualized income in the Means Test of $52,333.

396.    With the federal character of the proceeding having been initially disclosed, Defendants Salois, Wessling, and Legal Advocates for Abused Women made a false or fraudulent representation or claim in, of, and/or in relation to the Original Petition concerning or in relation to a proceeding under Title 11.

397.    With the federal character of the proceeding having been initially disclosed, Defendants Salois, Wessling, and Legal Advocates for Abused Women made a false or fraudulent representation or claim in, of, and/or in relation to the Ex Parte Order concerning or in relation to a proceeding under Title 11.

398.    Defendants Wessling's and Legal Advocates for Abused Women's services provided to Defendant Salois were not lawful or bona fide pursuant to 18 U.S.C. § 1515(c) due to:

a.   the numerous material misrepresentations and omissions in the Original Petition;

b.   the numerous procedural defects in the Original Petition;

c.   numerous violations of title 11 and the Federal Rules of Bankruptcy Procedure in the Original Petition;

d.   substantial and material fraud enacted in the mission statement, grant requests, and donor solicitations in providing such services in the Original Petition;

e.   violations of rights secured by the United States Constitution and its laws in the Original Petition;

f.   other similar considerations which will be supported by discovery.

399.   Defendants Legal Advocates for Abused Women and Wessling are without lawful authority to use the Family Law Courts of the State of Missouri to the ends of preventing investigation of allegations of child abuse and endangerment by the appropriate State agencies as described above.

400.   The acts, misrepresentations, and omissions of Defendants Salois, Wessling, and Legal Advocates for Abused Women in, of, and/or in relation to the Original Petition and the Ex Parte Order described above constitute violations of 18 U.S.C. §§ 1512(k) and 1513(f); of 18 U.S.C. §§ 1503, 1519, and 1951; of 18 U.S.C. § 371; and of 18 U.S.C. §§ 241, 242, and 245(b)(4)(A).


C.   Relation to the Bankruptcy

401.   The Original Petition, arising from and in relation to the Bankruptcy, was a federal hearing being conducted in a state court pursuant to 28 U.S.C. § 1334(b).

402.   The Original Petition specifically stated that Plaintiff was a party and a witness in a

- 65 -

pending federal judicial proceeding; namely, the Bankruptcy.

403.   Defendant Salois failed to comply with 11 U.S.C. § 157(b)(2)(G) in the Original Petition.

404.   Defendant Salois failed to comply with Fed.R.Bank.P. 9027 in the Original Petition.

405.   Defendant Salois failed to comply with Fed.R.Bank.P. 9033 in the Original Petition.

406.   Defendant Salois failed to comply with Fed.R.Civ.P. 81 in the Original Petition.

407.   Defendant Salois failed to comply with 11 U.S.C. §§ 362(b)(2)(A)(v) and 707(b)(2)(A)(ii)(I) in the Original Petition.

408.   Defendant Salois failed to comply with Local Rule 75(1) in the Original Petition.

409.   Defendant Salois' reckless or deliberate disregard for the truth in omitting that the Bankruptcy was pending was material to the Original Petition and subsequent actions and proceedings related to the Original Petition.


### Extension of the Ex Parte Order


410.   Defendant Salois requested an extension of the Ex Parte Order on July 30, 2009.

411.   The Ex Parte Order and its extension were not emergency orders, as Plaintiff presented no threat of physical harm to Defendant Salois.

412.   Plaintiff had no contact with Defendant Salois from July 13 through July 30, 2009, other than having received the fifth of the Jinkerson E-Mails.

413.   Defendant Katherine Wessling, combining, conspiring, and acting together with Defendant Salois and other members of the Racketeering Enterprise, entered as counsel for Defendant Salois.

414.   Defendant Wessling did so for the purpose of making false and intentionally misleading statements and misrepresentations to the court.

415.   Defendant Wessling was aware of the pending federal judicial proceeding of the Bankruptcy at all relevant times.

Interference with Process

416.   Defendant Salois was served on Cause No. 09SL-PN03699, styled Hart v. Salois, (hereinafter, the "First St. Louis County Order") by SPS Pearson at the residence at the Toulon Address on September 4, 2009; which was in effect through November 4, 2010.

417.   Upon information and belief, Defendant Straussner threatened SPS Pearson with physical violence and chased him from the property while affecting service of the First St. Louis County Order.

418.   SPS Pearson was shaken by the confrontation with Defendant Straussner on September 4, 2009 and stated Defendant Straussner was the type who would fight with the police if he thought he could get away with it.

419.   Upon information and belief, Defendant Salois continued to actively avoid service, including but not limited to:

    a.   "ran screaming for help" upon sight of SPS Pearson;

    b.   battery of SPS Pearson by Defendant Straussner; and

    c.   other instances of avoidance documented by available evidence.

A.     Defendant Wessling

420.   Defendant Wessling provided services to Defendant Salois outside of the charitable purpose of and stated by Defendant Legal Advocates for Abused Women, including but not limited to:

a.  filing a Motion to Set Aside for respondent in an order of protection hearing contesting service;

b.  contesting process for respondents in order of protection hearings as an "emergency service;" and

c.  seeking a subpoena issued for SPS Pearson to give deposition relating to service of Defendant Salois.

421.   Defendant Salois' motion to set aside, argued by Defendant Wessling, contesting the service in the First St. Louis County Order was denied on May 20, 2010.

422.   The First St. Louis County Order was extended September 23, 2010 over Defendants Wessling's and Salois' objections.

423.   Counsel for Plaintiff entered on Cause No. 10SL-PN04549, styled <u>Hart</u> <u>v.</u> <u>Salois</u> (hereinafter, the "Second St. Louis County Order"), on November 17, 2010 and filed a memorandum of dismissal. The memorandum was filed by the clerk on the following day, and became effective pursuant to Rule 67.02(a), being before any testimony in the case was heard. <u>State</u> <u>v.</u> <u>Kalk</u> 299 S.W.3d 44, 47 (2009)

424.   Defendant Wessling filed an interrogatory in the Second St. Louis County Order, even though the case was dismissed. Counsel for Plaintiff never received a copy of the Interrogatory.

425.   Defendant Wessling inappropriately used the interrogatory in the dismissed Second St.

Louis County Order to conduct a warrantless search of Plaintiff's e-mail account and other personal documents.

## WIRE FRAUD

### The Sherry Salois Blog

426.   Defendant Salois combined, conspired, and acted together with other members of the Racketeering Enterprise to change the title of her blog at the web address of http://nvisiblewmnarchive.blogspot.com (hereinafter, the "Sherry Salois Blog") to "Stop Stalking Me" in July of 2009.

427.   The Blogger profile of Blogger profile no. 10159463105401061130 (hereinafter, the "Salois Profile") was the sole property of Defendant Salois at all relevant times.

428.   Defendant Salois retained the Blogger profiles of nos. 09304888421438715896, 00963391797951125445, and 05875945554987676866, among others, as her sole property at all relevant times.

429.   Defendant Salois changed the screen name for the Salois Profile to "Sherry Salois" in July of 2009.

430.   Defendant Salois combined, conspired, and acted together with other members of the Racketeering Enterprise to enact the multiple objectives of the Racketeering Enterprise, or to assist in or facilitate such objectives, in the social engineering techniques utilized in the Sherry Salois Blog.

431.   Defendant Salois, acting with other members of the Racketeering Enterprise, billed the Sherry Salois Blog one of "a series of new sites" to the ends described above.

432.   Defendant Salois, conspiring with other members of the Racketeering Enterprise, acted to publish on the Sherry Salois Blog deliberate misrepresentations and falsehoods concerning Plaintiff, the Detective, and/or SPS Pearson.

433.   Defendant Salois, conspiring with other members of the Racketeering Enterprise, acted to publish on the Sherry Salois Blog deliberate misrepresentations and falsehoods concerning Plaintiff, including but not limited to stating:

   a.   that Plaintiff was a stalker;

   b.   that Plaintiff was a drunk;

   c.   that Plaintiff had her fiancé served with a fake restraining order;

   d.   that Plaintiff had forged a judge's signature;

   e.   that Plaintiff "stalked [Defendant Salois] in real life through phone calls, emails, unannounced and uninvited visits;"

   f.   that Defendant Salois "fear[ed] for [her] life, [her] children's lives, and [Defendant Straussner's] life" directly due to the acts and conduct of Plaintiff; and

   g.   photoshopping Plaintiff's name into a credit card statement of Defendant Salois (hereinafter, "Altered Card Statement").

434.   Each of Defendant Salois' and/or other members of the Racketeering Enterprises' statements regarding Plaintiff described above were wholly false, completely unfounded, and/or misrepresented to the point of fictionalization.

435.   Defendant Salois combined, conspired, and acted together with other members of the

Racketeering Enterprise to intentionally cause Plaintiff substantial emotional distress and mental anguish by means of the Sherry Salois Blog.

The Pendleton Comments

436.    Defendant Pendleton combined, conspired, and acted together with Defendant Salois and other members of the Racketeering Enterprise.

437.    Defendant Pendleton held sole possession of Blogger account no. 16385093247915560752 (hereinafter, "Utah Savage Account"), and used the screen name "Utah Savage" for said account at all relevant times.

438.    Defendant Pendleton, as "Utah Savage," was and/or is the proprietress and/or administrator for the blog "Deadly Women Write."

439.    "Deadly Women Write" is an invitation-only blog dedicated to works of short "fiction," each of which involves a woman taking the life of a man.

440.    Part of the philosophy behind Defendant Pendleton "Utah Savage" persona and/or "Deadly Women Write" is the idea that a woman taking the life of a man is supposedly an empowering feminist experience.

441.    Defendant Pendleton posted three comments on Plaintiff's blog on consecutive days (hereinafter, the "Pendleton Comments") beginning July 14, 2009.

442.    Defendant Pendleton combined, conspired, and acted together with Defendant Salois and other members of the Racketeering Enterprise in posting the Pendleton Comments to Plaintiff's blog.

443. The first of the Pendleton Comments advised Defendant Salois to arm herself with a firearm.

444. The last of the Pendleton Comments contained a reference and link to the Sherry Salois Blog.

445. The link and reference to Defendant Salois' blog in the Pendleton Comments pointed to the image of the Altered Card Statement.

446. The Altered Card Statement referenced and linked in the Pendleton Comments was altered to include Plaintiff's name, "William M. Hart."

447. Plaintiff's name was included in the Altered Card Statement as described above at a place to indicate that Plaintiff, as a creditor in a pending matter under title 11, actually owed the debtor in the Bankruptcy, Defendant Salois, a substantial amount.

448. Defendant Pendleton directed the Pendleton Comments directed to Plaintiff as a threat against him.

449. The foreseeable risk of serious harm to which Plaintiff was rendered more vulnerable, and which was made more likely by official acts, was partly originated from Salt Lake County, Utah.

450. The acts of Defendant Pendleton described above, and the acts of the Racketeering Enterprise in participation thereof, constitute violations of 18 U.S.C. §§ 1343, 1503, 1519, 1951, 1952, 1959(a)(4); of 18 U.S.C. § 1512 in subsection (k), paragraphs (b)(1), (c)(1), (c)(2), and (d)(1), sub-paragraphs (a)(2)(A), (b)(2)(A), and (b)(2)(D), and sub-sub-paragraph (a)(2)(B)(i); of 18 U.S.C. § 1513(b)(1), (e), and (f); of 18 U.S.C. §§ 241 and 245(b)(4)(A); of 18 U.S.C. §§ 157(3), 371, and 875(d); and of 47 U.S.C. § 223(a)(1)(E).

451.    The acts of Defendant Pendleton described above, and the acts of the Racketeering Enterprise in participation thereof, constitute violations of Utah Code Ann. 76-5-102, 76-6-406, 76-8-306, 76-8-508, 76-8-508.3, 76-8-509, and 76-10-1801.

452.    The acts of Defendant Pendleton described above, and the acts of the Racketeering Enterprise in participation thereof, constitute violations of Wis. Ann. Stat. §§ 940.201, 943.30, 943.31, and 943.70(2).


Interstate Communication from Defendant Shirley Hopper


453.    Defendant Shirley Hopper combined, conspired, and acted together with Defendant Salois and other members of the Racketeering Enterprise.

454.    Defendant Shirley Hopper acted in interstate communication on July 13, 2009 in placing a telephone call to Plaintiff from Missouri to Wisconsin.

455.    Defendant Shirley Hopper acted to corruptly influence Plaintiff in the above described call.

456.    Defendant Shirley Hopper made statements to Plaintiff to the effect that Defendant Salois was mentally unstable during the course of the above described call.

457.    Defendant Shirley Hopper made statements to Plaintiff that Defendant Salois presented a likelihood of serious physical harm to herself during the course of the above described call.

458.    Defendant Shirley Hopper's statements of concern regarding the likelihood of serious physical harm which Defendant Salois presented to herself occurred on that same day when Defendant Salois executed affirmations in the Original Petition representing allegations that

Defendant Salois presented a likelihood of serious physical harm to her children as "baseless;" being July 13, 2009.

459.    Defendant Shirley Hopper knew of the Ex Parte Order and of Plaintiff's Objection at the time of the above described call.

460.    The acts of Defendant Shirley Hopper as described above constitute violations of 18 U.S.C. §§ 371, 1343, 1503, and 1519; and of 18 U.S.C. §§ 241, 242, and 245(b).

Online Harassment

461.    Plaintiff received the fifth of the Jinkerson E-mails on July 24, 2009, being 11 days after the Original Petition was executed and the Ex Parte Order was issued.

462.    As an attempt of entrapment of Plaintiff by the Racketeering Enterprise, the fifth of the Jinkerson E-mails encouraged Plaintiff to publish information from the divorce records that Plaintiff obtained pursuant to the investigation in relation to the Bankruptcy.

463.    Defendant Straussner and other members of the Racketeering Enterprise combined and conspired together to post comments concerning Plaintiff from the Jinkerson Profile at the Sherry Salois Blog with malicious intent.

464.    Defendant Shirley Hopper combined, conspired, and acted together with other of the members of the Racketeering Enterprise to post comments concerning Plaintiff from the Jinkerson Profile at the Sherry Salois Blog with malicious intent, including but not limited to the posting of threats toward Plaintiff.

465.    Upon information and belief, other of the members of the Racketeering Enterprise

combined, conspired, and acted together with Defendants Salois and Straussner to direct e-mail from a random anonymizer to Plaintiff with malicious intent.

466. Upon information and belief, other of the members of the Racketeering Enterprise combined, conspired, and acted together with Defendants Salois and Straussner to post online defamatory statements regarding Plaintiff as a witness in a federal matter on the website, Topix.

## EXTORTION UNDER COLOR OF OFFICIAL RIGHT

### Service of the Ex Parte Order

467. Plaintiff was served with the Ex Parte Order by the Milwaukee County Sheriff's Office in Racine County, Wisconsin on August 17, 2009.

468. Wisconsin law prohibits a foreign order from being enforceable upon a resident until such time as the resident receives notice.

469. Plaintiff took efforts to protect the evidence of federal crimes being held on his blog.

470. Plaintiff was of a mind that the Racketeering Enterprise would try to use the power and force of the state to gain possession of that property and the evidence there held, notwithstanding the issues of transfer of property from a creditor to a debtor in a pending bankruptcy proceeding.

471. Plaintiff transferred possession of the Invisible Woman Blog on August 22, 2009; the transfer being verified and approved by the owners of the platform.

472. The Ex Parte Order impeded the investigation pursuant to the Bankruptcy as documented in several e-mails from the Detective.

## The Consent Order

473.    Defendants Salois and Wessling made claims on the property of Plaintiff not the property of the Bankruptcy Estate.

474.    Defendants Salois and Wessling combined and conspired to attempt to destroy evidence of federal crimes being held on the Invisible Woman Blog.

475.    Defendants Salois and Wessling combined and conspired to make the claim that one of some 200 songs which Plaintiff had written was an attempt to induce Salois to suicide, and without any manner of evidence to that effect.

476.    Plaintiff entered into a consent order under duress on August 27, 2009 in relation to the Cause No. 09SL-PN02974 (hereinafter, the "Consent Order").

477.    Defendants Salois and Wessling knew at the time the Consent Order was negotiated that Plaintiff had transferred ownership of the Invisible Woman Blog.

478.    Defendant Howard battered Plaintiff while in the courtroom on August 27, 2009.

479.    Defendant Straussner threatened Plaintiff immediately outside of the courtroom on August 27, 2009.

480.    Defendant Straussner followed Plaintiff through the courthouse on August 27, 2009.

481.    Defendant Straussner followed Plaintiff down the street upon leaving the courthouse on August 27, 2009.

482.    Defendants Doug Howard and Burl Hopper combined, conspired, and acted together with other of the members of the Racketeering Enterprise.

483. Defendants Doug Howard and Burl Hopper followed down the street leaving the courthouse on August 27, 2009.

484. Defendant Howard threatened Plaintiff outside of the courthouse on August 27, 2009.

485. Plaintiff filed for a second order of protection against Defendant Straussner, Cause No. 09SL-PN03700, styled Hart v. Straussner (hereinafter, the "Straussner Order").

486. Defendant Straussner verbally harassed Plaintiff as Plaintiff was filling out the forms to file for an order of protection against Defendant Straussner. Plaintiff had to fill the forms out in front of the deputies at the entrance for his personal safety.

487. Plaintiff reported assault and battery as described above to the Clayton Police Department. Defendant Hinrichs responded.

488. Defendants Salois, Straussner, Howard, Burl Hopper, and Shirley Hopper gave Defendant Hinrichs knowingly false or intentionally misleading information concerning the cause of Plaintiff's call to the Clayton Police Department on August 27, 2009.

489. Defendant Hinrichs informed Plaintiff that the Racketeering Enterprise had a detective investigating and following Plaintiff on August 27, 2009.

490. Upon information and belief, Defendant Burl Hopper provided the funding for the detective for the Racketeering Enterprise.

491. Upon information and belief, the purpose of Defendant Burl Hopper obtaining the detective for the Racketeering Enterprise was to harass Plaintiff and to obstruct justice.

492. Upon information and belief, the Racketeering Enterprise had a private detective following Plaintiff to learn of his habits and whereabouts for ill intent.

493.    The acts of Defendants Salois, Wessling, Straussner, Howard, Burl Hopper, and Shirley Hopper as described above constitute violations of 18 U.S.C. §§ 152(3), 157(3), 1503, 1512, 1513, 1519, 1951, 1952, 1956, 1957, and 2314; and of 18 U.S.C. §§ 241, 242, and 245(b).

494.    The acts of Defendants Salois, Wessling, Straussner, Howard, Burl Hopper, and Shirley Hopper as described above constitute violations of Wis. Ann. Stat. §§ 940.201 and 943.30.

Evidence Tampering

495.    Defendant Straussner filed for an order of protection, Cause No. 09SL-PN03697, styled Straussner v. Hart (hereinafter, the "McKee Order") listing inter alia, "Thinks my name is George Jinkerson" as the reason that the order was needed in the original petition.

496.    Defendant Straussner's application for the McKee order contained material misrepresentations and omissions in deliberate disregard for the truth.

497.    Defendant McKee heard the Straussner Order and the McKee Order on September 10, 2009.

498.    Defendant Wessling combined, conspired, and acted together with Defendant Legal Advocates for Abused Women and other members of the Racketeering Enterprise to act outside of the charitable purpose of Defendant Legal Advocates for Abused Women, committing substantial fraud, in providing free legal representation to Defendant Straussner; including but not limited to:

    a.   Defendant Straussner is not a battered woman or child of a battered woman;

    b.   if Defendant Straussner was not a member of the household for bankruptcy purposes,

he could not be a member of the immediate family to receive free legal services; and

    c.  the matter was arising from or in relation to a pending matter under title 11.

499.    Defendants Wessling and Legal Advocates for Abused Women services provided to Defendant Straussner were not lawful, bona fide, legal representation in that:

    a.  participating in the operation and management of a racketeering enterprise is not a legitimate charitable purpose;

    b.  the grant proposals from that organization submitted to various departments and agencies of the United States, private foundations, and other donors do not disclose such activities;

    c.  other fund-raising materials from that organization do not disclose such activities;

    d.  substantial fraud committed upon donors in providing such services;

    e.  statements from corporate donors do not identify such activities as purpose of donation; and

    f.  other similar considerations which will be supported by discovery.

500.    Plaintiff was obliged to retain the services of a private security detail, due to the crimes of violence previously enacted against Plaintiff by the Racketeering Enterprise.

501.    Defendant Straussner had his hair dyed and face shaven to alter his appearance for the purpose of entering his appearance into evidence to make a claim of mistaken identity at the hearing for the Straussner Order.

502.    Defendant Wessling entered Defendant Straussner's altered appearance into evidence for the purpose of making the claim of mistaken identity as a centerpiece to the defense at the hearing for the Straussner Order.

503.    Defendant Straussner was twice declared by the courts to be engaged in the stalking of Plaintiff.

504.    Defendant Wessling filed a Motion for Re-Hearing for the Straussner Order, acting outside of the charitable purpose of Defendant Legal Advocates for Abused Women.


A.    Defendant Beach

505.    Defendant Beach combined, conspired, and acted together with Defendant Wessling and other members of the Racketeering Enterprise.

506.    Defendant Beach reviewed the motion for rehearing for the Straussner Order.

507.    Upon information and belief, it is very rare that a judge would overrule a commissioner's decision.

508.    Defendant Beach sustained the motion for rehearing for the Straussner Order.

509.    Defendant Beach heard the matter of the Straussner Order de novo.

510.    Plaintiff presented testimony and evidence to Defendant Beach of the acts of Defendant Straussner, including but not limited to witness intimidation by threat of bodily injury, interstate communications to extort, wire fraud, falsification of records in a bankruptcy, identity fraud, obstruction of justice, computer fraud and unlawful use of access codes, and other manner of criminal activity in relation to a pending federal judicial proceeding.

511.    Defendant Beach stood and abruptly walked out before all of the evidence had been presented.

512.    Defendant Beach stated that both parties "should just grow up."

513.    Defendant Beach entered or caused to be entered into the record of the court that the

matter had been adjudicated according to its merits, when in fact it had not.

514.   Defendant Beach is not charged here for his official acts, but for the conspiracy which Defendant Beach entered into with the Racketeering Enterprise and the racketeering predicate acts which he took part in.

## RETALIATION AND INTERFERENCE WITH REVOCATION

### Malicious Prosecution

515.   Defendants Salois and Bealmear combined, conspired, and acted together with other of the members of the Racketeering Enterprise.

516.   Defendants Salois and Bealmear conspired and acted together to initiate criminal proceedings against Plaintiff without probable cause.

517.   Defendants Salois and Bealmear conspired and acted together to initiate criminal proceedings against Plaintiff with evil motive and intent.

518.   Defendant Rebecca Bealmear petitioned for appointment as private special prosecutor for a hearing in a motion for contempt in relation to the Consent Order, executing a sworn statement to comply with all federal and state law.

519.   Defendants Salois and Bealmear conspired and acted together to state material misrepresentations and omissions in conscious or reckless disregard of the truth in initiating criminal charges against Plaintiff.

520.   Defendant Salois gave testimony in the hearing on the motion for contempt in relation to

the Consent Order on June 25, 2010.

521.    Defendant Bealmear entered into evidence the Altered Card Statement referenced in the Pendleton Comments.

522.    Defendant Salois testified that Plaintiff had produced the Altered Card Statement referenced in the Pendleton Comments knowing that she had posted it herself.

523.    Defendant Salois' account number is in the web address of the Altered Card Statement.

524.    The Altered Card Statement was one of those items of evidence in a federal matter Plaintiff preserved in transference of the property of the Invisible Woman Blog.

525.    Defendant Bealmear entered several pages of evidence captured and archived through a feed aggregator to deliberately mislead the court.

526.    In many cases the content from feed aggregators is stored as resident on the hard disk to make it available for off-line viewing.

527.    The feed aggregator in question, ReadWire, had ended its service at the relevant time, although server lease had not expired.

528.    Defendant Bealmear requested that the court extend the Consent Order.

529.    The court stated "the normal means of obtaining [one]" should be observed "if it is warranted" rather than extending the Consent Order; no other petition for an order of protection was ever filed.

530.    The acts of Defendants Salois and Bealmear as described above constitute violations of 18 U.S.C. §§ 152(3), 157(3), 1503, 1512, 1513, 1519, 1951, and 1959; and of 18 U.S.C. §§ 241, 242, and 245(b).

## Other Complaints

531.   Plaintiff twice filed a formal complaint to the Office of Chief Disciplinary Counsel for Defendant Wessling's evidence tampering in relation to the Straussner Order.

532.   The Office of Chief Disciplinary Counsel is inclined to act as a pre-screening appellate panel, in that, in their view, no manner of wrong-doing or ethical violation might possibly occur unless that wrong-doing or ethical violation be submitted to an appellate court as a point of review; it is therefore necessary for this Court to provide declaratory and injunctive relief.

533.   Plaintiff twice filed a formal complaint to the Missouri Attorney General's Office regarding illicit activity on the part of a charitable organization; namely, Defendant Legal Advocates for Abused Women, for conduct including but not limited to:

      a.   numerous incidents of evidence tampering, documented;

      b.   numerous violations of Rule 4 regarding conduct of attorneys;

      c.   abuse of process;

      d.   malicious prosecution; and

      e.   solicitation of perjured testimony.

534.   The Missouri Attorney General is well-known for the political nature of his prosecutions, and is ill-inclined to disrupt the cottage industry (as in the scam of the "cottage industry") provided it keeps bringing federal monies into the state.   Other characteristics of Defendant Legal Advocates for Abused Women coincide with that of certain popular scams involving charitable organizations, which will be supported by discovery.

535.   Plaintiff filed a formal complaint with Internal Revenue via Form 13909 concerning

Defendant Legal Advocates for Abused Women.

536.  Furtherance of criminal activity is not a legitimate charitable purpose.

537.  Upon information and belief, Defendants Wessling and Legal Advocates for Abused Women took action against Plaintiff due to these formal complaints.

### The Platte County Order

538.  Following an evidentiary hearing, a characteristically thoughtful and reserved Defendant Van Amburg entered a finding of Stalking in the full Order of Protection, Cause No. 10AE-CV04180, styled Hart v. Salois (hereinafter, the "Platte County Order"), on November 30, 2010.

539.  Plaintiff's claims established at the evidentiary hearing in relation to the Platte County Order were defamation, incitement, harassment, intimidation of a witness, imposture, abuse of process (malicious prosecution), and failure to comply with a previous order of protection; it was established that the matter was arising from or in relation to the Bankruptcy.

540.  Defendant Shirley Hopper directed correspondence to the court in relation to the Platte County Order, which was entered into the record on April 4, 2011.

541.  Defendant Shirley Hopper inadvertently boasted of Defendant Howard's capacity to evade service in her correspondence to the court in relation to the Platte County Order.

542.  Plaintiff applied to renew the Platte County Order on November 21, 2011.

543.  Defendants Salois, Straussner, Wessling, and Jane Doe were in the courtroom when Plaintiff arrived on December 20, 2011.

544.  The above-named Defendants were in the courtroom for about 20 minutes before it was

time for court to convene.

545.    Defendant Jane Doe combined, conspired, and acted together with Defendants Salois and Wessling and other members of the Racketeering Enterprise.

546.    Defendant Jane Doe said to Defendant Wessling, "Thank you for letting us know what was really going on with this," as Plaintiff entered the courtroom on December 20, 2011.

547.    Upon information and belief, Defendant Jane Doe acted as a courier for the Racketeering Enterprise in transferring ex parte communications with Defendant Van Amburg and other members of the enterprise.

548.    Defendant Van Amburg combined, conspired, and acted together with Defendants Doe and Wessling and other members of the Racketeering Enterprise.

549.    Plaintiff reported Defendant Salois' violation of the Platte County Order to Defendant Van Amburg.

550.    Plaintiff reported Defendant Salois' violation of state and federal law to Defendant Van Amburg.

551.    Defendant Salois testified that she did not know how Plaintiff obtained items which she had posted publicly on the internet and bear her account code.

552.    Defendant Wessling gave testimony while not under oath and subject to cross-examination that the entirety of the Salois profile dating back through 2007 was the work of Plaintiff.

553.    Defendant Wessling entered into evidence documents procured by means of the interrogatory from the dismissed Second St. Louis County Order used to conduct a warrantless search of Plaintiff's e-mail and personal documents, entering evidence of federal crimes into the

record of the court.

554.   Defendant Wessling entered into evidence documents obtained from Yahoo demonstrating that she had violated 18 U.S.C. §§ 2511 and 2701, in that Defendant Wessling exceeded authority to access stored electronic communications, endeavored to intercept electronic communications, and disclosed the contents of those communications by means of the interrogatory from the dismissed Second St. Louis County Order as described above.

555.   Defendant Wessling entered several pages of evidence captured and archived through a subscription feed aggregator to intentionally mislead the court.

556.   Defendant Van Amburg refused to permit Plaintiff to enter evidence into the record.

557.   Defendant Van Amburg told Plaintiff that he was not an attorney as a means of demonstrating deference to Defendant Wessling, even as Defendant Wessling violated the rules of the court and the rules of the bar in giving testimony while acting as counsel; doing so for the purpose of preempting Plaintiff's objections in order to pollute the record, depriving Plaintiff of civil rights.

558.   Defendant Van Amburg ruled that the expired ruling of the Consent Order did not permit Plaintiff to publish political speech or act as a campaign volunteer.

559.   Defendant Van Amburg stated that Plaintiff could be prosecuted repeatedly for the Altered Card Statement, the property of Defendant Salois.

560.   Plaintiff's employment was irrelevant to whether the Platte County Order should be extended; Defendant Van Amburg asked Plaintiff where he was employed, gathering information for the Racketeering Enterprise for possible use against Plaintiff.

561.   Defendant Wessling did not act as an attorney providing limited representation services

through a charitable organization would ordinarily do in providing services to Defendant Salois in relation to the Platte County Order; including, but not limited to, that Defendant Wessling:

    a. filed an entry of appearance on the other side of the state outside of the seven-county service area for her employer on November 30, 2010;

    b. filed motion to set aside for a respondent subject to an order of protection in the Platte County Order on November 29, 2011;

    c. providing representation for a person found to be stalking to contest orders of protection;

    d. Defendant Salois was not "indigent" or unable to obtain representation, as Legal Advocates of Western Missouri provide legal services in Western Missouri on a sliding scale to indigent and impoverished litigants; and

    e. other similar considerations which will be supported by discovery.

562. Upon information and belief, Defendant Wessling acted with full knowledge and approval of her superiors at Defendant Legal Advocates for Abused Women in providing services not disclosed in or which are specifically prohibited by the fund-raising literature and public statements for that organization, establishing its "charitable purpose," in providing representation for Defendant Salois as respondent in the Platte County Order, among other instances.

563. Defendant Van Amburg is not charged here for his official acts, but for the conspiracy which Defendant Van Amburg entered into with the Racketeering Enterprise and the racketeering predicate acts which he took part in.

564. Plaintiff fled the state of Missouri in fear of his life for the very purpose of being a

witness in a federal matter.

## The Racketeering Enterprise Generally

565.    The Racketeering Enterprise held commonality of purpose, formal or informal organization; and ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering activity.

566.    The Racketeering Enterprise affects or did affect interstate commerce in some way or degree.

567.    All conspirators assume liability for any acts in furtherance of the conspiracy.

568.    All members of the Racketeering Enterprise are liable as described above.

569.    Persons who aid and abet are punishable as principals for the underlying offense.

570.    All members of the Racketeering Enterprise are as principals as described above.

## UNLAWFUL SEIZURE

## The Ex Parte Order

A.    Corrupt Acts of Defendant Burton

571.    Defendant Burton issued and executed the Ex Parte Order on July 13, 2009.

572.    The Ex Parte Order, arising from and in relation to the Bankruptcy, was a federal hearing being conducted in a state court pursuant to 28 U.S.C. § 1334(b).

573.   Defendant Burton failed to comply with 11 U.S.C. § 157(b)(2)(G) in the Ex Parte Order.

574.   Defendant Burton failed to comply with Fed.R.Bank.P. 9027 in the Ex Parte Order.

575.   Defendant Burton failed to comply with Fed.R.Bank.P. 9033 in the Ex Parte Order.

576.   Defendant Burton failed to comply with Fed.R.Civ.P. 81 in the Ex Parte Order.

577.   Defendant Burton failed to comply with 11 U.S.C. §§ 362(b)(2)(A)(v) and 707(b)(2)(A)(ii)(I) in the Ex Parte Order.

578.   Defendant Burton failed to comply with Local Rule 75(1) in the Ex Parte Order.

579.   Defendant Burton was without lawful authority to authorize the above described procedural defects in a proceeding of federal character.

580.   The Ex Parte Order had the foreseeable effect of modifying the automatic stay in the Bankruptcy, in that it extended the terms of the stay in regard to Plaintiff, impeding the investigation pursuant to the Bankruptcy.

581.   Defendant Burton was without lawful authority to modify the automatic stay in the Bankruptcy as described above.

582.   Defendant Burton was without lawful authority to impede the investigation pursuant to the Bankruptcy as described above.

583.   Impeding the investigation pursuant to the Bankruptcy was material to the Bankruptcy.

584.   The Revised Missouri Statutes in no way authorized Defendant Burton to violate the United States Constitution or its laws.

585.   The Revised Missouri Statutes in no way authorized Defendant Burton to violate the Federal Rules of Bankruptcy Procedure.

586.   As Defendant Salois specifically pleaded the Original Petition as a matter arising from or

in relation to the Bankruptcy, the definition for "domestic violence" set forth in Chapter 7 of title 11 was applicable in relation to the Ex Parte Order.

587.    Plaintiff's acts or conduct as alleged in the Original Petition did not rise to the statutory standards of "domestic violence" as set forth by R.S.Mo. § 455.200, even were the allegations of Defendant Salois in the Original Petition to be taken as true on their face.

588.    Plaintiff's acts or conduct as alleged in the Original Petition did not rise to the statutory standards of "abuse" or of "stalking" as set forth by R.S.Mo. § 455.010, even were the allegations of Defendant Salois in the Original Petition to be taken as true on their face.

589.    That Defendant Salois characterized Plaintiff's allegations of "child abuse" as "baseless" in the Original Petition does not constitute "good cause" for Defendant Burton to fail to report allegations of child abuse pursuant to R.S.Mo. § 210.115.

590.    Defendant Burton was without lawful authority to use the Family Law Courts of the State of Missouri to the ends of preventing investigation of allegations of child abuse and endangerment by the appropriate State agencies as described above.

591.    There was no legitimate basis for Defendant Burton to issue and/or execute the Ex Parte Order.

B.    Corrupt Acts of Defendant Siwak

592.    Defendant Siwak extended the Ex Parte Order on July 30, 2009.

593.    Defendant Siwak failed to comply with 11 U.S.C. § 157(b)(2)(G) in the Ex Parte Order.

594.    Defendant Siwak failed to comply with Fed.R.Bank.P. 9027 in the Ex Parte Order.

595.    Defendant Siwak failed to comply with Fed.R.Bank.P. 9033 in the Ex Parte Order.

596.    Defendant Siwak failed to comply with Fed.R.Civ.P. 81 in the Ex Parte Order.

597.    Defendant Siwak failed to comply with 11 U.S.C. §§ 362(b)(2)(A)(v) and 707(b)(2)(A)(ii)(I) in the Ex Parte Order.

598.    Defendant Siwak failed to comply with Local Rule 75(1) in the Ex Parte Order.

599.    Defendant Siwak was without lawful authority to authorize the above described procedural defects in a proceeding of federal character.

600.    Defendant Siwak was without lawful authority to modify the automatic stay in the Bankruptcy as described above.

601.    Defendant Siwak was without lawful authority to impede the investigation pursuant to the Bankruptcy as described above.

602.    The Revised Missouri Statutes in no way authorized Defendant Siwak to violate the United States Constitution or its laws.

603.    The Revised Missouri Statutes in no way authorized Defendant Siwak to violate the Federal Rules of Bankruptcy Procedure.

604.    That Defendant Salois characterized Plaintiff's allegations of "child abuse" as "baseless" in the Original Petition does not constitute "good cause" for Defendant Siwak to fail to report allegations of child abuse pursuant to R.S.Mo. § 210.115.

605.    Defendant Siwak was without lawful authority to use the Family Law Courts of the State of Missouri to the ends of preventing investigation of allegations of child abuse and endangerment by the appropriate State agencies as described above.

606.    There was no legitimate basis for Defendant Siwak to extend the Ex Parte Order.

607.    Defendant Siwak improperly extended the Ex Parte Order.

C.     Execution of the Consent Order

608.   Defendant Siwak executed the Consent Order against Plaintiff on August 27, 2009.

609.   The Consent Order was obtained under duress after Plaintiff had been battered, assaulted, and chased.

610.   Defendant Siwak failed to comply with 11 U.S.C. § 157(b)(2)(G) in the Consent Order.

611.   Defendant Siwak failed to comply with Fed.R.Bank.P. 9027 in the Consent Order.

612.   Defendant Siwak failed to comply with Fed.R.Bank.P. 9033 in the Consent Order.

613.   Defendant Siwak failed to comply with Fed.R.Civ.P. 81 in the Consent Order.

614.   Defendant Siwak failed to comply with 11 U.S.C. §§ 362(b)(2)(A)(v) and 707(b)(2)(A)(ii)(I) in the Consent Order.

615.   Defendant Siwak failed to comply with Local Rule 75(1) in the Consent Order.

616.   Defendant Siwak was without lawful authority to authorize the above described procedural defects in a proceeding of federal character.

617.   Defendant Siwak was without lawful authority to modify the automatic stay in the Bankruptcy as described above.

618.   Defendant Siwak was without lawful authority to impede the investigation pursuant to the Bankruptcy as described above.

619.   The Revised Missouri Statutes in no way authorized Defendant Siwak to violate the United States Constitution or its laws.

620.   The Revised Missouri Statutes in no way authorized Defendant Siwak to violate the Federal Rules of Bankruptcy Procedure.

621. That Defendant Salois characterized Plaintiff's allegations of "child abuse" as "baseless" in the Original Petition does not constitute "good cause" for Defendant Siwak to fail to report allegations of child abuse pursuant to R.S.Mo. § 210.115.

622. Defendant Siwak was without lawful authority to use the Family Law Courts of the State of Missouri to the ends of preventing investigation of allegations of child abuse and endangerment by the appropriate State agencies as described above.

623. There was no legitimate basis for Defendant Siwak to extend the Ex Parte Order to the Consent Order.

<u>Defendant McKee</u>

624. Defendant McKee issued the McKee Order against Plaintiff.

625. The McKee Order impeded the investigation pursuant to the Bankruptcy.

626. The McKee Order impaired Plaintiff's position in the revocation of discharge pursuant to 11 U.S.C. § 727(e) in relation to the Bankruptcy.

627. No act or conduct of Plaintiff did arise to the statutory bar for issuance of an adult abuse order of protection for Defendant Straussner, or an emergency ex parte order.

628. Defendant McKee was without lawful authority to impede the investigation pursuant to the Bankruptcy as described above.

629. Defendant McKee was without lawful authority to significantly impair Plaintiff's position in the period for revocation of discharge pursuant to 11 U.S.C. § 727(e) in relation to the Bankruptcy, or to impede the proper administration of a matter under title 11.

630.    The Revised Missouri Statutes in no way authorized Defendant McKee to violate the United States Constitution or its laws.

Defendant Sherry

631.    Defendant Sherry presided over the malicious prosecution of Plaintiff.

632.    Defendant Sherry issued the interlocutory judgment against Plaintiff on August 13, 2010.

633.    Defendant Sherry acted in violation of state law in issuance of the interlocutory judgment.

634.    The terms of the interlocutory judgment are impossible to fulfill.

635.    The wording of the Consent Order as entered by Defendant Sherry in the interlocutory judgment differs materially from the Consent Order negotiated by Plaintiff.

636.    Defendant Sherry was without lawful authority to impede the investigation pursuant to the Bankruptcy as described above.

637.    Defendant Sherry was without lawful authority to significantly impair Plaintiff's position in the period for revocation of discharge pursuant to 11 U.S.C. § 727(e) in relation to the Bankruptcy, or to impede the proper administration of a matter under title 11.

638.    The Revised Missouri Statutes in no way authorized Defendant Sherry to violate the United States Constitution or its laws.

639.    Defendant Sherry was without lawful authority to authorize the procedural defects in that proceeding of federal character.

640.    There was no legitimate basis for Defendant Sherry to issue the interlocutory judgment

against Plaintiff.

641.    The fundamental fairness of the proceedings were denied to Plaintiff, as were procedural and substantive due process, in the malicious prosecution presided over by Defendant Sherry.

### Legal Advocates for Abused Women

642.    Defendant Legal Advocates for Abused Women employed Defendant Katherine Wessling at all relevant times.

643.    At all relevant times, Defendant Legal Advocates for Abused Women had the ability to control and direct Defendant Katherine Wessling's conduct as she performed duties in furtherance of Legal Advocates for Abused Women's goals.

644.    Each of the acts and/or omissions alleged herein against Defendant Wessling were committed by her individually, or her agents, servants, and/or employees, while acting under the color of law with approval and knowledge of her superiors.

645.    Defendant Legal Advocates for Abused Women employed Defendant Rebecca Bealmear at all relevant times.

646.    At all relevant times, Defendant Legal Advocates for Abused Women had the ability to control and direct Defendant Rebecca Bealmear's conduct as she performed duties in furtherance of Legal Advocates for Abused Women's goals.

647.    Each of the acts and/or omissions alleged herein against Defendant Bealmear were committed by her individually, or her agents, servants, and/or employees, while acting under the color of law with approval and knowledge of her superiors.

<u>Clayton Missouri Police Department</u>

648.    Defendant Hinrichs responded to Plaintiff's call to the Clayton Police Department on August 27, 2009.

649.    Defendant Hinrichs was informed by Plaintiff upon arrival that the matter was in relation to a bankruptcy.

650.    Defendant Hinrichs took very little information from Plaintiff regarding the disturbance.

651.    Defendant Hinrichs spoke at length with Defendants Salois, Straussner, Howard, Burl Hopper, and Shirley Hopper.

652.    Defendant Hinrichs stated to Plaintiff that persons are battered "about twice a week" in the St. Louis County Courthouse located in Clayton, Missouri and that the policy of the Clayton Police Department is to do nothing about it.

653.    Defendant Hinrichs was verbally aggressive toward Plaintiff.

654.    Defendant Hinrichs filed a memo of the call containing demonstrably false information.

655.    Defendant City of Clayton employed Defendant Hinrichs at all relevant times.

656.    At all relevant times, Defendant the City of Clayton, Missouri, had the ability to control and direct Defendant Hinrichs' conduct as he performed duties in furtherance of the City of Clayton, Missouri's goals.

657.    Defendant Thomas J. Byrne employed Defendant Hinrichs at all relevant times.

658.    At all relevant times, Defendant Thomas J. Byrne, Chief of Police, City of Clayton, Missouri, had the ability to control and direct Defendant Hinrichs' conduct as he performed

duties in furtherance of the City of Clayton, Missouri's goals.

659.    Each of the acts and/or omissions alleged herein against Defendant Hinrichs were committed by him individually, or his agents, servants, and/or employees, while acting under the color of law with approval and knowledge of his superiors.

### Oak Creek Wisconsin Police Department

660.    Plaintiff reported the identity fraud of Defendant Straussner as described above to Defendant Gallagher.

661.    Upon information and belief, Defendant Gallagher failed to take a report.

662.    Upon information and belief, Defendant Gallagher failed to initiate an investigation.

663.    Defendant Gallagher told Plaintiff that there would not be any manner of action because Plaintiff no longer resided in the State of Wisconsin.

664.    Defendant City of Oak Creek, Wisconsin employed Defendant Gallagher as a member of the Oak Creek Police Department at all relevant times.

665.    At all relevant times, Defendant the City of Oak Creek, Wisconsin, had the ability to control and direct Defendant Gallagher's conduct as he performed duties in furtherance of the City of Oak Creek, Wisconsin's goals.

666.    Defendant John Edwards employed Defendant Gallagher as a member of the Oak Creek Police Department at all relevant times.

667.    At all relevant times, Defendant John Edwards, Chief of Police, City of Oak Creek, Wisconsin, had the ability to control and direct Defendant Gallagher's conduct as he performed

duties in furtherance of the City of Oak Creek, Wisconsin's goals.

668.    Each of the acts and/or omissions alleged herein against Defendant Gallagher were committed by him individually, or his agents, servants, and/or employees, while acting under the color of law with approval and knowledge of his superiors.

## St. Louis County Missouri Police Department

A.    Defendant Hoots

669.    Plaintiff reported the above described interstate telephone call from Defendant Straussner that Plaintiff received on May 29, 2009 to Defendant Hoots of the 4th precinct of the St. Louis County Police Department on June 9, 2009.

670.    Defendant Hoots did not take a report, and instructed Plaintiff that police cannot take reports regarding witnesses, parties, and informants in pending federal judicial proceedings being threatened with physical violence against their persons in interstate communication due to the hearsay element involved in a verbal threat.

671.    Hearsay evidence is admissible in a court of law in a number of exceptions and instances pursuant to the rules of evidence.

672.    Upon information and belief, Defendant Hoots did not question Defendant Straussner, nor conduct any other manner of investigation or surveillance, or issue referral for such.

673.    Upon information and belief, Defendant Hoots did not attempt to ascertain whether other evidence existed.

674.    Defendant Straussner and the Racketeering Enterprise were permitted to commit further

- 98 -

criminal acts against Plaintiff due to the acts of Defendant Hoots and the established policies and procedures of the St. Louis County Police Department.

B.     Defendant Lachance

675.   Defendant Lachance acted to pursue criminal charges against Plaintiff for harassment in Case No. I09091041, styled <u>St. Louis County v. Hart</u> (hereinafter, "Municipal Charge").

676.   Defendant Salois conspired and acted with other members of the Racketeering Enterprise to cause, or to contribute to cause, criminal action to be pursued against Plaintiff without probable cause in the Municipal Charge.

677.   Plaintiff was charged with maintaining a website in the Municipal Charge.

678.   Defendant Lachance acted without a witness having firsthand knowledge or evidence connecting Plaintiff to the website in question in initiating the Municipal Charge.

679.   Upon information and belief, the Municipal Charge was dismissed on constitutional grounds.

680.   Defendant Lachance was not properly trained in the applicability of First Amendment protections for public speech.

681.   Defendant Lachance was not properly trained in the indicia of reliability of informants, taking action against an informant in a federal matter on the basis of uncorroborated hearsay from the perpetrator in that federal matter to do so.

682.   The period for revocation pursuant to 11 U.S.C. § 727(e) was pending at the time of the Municipal Charge.

683.   Defendants Lachance, Salois, and the Racketeering Enterprise acted against Plaintiff to

defeat the provisions of title 11 and deny Plaintiff rights secured by lawfully enacted statute of the United States.

684.    The municipal ordinance of harassment, St. Louis County Revised Ordinance No. 20186 section 716.390, enacted by St. Louis County, Missouri for which Plaintiff is unconstitutionally vague in that, including but not limited to, there are any number of things perfectly lawful which may be published on a public website for which some person might take offense. Johnson v. Campbell, 332 F.3d 199, 214 (3d Cir. 2003)

C.    Defendant Roberds

685.    Plaintiff contacted Defendant Roberds concerning the introduction of false evidence in the malicious prosecution in relation to the Consent Order.

686.    Defendant Roberds referred the matter to the Bureau of Professional Standards to determine if there was wrong-doing on the part of a St. Louis County Police officer in submitting the relevant documents.

687.    When the Bureau of Professional Standards determined that the relevant documents were not submitted by a St. Louis County Police officer, but rather by the complainant at the time of the complaint, Defendant Roberds did not investigate the matter further.

688.    Defendant Roberds acted with knowledge that the relevant documents confirmed substantial wrong-doing at the time of the decision to not investigate the matter further.

D.    Defendant O'Neill

689.    Plaintiff spoke with Defendant O'Neill for roughly 45 minutes in February of 2011.

690.    Defendant O'Neill had knowledge of the documents which Plaintiff delivered to Defendant Roberds at the relevant time.

691.    Defendant O'Neill was aware of the criminal activity of Defendants Salois and Straussner.

692.    Defendant O'Neill failed to take a report or initiate an investigation into the criminal activities of Defendants Salois and Straussner.

693.    Defendant O'Neill acted with knowledge that the relevant documents confirmed substantial wrong-doing at the time of the decision to not investigate the matter further.

E.      Defendant Willmering

694.    Plaintiff delivered documents detailing the criminal acts of Defendants Salois and Straussner to Defendant Willmering.

695.    Defendant Willmering refused to take a report.

696.    Defendant Willmering acted according to the official policy of the St. Louis County Police Department in refusing to take a report.

697.    Defendant Willmering acted with knowledge that the relevant documents confirmed substantial wrong-doing at the time of the decision to not investigate the matter further.

F.      Defendants Fitch and St. Louis County

698.    Defendant St. Louis County employed Defendant Hoots at all relevant times.

699.    At all relevant times, Defendant St. Louis County, Missouri had the ability to control and direct Defendant Hoots' conduct as he performed duties in furtherance of St. Louis County,

Missouri's goals.

700.    Defendant St. Louis County employed Defendant Lachance at all relevant times.

701.    At all relevant times, Defendant St. Louis County, Missouri had the ability to control and direct Defendant Lachance's conduct as he performed duties in furtherance of St. Louis County, Missouri's goals.

702.    Defendant St. Louis County employed Defendant Roberds at all relevant times.

703.    At all relevant times, Defendant St. Louis County, Missouri had the ability to control and direct Defendant Roberds' conduct as he performed duties in furtherance of St. Louis County, Missouri's goals.

704.    Defendant St. Louis County employed Defendant O'Neill at all relevant times.

705.    At all relevant times, Defendant St. Louis County, Missouri had the ability to control and direct Defendant O'Neill's conduct as he performed duties in furtherance of St. Louis County, Missouri's goals.

706.    Defendant St. Louis County employed Defendant Willmering at all relevant times.

707.    At all relevant times, Defendant St. Louis County, Missouri had the ability to control and direct Defendant Willmering's conduct as he performed duties in furtherance of St. Louis County, Missouri's goals.

708.    Defendant Tim Fitch employed Defendant Hoots at all relevant times.

709.    At all relevant times, Defendant Tim Fitch, Chief of Police, St. Louis County Missouri Police Department, had the ability to control and direct Defendant Hoots' conduct as he performed duties in furtherance of the St. Louis County Police Department's goals.

710.    Defendant Tim Fitch employed Defendant Lachance at all relevant times.

711.   At all relevant times, Defendant Tim Fitch, Chief of Police, St. Louis County Missouri Police Department, had the ability to control and direct Defendant Lachance's conduct as he performed duties in furtherance of the St. Louis County Police Department's goals.

712.   Defendant Tim Fitch employed Defendant Roberds at all relevant times.

713.   At all relevant times, Defendant Tim Fitch, Chief of Police, St. Louis County Missouri Police Department, had the ability to control and direct Defendant Roberds' conduct as he performed duties in furtherance of the St. Louis County Police Department's goals.

714.   Defendant Tim Fitch employed Defendant O'Neill at all relevant times.

715.   At all relevant times, Defendant Tim Fitch, Chief of Police, St. Louis County Missouri Police Department, had the ability to control and direct Defendant O'Neill's conduct as he performed duties in furtherance of the St. Louis County Police Department's goals.

716.   Defendant Tim Fitch employed Defendant Willmering at all relevant times.

717.   At all relevant times, Defendant Tim Fitch, Chief of Police, St. Louis County Missouri Police Department, had the ability to control and direct Defendant Willmering's conduct as he performed duties in furtherance of the St. Louis County Police Department's goals.

718.   Each of the acts and/or omissions alleged herein against Defendant Hoots were committed by him individually, or his agents, servants, and/or employees, while acting under the color of law with approval and knowledge of his superiors.

719.   Each of the acts and/or omissions alleged herein against Defendant Lachance were committed by him individually, or his agents, servants, and/or employees, while acting under the color of law with approval and knowledge of his superiors.

720.   Each of the acts and/or omissions alleged herein against Defendant Roberds were

committed by him individually, or his agents, servants, and/or employees, while acting under the color of law with approval and knowledge of his superiors.

721.    Each of the acts and/or omissions alleged herein against Defendant O'Neill were committed by him individually, or his agents, servants, and/or employees, while acting under the color of law with approval and knowledge of his superiors.

722.    Each of the acts and/or omissions alleged herein against Defendant Willmering were committed by him individually, or his agents, servants, and/or employees, while acting under the color of law with approval and knowledge of his superiors.

<u>Platte County Sheriff's Office</u>

723.    Plaintiff contacted the Platte County Sheriff's Office concerning wire fraud and other criminal activities by the Racketeering Enterprise.

724.    Defendant Holland refused to take a report or initiate an investigation.

725.    Defendant Holland wrongfully instructed Plaintiff that Platte County had no jurisdiction.

726.    Upon information and belief, were the matters at issue to have involved telephonic communications rather than internet communications, Defendant Holland would have been more clear as to the jurisdictional issues.

727.    Upon being served summons by the Platte County Sheriff's office, the agent of the Platte County Sheriff providing service, Defendant Unknown Deputy, practically insisted on entering Plaintiff's home, giving no indication of why he asked to do so when queried specifically regarding this matter, and having no manner of reasonable suspicion or probable cause to do so,

rendering Plaintiff not free to end the encounter; leaving only seconds after having entering the kitchen of that home; constituting temporary detention.

728.    Defendant Platte County employed Defendant Holland at all relevant times.

729.    At all relevant times, Defendant Platte County, Missouri, had the ability to control and direct Defendant Holland's conduct as he performed duties in furtherance of Platte County, Missouri's goals.

730.    Defendant Richard Anderson employed Defendant Holland at all relevant times.

731.    At all relevant times, Defendant Richard Anderson, Sheriff of the Platte County Sheriff's Office, had the ability to control and direct Defendant Holland's conduct as he performed duties in furtherance of the Platte County Sheriff's Office's goals.

732.    Each of the acts and/or omissions alleged herein against Defendant Holland were committed by him individually, or his agents, servants, and/or employees, while acting under the color of law with approval and knowledge of his superiors.

733.    Defendant Platte County employed Defendant Unknown Deputy at all relevant times.

734.    At all relevant times, Defendant Platte County, Missouri, had the ability to control and direct Defendant Unknown Deputy's conduct as he performed duties in furtherance of Platte County, Missouri's goals.

735.    Defendant Richard Anderson employed Defendant Unknown Deputy at all relevant times.

736.    At all relevant times, Defendant Richard Anderson, Sheriff of the Platte County Sheriff's Office, had the ability to control and direct Defendant Unknown Deputy's conduct as he performed duties in furtherance of the Platte County Sheriff's Office's goals.

737.    Each of the acts and/or omissions alleged herein against Defendant Unknown Deputy were committed by him individually, or his agents, servants, and/or employees, while acting under the color of law with approval and knowledge of his superiors.

738.    The elements of neglect to prevent conspiracy to violate civil rights pursuant to 42 U.S.C. § 1986 were fully satisfied by a deputy of the Platte County Sheriff's Office, though this cause of action of was time-barred before this Complaint's completion; upon information and belief, further investigation and discovery may establish sufficient facts to support allegations to charge that deputy in an amended complaint as a member of the Racketeering Enterprise.

**COUNT 1**

**VIOLATION OF 18 U.S.C. § 1962(c)**

**RACKETEERING ENTERPRISE**

739.    Plaintiff restates and re-alleges the allegations contained in all of the proceeding paragraphs as though fully set forth herein.

740.    These individual Defendants, the members of the Racketeering Enterprise, each of them, were associated with or employed by the enterprise, participated, directly and indirectly, in the operation or management of the Racketeering Enterprise.

741.    These individual Defendants, the members of the Racketeering Enterprise, each of them, participated in the enterprise through a pattern of racketeering activity consisting of the knowing or willful commission at least two of the following racketeering acts:

      a.    concealment and alienation of assets in a bankruptcy constituting violations

paragraphs (1), (2), (3), (5), (7), (8), and (9) of 18 U.S.C. § 152, or in aidings and abettings thereof pursuant to 18 U.S.C. § 2, or as accessory to pursuant to 18 U.S.C. § 3, or in misprision of pursuant to 18 U.S.C. § 4, or in conspiracy thereto pursuant to 18 U.S.C. § 371;

b. aidings and abettings pursuant to 18 U.S.C. § 2, or accessory after the fact pursuant to 18 U.S.C. § 3, or misprision pursuant to 18 U.S.C. § 4, or conspiracy pursuant to 18 U.S.C. § 371 of bankruptcy fraud constituting violations of 18 U.S.C. § 157;

c. identity fraud constituting violations of 18 U.S.C. §§ 1028 and 1028A;

d. fraud with access devices constituting violations of 18 U.S.C. § 1029;

e. mail fraud constituting violations of 18 U.S.C. § 1341;

f. wire fraud constituting violations of 18 U.S.C. § 1343;

g. obstruction of a pending federal judicial proceeding constituting violations of 18 U.S.C. § 1503;

h. intimidation of a witness, victim, or informant constituting violations of 18 U.S.C. § 1512;

i. retaliation against a witness, victim, or informant constituting violations of 18 U.S.C. § 1513;

j. impeding an investigation pursuant to a bankruptcy constituting violations of 18 U.S.C. § 1519;

k. destruction, alteration, or falsification of documents or records in a bankruptcy constituting violations of 18 U.S.C. § 1519;

l. interference with interstate commerce by threats or violence constituting violations of

18 U.S.C. § 1951;

m. interstate travel in aid of racketeering constituting violations of 18 U.S.C. § 1952;

n. laundering of monetary instruments constituting violations of 18 U.S.C. § 1956;

o. laundering of monetary instruments constituting violations of 18 U.S.C. § 1957;

p. interstate transportation of stolen property constituting violations of 18 U.S.C. § 2314;

q. theft by extortion constituting violation of Utah Code Ann. 76-6-406;

r. obstruction of justice constituting violation of Utah Code Ann. 76-8-306;

s. tampering with a witness constituting violation of Utah Code Ann. 76-8-508;

t. retaliation against a witness, victim, or informant constituting violation of Utah Code Ann. 76-8-508.3;

u. extortion to dismiss criminal proceeding constituting violation of Utah Code Ann. 76-8-509;

v. communications fraud constituting violation of Utah Code Ann. 76-10-1801;

w. robbery constituting violation of 30-16-2 NMSA 1978;

x. fraud constituting violation of 30-16-6 NMSA 1978;

y. extortion constituting violation of 30-16-9 NMSA 1978;

z. solicitation constituting violation of 30-28-3 NMSA 1978;

aa. robbery constituting violation of Tex. Pe. Code Ann. § 29.01;

bb. theft constituting violation of Tex. Pe. Code Ann. § 31.03;

cc. fraudulent use of identifying information constituting violation of Tex. Pe. Code Ann. § 32.51;

dd. battery or threat to a witness constituting violations of Wis. Ann. Stat. § 940.201;

ee. unauthorized use of an individual's personal identifying information constituting violations of Wis. Ann. Stat. § 943.201;

ff. threats to injure or accuse of crime constituting violations of Wis. Ann. Stat. § 943.30; and

gg. computer crimes constituting violations of Wis. Ann. Stat. § 943.70.

742. As a direct and proximate result of the pattern of racketeering activity, Plaintiff suffered injury to his business or property; including but not limited to loss of claim in the Bankruptcy, legal fees incurred, travel expenses, and interference in relations with a labor organization.

743. Accordingly, these Defendants are liable to Plaintiff under 18 U.S.C. § 1964.

744. WHEREFORE, Plaintiff hereby demands judgment against these individual Defendants, the members of the Racketeering Enterprise, each of them, for actual, compensatory, general, and special damages, trebled to an amount of $93,440; for the cost of this action, including attorneys' fees and expenses incurred; for pre- and post-judgment interest; for declaratory and injunctive relief, including but not limited to a permanent injunction barring Defendant Wessling from the practice of law; for all divestment and forfeiture actions authorized by law, specifically 18 U.S.C. § 1964(a), including but not limited to the return of all funds derived from any department, agency, or other entity of the United States government received by Defendant Legal Advocates for Abused Women for a period of five years prior to the date of this lawsuit, sparing not the retirement accounts of its officers; for all fines, penalties, and pecuniary forfeitures authorized by law, specifically 28 U.S.C. § 2461(a); and for such other relief as the Court deems proper.

COUNT 2

VIOLATION OF 18 U.S.C. § 1962(d)

RACKETEERING ENTERPRISE

745.    Plaintiff restates and re-alleges the allegations contained in all of the proceeding paragraphs as though fully set forth herein.

746.    These individual Defendants, the members of the Racketeering Enterprise, each of them, combined, conspired, and agreed to participate, directly and indirectly, in the operation or management of the Racketeering Enterprise.

747.    These individual Defendants, the members of the Racketeering Enterprise, each of them, combined, conspired, and agreed to participate in the enterprise through a pattern of racketeering activity consisting of the knowing or willful commission of the following racketeering acts:

a.  concealment and alienation of assets in a bankruptcy constituting violations paragraphs (1), (2), (3), (5), (7), (8), and (9) of 18 U.S.C. § 152, or in aidings and abettings thereof pursuant to 18 U.S.C. § 2, or as accessory to pursuant to 18 U.S.C. § 3, or in misprision of pursuant to 18 U.S.C. § 4, in conspiracy thereto pursuant to 18 U.S.C. § 371;

b.  aidings and abettings pursuant to 18 U.S.C. § 2, or accessory after the fact pursuant to 18 U.S.C. § 3, or misprision pursuant to 18 U.S.C. § 4, or conspiracy pursuant to 18 U.S.C. § 371 of bankruptcy fraud constituting violations of 18 U.S.C. § 157;

c.  identity fraud constituting violations of 18 U.S.C. §§ 1028 and 1028A;

d.  fraud with access devices constituting violations of 18 U.S.C. § 1029;

e.  mail fraud constituting violations of 18 U.S.C. § 1341;

f.  wire fraud constituting violations of 18 U.S.C. § 1343;

g.  obstruction of a pending federal judicial proceeding constituting violations of 18 U.S.C. § 1503;

h.  intimidation of a witness, victim, or informant constituting violations of 18 U.S.C. § 1512;

i.  retaliation against a witness, victim, or informant constituting violations of 18 U.S.C. § 1513;

j.  impeding an investigation pursuant to a bankruptcy constituting violations of 18 U.S.C. § 1519;

k.  destruction, alteration, or falsification of documents or records in a bankruptcy constituting violations of 18 U.S.C. § 1519;

l.  interference with interstate commerce by threats or violence constituting violations of 18 U.S.C. § 1951;

m.  interstate travel in aid of racketeering constituting violations of 18 U.S.C. § 1952;

n.  laundering of monetary instruments constituting violations of 18 U.S.C. § 1956;

o.  laundering of monetary instruments constituting violations of 18 U.S.C. § 1957;

p.  interstate transportation of stolen property constituting violations of 18 U.S.C. § 2314;

q.  theft by extortion constituting violation of Utah Code Ann. 76-6-406;

r.  obstruction of justice constituting violation of Utah Code Ann. 76-8-306;

- 111 -

s. tampering with a witness constituting violation of Utah Code Ann. 76-8-508;

t. retaliation against a witness, victim, or informant constituting violation of Utah Code Ann. 76-8-508.3;

u. extortion to dismiss criminal proceeding constituting violation of Utah Code Ann. 76-8-509;

v. communications fraud constituting violation of Utah Code Ann. 76-10-1801;

w. robbery constituting violation of 30-16-2 NMSA 1978;

x. fraud constituting violation of 30-16-6 NMSA 1978;

y. extortion constituting violation of 30-16-9 NMSA 1978;

z. solicitation constituting violation of 30-28-3 NMSA 1978;

aa. robbery constituting violation of Tex. Pe. Code Ann. § 29.01;

bb. theft constituting violation of Tex. Pe. Code Ann. § 31.03;

cc. fraudulent use of identifying information constituting violation of Tex. Pe. Code Ann. § 32.51;

dd. battery or threat to a witness constituting violations of Wis. Ann. Stat. § 940.201;

ee. unauthorized use of an individual's personal identifying information constituting violations of Wis. Ann. Stat. § 943.201;

ff. threats to injure or accuse of crime constituting violations of Wis. Ann. Stat. § 943.30; and

gg. computer crimes constituting violations of Wis. Ann. Stat. § 943.70.

748. As a direct and proximate result of the pattern of racketeering activity, Plaintiff suffered injury to his business or property; including but not limited to loss of claim in the Bankruptcy,

legal fees incurred, travel expenses, and interference in relations with a labor organization.

749.    Accordingly, these Defendants are liable to Plaintiff under 18 U.S.C. § 1964.

750.    WHEREFORE, Plaintiff hereby demands judgment against these individual Defendants, the members of the Racketeering Enterprise, each of them, for actual, compensatory, general, and special damages, trebled to an amount of $93,440; for the cost of this action, including attorneys' fees and expenses incurred; for pre- and post-judgment interest; for declaratory and injunctive relief, including but not limited to a permanent injunction barring Defendant Wessling from the practice of law; for all divestment and forfeiture actions authorized by law, specifically 18 U.S.C. § 1964(a), including but not limited to the return of all funds derived from any department, agency, or other entity of the United States government received by Defendant Legal Advocates for Abused Women for a period of five years prior to the date of this lawsuit, sparing not the retirement accounts of its officers; for all fines, penalties, and pecuniary forfeitures authorized by law, specifically 28 U.S.C. § 2461(a); and for such other relief as the Court deems proper.

## COUNT 3

### VIOLATION OF UTAH CODE ANN. 76-10-1603 (3)

### RACKETEERING ENTERPRISE

751.    Plaintiff restates and re-alleges the allegations contained in all of the proceeding paragraphs as though fully set forth herein.

752.    These individual Defendants, the members of the Racketeering Enterprise, each of them,

were associated with or employed by the enterprise, participated, directly and indirectly, in the operation or management of the Racketeering Enterprise.

753. These individual Defendants, the members of the Racketeering Enterprise, each of them, participated in the enterprise through a pattern of racketeering activity consisting of the knowing or willful commission of at least three of the following racketeering acts:

a. assault constituting violations of Utah Code Ann. 76-5-102;

b. theft by extortion constituting violation of Utah Code Ann. 76-6-406;

c. obstruction of justice constituting violation of Utah Code Ann. 76-8-306;

d. tampering with a witness constituting violation of Utah Code Ann. 76-8-508;

e. retaliation against a witness, victim, or informant constituting violation of Utah Code Ann. 76-8-508.3;

f. extortion to dismiss criminal proceeding constituting violation of Utah Code Ann. 76-8-509;

g. communications fraud constituting violation of Utah Code Ann. 76-10-1801;

h. concealment and alienation of assets in a bankruptcy constituting violations paragraphs (1), (2), (3), (5), (7), (8), and (9) of 18 U.S.C. § 152, or in aidings and abettings thereof pursuant to 18 U.S.C. § 2, or as accessory to pursuant to 18 U.S.C. § 3, or in misprision of pursuant to 18 U.S.C. § 4, or in conspiracy thereto pursuant to 18 U.S.C. § 371;

i. aidings and abettings pursuant to 18 U.S.C. § 2, or accessory after the fact pursuant to 18 U.S.C. § 3, or misprision pursuant to 18 U.S.C. § 4, or conspiracy pursuant to 18 U.S.C. § 371 of bankruptcy fraud constituting violations of 18 U.S.C. § 157;

j.   identity fraud constituting violations of 18 U.S.C. §§ 1028 and 1028A;

k.   fraud with access devices constituting violations of 18 U.S.C. § 1029;

l.   mail fraud constituting violations of 18 U.S.C. § 1341;

m.   wire fraud constituting violations of 18 U.S.C. § 1343;

n.   obstruction of a pending federal judicial proceeding constituting violations of 18 U.S.C. § 1503;

o.   intimidation of a witness, victim, or informant constituting violations of 18 U.S.C. § 1512;

p.   retaliation against a witness, victim, or informant constituting violations of 18 U.S.C. § 1513;

q.   impeding an investigation pursuant to a bankruptcy constituting violations of 18 U.S.C. § 1519;

r.   destruction, alteration, or falsification of documents or records in a bankruptcy constituting violations of 18 U.S.C. § 1519;

s.   interference with interstate commerce by threats or violence constituting violations of 18 U.S.C. § 1951;

t.   interstate travel in aid of racketeering constituting violations of 18 U.S.C. § 1952;

u.   laundering of monetary instruments constituting violations of 18 U.S.C. § 1956;

v.   laundering of monetary instruments constituting violations of 18 U.S.C. § 1957; and

w.   interstate transportation of stolen property constituting violations of 18 U.S.C. § 2314.

754.   As a direct and proximate result of the pattern of racketeering activity, Plaintiff suffered

injury to his business or property; including but not limited to loss of claim in the Bankruptcy, legal fees incurred, travel expenses, interference in relations with a labor organization, and loss of wages and benefits.

755.    The pattern of racketeering activity, as a fairly direct and foreseeable result, caused, or contributed to cause Plaintiff to suffer significant risk of harm or significantly increased risk of substantial harm, loss of employment, loss of medical insurance and medical expenses. substantial emotional distress, mental anguish, intense fear for the safety of his person, humiliation, loss of fraternity, deprivation of rights, and interference in relations with a labor organization.

756.    Accordingly, these Defendants are liable to Plaintiff under Utah Code Ann. 76-10-1605(1).

757.    WHEREFORE, Plaintiff hereby demands judgment against these individual Defendants, the members of the Racketeering Enterprise, each of them, for actual, compensatory, general, and special damages, doubled to an amount of $623,717; for punitive damages that will deter and punish these individual Defendants, in an amount to be determined by the jury, which should be not less than the maximum fine for each predicate act; for the cost of this action, including attorneys' fees and expenses incurred; for pre- and post-judgment interest; for all divestment and forfeiture actions authorized by law, including but not limited to the return of all funds derived from any department, agency, or other entity of the United States government received by Defendant Legal Advocates for Abused Women for a period of five years prior to the date of this lawsuit, sparing not the retirement accounts of its officers; for declaratory and injunctive relief, including but not limited to a permanent injunction barring Defendant Wessling from the

practice of law; and for such other relief as the Court deems proper.

## COUNT 4

### VIOLATION OF UTAH CODE ANN. 76-10-1603 (4)

#### RACKETEERING ENTERPRISE

758.    Plaintiff restates and re-alleges the allegations contained in all of the proceeding paragraphs as though fully set forth herein.

759.    Each of the individual Defendants, the members of the Racketeering Enterprise, combined, conspired, and agreed to participate, directly and indirectly, in the operation or management of the Racketeering Enterprise.

760.    These individual Defendants, the members of the Racketeering Enterprise, each of them, combined, conspired, and agreed to participate in the enterprise through a pattern of racketeering activity consisting of the knowing or willful commission of the following racketeering acts:

    a.   assault constituting violations of Utah Code Ann. 76-5-102;

    b.   theft by extortion constituting violation of Utah Code Ann. 76-6-406;

    c.   obstruction of justice constituting violation of Utah Code Ann. 76-8-306;

    d.   tampering with a witness constituting violation of Utah Code Ann. 76-8-508;

    e.   retaliation against a witness, victim, or informant constituting violation of Utah Code Ann. 76-8-508.3;

    f.   extortion to dismiss criminal proceeding constituting violation of Utah Code Ann. 76-8-509;

g.  communications fraud constituting violation of Utah Code Ann. 76-10-1801;

h.  concealment and alienation of assets in a bankruptcy constituting violations paragraphs (1), (2), (3), (5), (7), (8), and (9) of 18 U.S.C. § 152, or in aidings and abettings thereof pursuant to 18 U.S.C. § 2, or as accessory to pursuant to 18 U.S.C. § 3, or in misprision of pursuant to 18 U.S.C. § 4, or in conspiracy thereto pursuant to 18 U.S.C. § 371;

i.  aidings and abettings pursuant to 18 U.S.C. § 2, or accessory after the fact pursuant to 18 U.S.C. § 3, or misprision pursuant to 18 U.S.C. § 4, or conspiracy pursuant to 18 U.S.C. § 371 of bankruptcy fraud constituting violations of 18 U.S.C. § 157;

j.  identity fraud constituting violations of 18 U.S.C. §§ 1028 and 1028A;

k.  fraud with access devices constituting violations of 18 U.S.C. § 1029;

l.  mail fraud constituting violations of 18 U.S.C. § 1341;

m.  wire fraud constituting violations of 18 U.S.C. § 1343;

n.  obstruction of a pending federal judicial proceeding constituting violations of 18 U.S.C. § 1503;

o.  intimidation of a witness, victim, or informant constituting violations of 18 U.S.C. § 1512;

p.  retaliation against a witness, victim, or informant constituting violations of 18 U.S.C. § 1513;

q.  impeding an investigation pursuant to a bankruptcy constituting violations of 18 U.S.C. § 1519;

r.  destruction, alteration, or falsification of documents or records in a bankruptcy

constituting violations of 18 U.S.C. § 1519;

s.  interference with interstate commerce by threats or violence constituting violations of 18 U.S.C. § 1951;

t.  interstate travel in aid of racketeering constituting violations of 18 U.S.C. § 1952;

u.  laundering of monetary instruments constituting violations of 18 U.S.C. § 1956;

v.  laundering of monetary instruments constituting violations of 18 U.S.C. § 1957; and

w. interstate transportation of stolen property constituting violations of 18 U.S.C. § 2314.

761.  As a direct and proximate result of the pattern of racketeering activity, Plaintiff suffered injury to his business or property; including but not limited to loss of claim in the Bankruptcy, legal fees incurred, travel expenses, interference in relations with a labor organization, and loss of wages and benefits.

762.  The pattern of racketeering activity, as a fairly direct and foreseeable result, caused, or contributed to cause Plaintiff to suffer significant risk of harm or significantly increased risk of substantial harm, loss of employment, loss of medical insurance and medical expenses. substantial emotional distress, mental anguish, intense fear for the safety of his person, humiliation, loss of fraternity, deprivation of rights, and interference in relations with a labor organization.

763.  Accordingly, these Defendants are liable to Plaintiff under Utah Code Ann. 76-10-1605(1).

764.  WHEREFORE, Plaintiff hereby demands judgment against these individual Defendants, the members of the Racketeering Enterprise, each of them, for actual, compensatory, general, and

special damages, doubled to an amount of $623,717; for punitive damages that will deter and punish these individual Defendants, in an amount to be determined by the jury, which should be not less than the maximum fine for each predicate act; for the cost of this action, including attorneys' fees and expenses incurred; for pre- and post-judgment interest; for all divestment and forfeiture actions authorized by law, including but not limited to the return of all funds derived from any department, agency, or other entity of the United States government received by Defendant Legal Advocates for Abused Women for a period of five years prior to the date of this lawsuit, sparing not the retirement accounts of its officers; for declaratory and injunctive relief, including but not limited to a permanent injunction barring Defendant Wessling from the practice of law; and for such other relief as the Court deems proper.

## COUNT 5

### VIOLATION OF 30-42-4 (C) NMSA 1978

### DEFENDANTS SALOIS AND STRAUSSNER

765.    Plaintiff restates and re-alleges the allegations contained in all of the proceeding paragraphs as though fully set forth herein.

766.    Defendants Salois and Straussner were associated with or employed by the enterprise, participated, directly and indirectly, in the operation or management of the Racketeering Enterprise.

767.    Defendants Salois and Straussner participated in the enterprise through a pattern of racketeering activity consisting of the knowing or willful commission of at least two of the

following racketeering acts:

    a.  robbery constituting violation of 30-16-2 NMSA 1978;

    b.  fraud constituting violation of 30-16-6 NMSA 1978;

    c.  extortion constituting violation of 30-16-9 NMSA 1978; and

    d.  solicitation constituting violation of 30-28-3 NMSA 1978.

768.    As a direct and proximate result of the pattern of racketeering activity, Plaintiff suffered injury to his business or property; including but not limited to loss of claim in the Bankruptcy, legal fees incurred, travel expenses, and interference in relations with a labor organization.

769.    Accordingly, these Defendants are liable to Plaintiff under 30-42-6 NMSA 1978.

770.    WHEREFORE, Plaintiff hereby demands judgment against Defendants Salois and Straussner for actual, compensatory, general, and special damages, trebled to an amount of $26,333; for the cost of this action, including attorneys' fees and expenses incurred; for pre- and post-judgment interest; and for such other relief as the Court deems proper.

## COUNT 6

### VIOLATION OF 30-42-4 (D) NMSA 1978

### DEFENDANTS SALOIS AND STRAUSSNER

771.    Plaintiff restates and re-alleges the allegations contained in all of the proceeding paragraphs as though fully set forth herein.

772.    Defendants Salois and Straussner combined, conspired, and agreed to participate, directly and indirectly, in the operation or management of the Racketeering Enterprise.

773.   Defendants Salois and Straussner  combined, conspired, and agreed to participate in the enterprise through a pattern of racketeering activity consisting of the knowing or willful commission of the following racketeering acts:

     a.   robbery constituting violation of 30-16-2 NMSA 1978;

     b.   fraud constituting violation of 30-16-6 NMSA 1978;

     c.   extortion constituting violation of 30-16-9 NMSA 1978; and

     d.   solicitation constituting violation of 30-28-3 NMSA 1978.

774.   As a direct and proximate result of the pattern of racketeering activity, Plaintiff suffered injury to his business or property; including but not limited to loss of claim in the Bankruptcy, legal fees incurred, travel expenses, and interference in relations with a labor organization.

775.   Accordingly, these Defendants are liable to Plaintiff under 30-42-6 NMSA 1978.

776.   WHEREFORE, Plaintiff hereby demands judgment against Defendants Salois and Straussner for actual, compensatory, general, and special damages, trebled to an amount of $26,333; for the cost of this action, including attorneys' fees and expenses incurred; for pre- and post-judgment interest; and for such other relief as the Court deems proper.

## COUNT 7

### VIOLATION OF WIS. ANN. STAT. § 946.83(3)

#### RACKETEERING ENTERPRISE

777.   Plaintiff restates and re-alleges the allegations contained in all of the proceeding paragraphs as though fully set forth herein.

778. These individual Defendants, the members of the Racketeering Enterprise, each of them, were associated with or employed by the enterprise, participated, directly and indirectly, in the operation or management of the Racketeering Enterprise.

779. These individual Defendants, the members of the Racketeering Enterprise, each of them, participated in the enterprise through a pattern of racketeering activity consisting of the knowing or willful commission of at least three of the following racketeering acts:

a. battery or threat to a witness constituting violations of Wis. Ann. Stat. § 940.201;

b. unauthorized use of an individual's personal identifying information constituting violations of Wis. Ann. Stat. § 943.201;

c. threats to injure or accuse of crime constituting violations of Wis. Ann. Stat. § 943.30;

d. threats to communicate derogatory information constituting violations of Wis. Ann. Stat. § 943.31;

e. computer crimes constituting violations of Wis. Ann. Stat. § 943.70.

f. concealment and alienation of assets in a bankruptcy constituting violations paragraphs (1), (2), (3), (5), (7), (8), and (9) of 18 U.S.C. § 152, or in aidings and abettings thereof pursuant to 18 U.S.C. § 2, or as accessory to pursuant to 18 U.S.C. § 3, or in misprision of pursuant to 18 U.S.C. § 4, or in conspiracy thereto pursuant to 18 U.S.C. § 371;

g. aidings and abettings pursuant to 18 U.S.C. § 2, or accessory after the fact pursuant to 18 U.S.C. § 3, or misprision pursuant to 18 U.S.C. § 4, or conspiracy pursuant to 18 U.S.C. § 371 of bankruptcy fraud constituting violations of 18 U.S.C. § 157;

h.  identity fraud constituting violations of 18 U.S.C. §§ 1028 and 1028A;

i.  fraud with access devices constituting violations of 18 U.S.C. § 1029;

j.  mail fraud constituting violations of 18 U.S.C. § 1341;

k.  wire fraud constituting violations of 18 U.S.C. § 1343;

l.  obstruction of a pending federal judicial proceeding constituting violations of 18 U.S.C. § 1503;

m.  intimidation of a witness, victim, or informant constituting violations of 18 U.S.C. § 1512;

n.  retaliation against a witness, victim, or informant constituting violations of 18 U.S.C. § 1513;

o.  impeding an investigation pursuant to a bankruptcy constituting violations of 18 U.S.C. § 1519;

p.  destruction, alteration, or falsification of documents or records in a bankruptcy constituting violations of 18 U.S.C. § 1519;

q.  interference with interstate commerce by threats or violence constituting violations of 18 U.S.C. § 1951;

r.  interstate travel in aid of racketeering constituting violations of 18 U.S.C. § 1952;

s.  laundering of monetary instruments constituting violations of 18 U.S.C. § 1956;

t.  laundering of monetary instruments constituting violations of 18 U.S.C. § 1957; and

u.  interstate transportation of stolen property constituting violations of 18 U.S.C. § 2314.

780.  As a direct and proximate result of the pattern of racketeering activity, Plaintiff suffered

injury to his business or property; including but not limited to loss of claim in the Bankruptcy, legal fees incurred, travel expenses, interference in relations with a labor organization, and loss of wages and benefits.

781.    The pattern of racketeering activity, as a fairly direct and foreseeable result, caused, or contributed to cause Plaintiff to suffer significant risk of harm or significantly increased risk of substantial harm, loss of employment, loss of medical insurance and medical expenses. substantial emotional distress, mental anguish, intense fear for the safety of his person, humiliation, loss of fraternity, deprivation of rights, and interference in relations with a labor organization.

782.    Accordingly, these Defendants are liable to Plaintiff under Wis. Stat. § 946.87.

783.    WHEREFORE, Plaintiff hereby demands judgment against these individual Defendants, the members of the Racketeering Enterprise, each of them, for actual, compensatory, general, and special damages, doubled to an amount of $623,717; for punitive damages that will deter and punish these individual Defendants, in an amount to be determined by the jury, which should be not less than the maximum fine for each predicate act; for the cost of this action, including attorneys' fees and expenses incurred; for pre- and post-judgment interest; for all divestment and forfeiture actions authorized by law, including but not limited to the return of all funds derived from any department, agency, or other entity of the United States government received by Defendant Legal Advocates for Abused Women for a period of five years prior to the date of this lawsuit, sparing not the retirement accounts of its officers; for declaratory and injunctive relief, including but not limited to a permanent injunction barring Defendant Wessling from the practice of law; and for such other relief as the Court deems proper.

## COUNT 8

### VIOLATION OF WIS. ANN. STAT. § 946.87(2)

### RACKETEERING ENTERPRISE

784.   Plaintiff restates and re-alleges the allegations contained in all of the proceeding paragraphs as though fully set forth herein.

785.   These individual Defendants, the members of the Racketeering Enterprise, each of them, were associated with or employed by the enterprise, participated, directly and indirectly, in the operation or management of the Racketeering Enterprise.

786.   These individual Defendants, the members of the Racketeering Enterprise, each of them, participated in the enterprise through a pattern of racketeering activity consisting of the knowing or willful commission of at least three of the following racketeering acts:

   a.   battery or threat to a witness constituting violations of Wis. Ann. Stat. § 940.201;

   b.   unauthorized use of an individual's personal identifying information constituting violations of Wis. Ann. Stat. § 943.201;

   c.   threats to injure or accuse of crime constituting violations of Wis. Ann. Stat. § 943.30;

   d.   threats to communicate derogatory information constituting violations of Wis. Ann. Stat. § 943.31;

   e.   computer crimes constituting violations of Wis. Ann. Stat. § 943.70.

   f.   concealment and alienation of assets in a bankruptcy constituting violations

paragraphs (1), (2), (3), (5), (7), (8), and (9) of 18 U.S.C. § 152, or in aidings and abettings thereof pursuant to 18 U.S.C. § 2, or as accessory to pursuant to 18 U.S.C. § 3, or in misprision of pursuant to 18 U.S.C. § 4, or in conspiracy thereto pursuant to 18 U.S.C. § 371;

g.  aidings and abettings pursuant to 18 U.S.C. § 2, or accessory after the fact pursuant to 18 U.S.C. § 3, or misprision pursuant to 18 U.S.C. § 4, or conspiracy pursuant to 18 U.S.C. § 371 of bankruptcy fraud constituting violations of 18 U.S.C. § 157;

h.  identity fraud constituting violations of 18 U.S.C. §§ 1028 and 1028A;

i.  fraud with access devices constituting violations of 18 U.S.C. § 1029;

j.  mail fraud constituting violations of 18 U.S.C. § 1341;

k.  wire fraud constituting violations of 18 U.S.C. § 1343;

l.  obstruction of a pending federal judicial proceeding constituting violations of 18 U.S.C. § 1503;

m. intimidation of a witness, victim, or informant constituting violations of 18 U.S.C. § 1512;

n.  retaliation against a witness, victim, or informant constituting violations of 18 U.S.C. § 1513;

o.  impeding an investigation pursuant to a bankruptcy constituting violations of 18 U.S.C. § 1519;

p.  destruction, alteration, or falsification of documents or records in a bankruptcy constituting violations of 18 U.S.C. § 1519;

q.  interference with interstate commerce by threats or violence constituting violations of

18 U.S.C. § 1951;

r.   interstate travel in aid of racketeering constituting violations of 18 U.S.C. § 1952;

s.   laundering of monetary instruments constituting violations of 18 U.S.C. § 1956;

t.   laundering of monetary instruments constituting violations of 18 U.S.C. § 1957; and

u.   interstate transportation of stolen property constituting violations of 18 U.S.C. § 2314.

787.   As a direct and proximate result of the pattern of racketeering activity, Plaintiff suffered injury to his business or property; including but not limited to loss of claim in the Bankruptcy, legal fees incurred, travel expenses, interference in relations with a labor organization, and loss of wages and benefits.

788.   The pattern of racketeering activity, as a fairly direct and foreseeable result, caused, or contributed to cause Plaintiff to suffer significant risk of harm or significantly increased risk of substantial harm, loss of employment, loss of medical insurance and medical expenses, substantial emotional distress, mental anguish, intense fear for the safety of his person, humiliation, loss of fraternity, deprivation of rights, and interference in relations with a labor organization.

789.   Accordingly, these Defendants are liable to Plaintiff under Wis. Stat. § 946.87.

790.   WHEREFORE, Plaintiff hereby demands judgment against these individual Defendants, the members of the Racketeering Enterprise, each of them, for actual, compensatory, general, and special damages, doubled to an amount of $623,717; for punitive damages that will deter and punish these individual Defendants, in an amount to be determined by the jury, which should be not less than the maximum fine for each predicate act; for the cost of this action, including

attorneys' fees and expenses incurred; for pre- and post-judgment interest; for all divestment and forfeiture actions authorized by law, including but not limited to the return of all funds derived from any department, agency, or other entity of the United States government received by Defendant Legal Advocates for Abused Women for a period of five years prior to the date of this lawsuit, sparing not the retirement accounts of its officers; for declaratory and injunctive relief, including but not limited to a permanent injunction barring Defendant Wessling from the practice of law; and for such other relief as the Court deems proper.

## COUNT 9

## VIOLATION OF 42 U.S.C. § 1983

### RACKETEERING ENTERPRISE

791.    Plaintiff restates and re-alleges the allegations contained in all of the proceeding paragraphs as though fully set forth herein.

792.    These individual Defendants, the members of the Racketeering Enterprise, each of them, acted with conscious disregard or deliberate indifference of substantial risk of serious harm to Plaintiff.

793.    These individual Defendants, the Racketeering Enterprise, each of them, acted with fairly direct and foreseeable harm to Plaintiff.

794.    These individual Defendants, the Racketeering Enterprise, each of them, knowingly and willfully acted to:

    a.  violate  Plaintiff's First Amendment rights of freedom of speech and freedom of the

press;

b.  violate Plaintiff's Fourth Amendment right against unlawful seizure, including but not limited to:

    i.    the right against unlawful seizure and/or detention;

    ii.    probable cause violations;

    iii.    warrant application, and application or petition for other similar documents, violations;

    iv.    right against miscarriage of justice, including but not limited to the rights against malicious prosecution, against abuse of process, and of fundamental fairness of proceedings;

c.  violate Plaintiff's Fifth Amendment rights against double jeopardy, and that securing just compensation;

d.  violate Plaintiff's Seventh Amendment right of hearing in suits of common law;

e.  violate Plaintiff's Fourteenth Amendment rights of equal protection under the law, and that against state action abridging privileges of citizens;

f.  violate Plaintiff's due process rights, substantive and procedural, secured under the Fourth and Fourteenth Amendments, including but not limited to enactment of a state-created danger, resulting in further fairly direct and foreseeable harm to Plaintiff; and

g.  violate Plaintiff's rights secured by lawful statute of the United States, including but not limited to:

    i.    the right to enjoy a benefit, service, privilege, program, facility, or activity provided or administered by the United States;

ii.     the right to enjoy a benefit, service, privilege, program, facility, or activity provided or administered by any of the several States, namely Missouri and Wisconsin;

iii.    participate as a volunteer in a political campaign;

iv.     interference in relations with a labor organization.

795.    These individual Defendants, the members of the Racketeering Enterprise, each of them, acted and conspired to act under color of state law to deprive Plaintiff of civil rights secured by the United States Constitution and its laws, or to prevent or hinder Plaintiff from free enjoyment of said rights, as described above.

796.    These individual Defendants, the Racketeering Enterprise, each of them, caused, or contributed to cause, Plaintiff to suffer significant risk of harm or significantly increased risk of substantial harm, substantial emotional distress, mental anguish, intense fear for the safety of his person, humiliation, loss of fraternity, deprivation of rights, and interference in relations with a labor organization.

797.    These individual Defendants, the Racketeering Enterprise, each of them, acted recklessly, callously, intentionally, and maliciously, prompted by ill will or spite toward Plaintiff, and with conscious desire to cause injury, to consciously deprive Plaintiff of his civil rights.

798.    As a direct and proximate result of the acts and/or omissions of these individual Defendants, the Racketeering Enterprise, each of them, Plaintiff has suffered damages including, but not limited to, those damages recoverable pursuant to 42 U.S.C. § 1983.

799.    WHEREFORE, Plaintiff hereby demands judgment against these individual Defendants, the members of the Racketeering Enterprise, each of them, for actual, compensatory, general, and

special damages in an amount of $1,000,000; for punitive damages that will deter and punish these individual Defendants in an amount to be determined by the jury, which should exceed $1,000,000; for the cost of this action, including attorneys' fees and expenses incurred; for pre- and post-judgment interest; and for such other relief as the Court deems proper.

**COUNT 10**

**VIOLATION OF 42 U.S.C. § 1983**

**DEFENDANT EDWARD HINRICHS**

800.   Plaintiff restates and re-alleges the allegations contained in all of the proceeding paragraphs as though fully set forth herein.

801.   On this count Defendant is being sued in his official capacity as a member of law enforcement.

802.   Defendant Hinrichs acted with conscious disregard or deliberate indifference of substantial risk of serious harm to Plaintiff.

803.   As a fairly direct and foreseeable result of Defendant Hinrichs' acts, Plaintiff's rights secured by the United States Constitution and its laws were violated; including but not limited to:

    a.   First Amendment rights of freedom of speech and freedom of the press;

    b.   Fourth Amendment right against unlawful seizure, including but not limited to:

        i.   the right against unlawful seizure and/or detention;

        ii.   probable cause violations;

        iii.   warrant application, and application or petition for other similar documents,

violations;

    iv.   right against miscarriage of justice, including but not limited to the rights against malicious prosecution, against abuse of process, and of fundamental fairness of proceedings;

c.  Seventh Amendment right of hearing in suits of common law;

d.  Fourteenth Amendment rights of equal protection under the law, and that against state action abridging privileges of citizens;

e.  due process rights, substantive and procedural, secured under the Fourth and Fourteenth Amendments, including but not limited to enactment of a state-created danger, resulting in further fairly direct and foreseeable harm to Plaintiff; and

f.  rights secured by lawful statute of the United States, including but not limited to:

    i.   the right to enjoy a benefit, service, privilege, program, facility, or activity provided or administered by the United States;

    ii.   the right to enjoy a benefit, service, privilege, program, facility, or activity provided or administered by any of the several States, namely Missouri and Wisconsin;

    iii.   participate as a volunteer in a political campaign;

    iv.   interference in relations with a labor organization.

804.  Defendant Hinrichs caused, or contributed to cause, Plaintiff to suffer significant risk of harm or significantly increased risk of substantial harm, substantial emotional distress, mental anguish, intense fear for the safety of his person, humiliation, and monetary losses in providing a private security detail in subsequent visits to the courthouse in Clayton, Missouri.

- 133 -

805.   As a direct and proximate result of the acts and/or omissions of Defendant Edward Hinrichs, Plaintiff has suffered damages including, but not limited to, those damages recoverable pursuant to 42 U.S.C. § 1983.

806.   WHEREFORE, Plaintiff hereby demands judgment against Defendant Edward Hinrichs for actual, general, special, and compensatory damages in an amount in excess of $1,000,000; for punitive damages in an amount to be determined by the jury, which should exceed $1,000,000; for the cost of this action, including attorney's fees; for pre- and post-judgment interest; and for such other relief as the Court deems just and proper.

## COUNT 11

### VIOLATION OF 42 U.S.C. § 1983

### DEFENDANT GALLAGHER

807.   Plaintiff restates and re-alleges the allegations contained in all of the proceeding paragraphs as though fully set forth herein.

808.   On this count Defendant is being sued in his official capacity as a member of law enforcement.

809.   Defendant Gallagher acted with conscious disregard or deliberate indifference of substantial risk of serious harm to Plaintiff.

810.   As a fairly direct and foreseeable result of Defendant Gallagher's acts, Plaintiff's rights secured by the United States Constitution and its laws were violated; including but not limited to:

   a.   First Amendment rights of freedom of speech and freedom of the press;

- 134 -

b. Fourth Amendment right against unlawful seizure, including but not limited to:

    i.    the right against unlawful seizure and/or detention;

    ii.    probable cause violations;

    iii.    warrant application, and application or petition for other similar documents, violations;

    iv.    right against miscarriage of justice, including but not limited to the rights against malicious prosecution, against abuse of process, and of fundamental fairness of proceedings;

c. Seventh Amendment right of hearing in suits of common law;

d. Fourteenth Amendment rights of equal protection under the law, and that against state action abridging privileges of citizens;

e. due process rights, substantive and procedural, secured under the Fourth and Fourteenth Amendments, including but not limited to enactment of a state-created danger, resulting in further fairly direct and foreseeable harm to Plaintiff; and

f. rights secured by lawful statute of the United States, including but not limited to:

    i.    the right to enjoy a benefit, service, privilege, program, facility, or activity provided or administered by the United States;

    ii.    the right to enjoy a benefit, service, privilege, program, facility, or activity provided or administered by any of the several States, namely Missouri and Wisconsin;

    iii.    participate as a volunteer in a political campaign;

    iv.    interference in relations with a labor organization.

811.    Defendant Gallagher caused, or contributed to cause, Plaintiff to suffer significant risk of harm or significantly increased risk of substantial harm, substantial emotional distress, mental anguish, intense fear for the safety of his person, and humiliation.

812.    As a direct and proximate result of the acts and/or omissions of Defendant Gallagher, Plaintiff has suffered damages including, but not limited to, those damages recoverable pursuant to 42 U.S.C. § 1983.

813.    WHEREFORE, Plaintiff hereby demands judgment against Defendant Gallagher for actual, general, special, and compensatory damages in an amount in excess of $1,000,000; for punitive damages in an amount to be determined by the jury, which should exceed $1,000,000; for the cost of this action, including attorney's fees; for pre- and post-judgment interest; and for such other relief as the Court deems just and proper.

## COUNT 12

### VIOLATION OF 42 U.S.C. § 1983

### DEFENDANTS HOOTS, ROBERDS, O'NEILL, AND WILLMERING

814.    Plaintiff restates and re-alleges the allegations contained in all of the proceeding paragraphs as though fully set forth herein.

815.    These individual Defendants, each of them, are being sued in their official capacities as members of law enforcement with this count.

816.    Defendants Hoots, Roberds, O'Neill, and Willmering, each of them, acted with conscious disregard or deliberate indifference of substantial risk of serious harm to Plaintiff.

817.    As a fairly direct and foreseeable result of Defendants Hoots', Roberds', O'Neill's, and Willmering's acts, Plaintiff's rights secured by the United States Constitution and its laws were violated; including but not limited to:

    a.   First Amendment rights of freedom of speech and freedom of the press;

    b.   Fourth Amendment right against unlawful seizure, including but not limited to:

        i.     the right against unlawful seizure and/or detention;

        ii.     probable cause violations;

        iii.     warrant application, and application or petition for other similar documents, violations;

        iv.     right against miscarriage of justice, including but not limited to the rights against malicious prosecution, against abuse of process, and of fundamental fairness of proceedings;

    c.   Fifth Amendment rights against double jeopardy, and that securing just compensation;

    d.   Seventh Amendment right of hearing in suits of common law;

    e.   Fourteenth Amendment rights of equal protection under the law, and that against state action abridging privileges of citizens;

    f.   due process rights, substantive and procedural, secured under the Fourth and Fourteenth Amendments, including but not limited to enactment of a state-created danger, resulting in further fairly direct and foreseeable harm to Plaintiff; and

    g.   rights secured by lawful statute of the United States, including but not limited to:

        i.     the right to enjoy a benefit, service, privilege, program, facility, or activity

provided or administered by the United States;

    ii.    the right to enjoy a benefit, service, privilege, program, facility, or activity provided or administered by any of the several States, namely Missouri and Wisconsin;

    iii.    participate as a volunteer in a political campaign;

    iv.    interference in relations with a labor organization.

818.    Defendants Hoots, Roberds, O'Neill, and Willmering, each of them, caused, or contributed to cause, Plaintiff to suffer significant risk of harm or significantly increased risk of substantial harm, substantial emotional distress, mental anguish, intense fear for the safety of his person, and humiliation.

819.    As a direct and proximate result of the acts and/or omissions of Defendants Hoots, Roberds, O'Neill, and Willmering, each of them, Plaintiff has suffered damages including, but not limited to, those damages recoverable pursuant to 42 U.S.C. § 1983.

820.    WHEREFORE, Plaintiff hereby demands judgment against Defendants Hoots, Roberds, O'Neill, and Willmering, each of them, for actual, general, special, and compensatory damages in an amount in excess of $1,000,000; for punitive damages in an amount to be determined by the jury, which should exceed $1,000,000; for the cost of this action, including attorney's fees; for pre- and post-judgment interest; and for such other relief as the Court deems just and proper.

## COUNT 13

### VIOLATION OF 42 U.S.C. § 1983

### DEFENDANT TIMOTHY LACHANCE

821.   Plaintiff restates and re-alleges the allegations contained in all of the proceeding paragraphs as though fully set forth herein.

822.   On this count Defendant is being sued in his official capacity as a member of law enforcement.

823.   Defendant Lachance acted with conscious disregard or deliberate indifference of substantial risk of serious harm to Plaintiff.

824.   As a fairly direct and foreseeable result of Defendant Lachance's acts, Plaintiff's rights secured by the United States Constitution and its laws were violated; including but not limited to:

    a.   First Amendment rights of freedom of speech and freedom of the press;

    b.   Fourth Amendment right against unlawful seizure, including but not limited to:

        i.   the right against unlawful seizure and/or detention;

        ii.   probable cause violations;

        iii.   warrant application, and application or petition for other similar documents, violations;

        iv.   right against miscarriage of justice, including but not limited to the rights against malicious prosecution, against abuse of process, and of fundamental fairness of proceedings;

    c.   Fifth Amendment rights against double jeopardy, and that securing just compensation;

    d.   Seventh Amendment right of hearing in suits of common law;

    e.   Fourteenth Amendment rights of equal protection under the law, and that against state

action abridging privileges of citizens;

f.  due process rights, substantive and procedural, secured under the Fourth and Fourteenth Amendments, including but not limited to enactment of a state-created danger, resulting in further fairly direct and foreseeable harm to Plaintiff; and

g.  rights secured by lawful statute of the United States, including but not limited to:

    i.    the right to enjoy a benefit, service, privilege, program, facility, or activity provided or administered by the United States;

    ii.    the right to enjoy a benefit, service, privilege, program, facility, or activity provided or administered by any of the several States, namely Missouri and Wisconsin;

    iii.    participate as a volunteer in a political campaign;

    iv.    interference in relations with a labor organization.

825.  Defendant Lachance caused, or contributed to cause, Plaintiff to suffer significant risk of harm or significantly increased risk of substantial harm, substantial emotional distress, mental anguish, intense fear for the safety of his person, and humiliation.

826.  As a direct and proximate result of the acts and/or omissions of Defendant Lachance, Plaintiff has suffered damages including, but not limited to, those damages recoverable pursuant to 42 U.S.C. § 1983.

827.  WHEREFORE, Plaintiff hereby demands judgment against Defendant Timothy Lachance for actual, general, special, and compensatory damages in an amount in excess of $1,000,000; for punitive damages in an amount to be determined by the jury, which should exceed $1,000,000; for the cost of this action, including attorney's fees; for pre- and post-judgment interest; and for