IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WILLIAM MICHAEL HART,<br><br>                Plaintiff,<br>v.<br><br>SHERRY A. SALOIS, et al.,<br>                Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:13-cv-11-DAK-BCW<br><br>District Judge Dale Kimball |

      Before the Court are ten motions to dismiss filed by thirty (30) out of the thirty-seven (37) named Defendants in this case.[1] The Court has carefully reviewed the motions and memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the Court elects to determine the motions on the basis of the written memoranda and finds oral argument would not be helpful or necessary.[2]

      For the reasons set forth more fully below, the Court finds this court lacks personal jurisdiction over all but one Defendant in this case. Despite the Court having personal jurisdiction over one Defendant, venue is improper in this Court. In addition, Plaintiff's Complaint and claims are fatally deficient under the Federal Rules of Civil Procedure. Therefore, the Court ORDERS that the pending Motions to Dismiss be GRANTED and the Case be DISMISSED in its entirety.

---

[1] See docket nos. 22, 37, 41, 46, 51, 71, 73, 74, 76, and 80.
[2] See DUCivR 7-1(f).

## BACKGROUND[3]

As mentioned above, Plaintiff has filed this lawsuit against thirty-seven different Defendants. Among these Defendants, are individuals, six Missouri state court judges, the City of Clayton Missouri and the City of Oak Creek Wisconsin, two Missouri counties, police officers, including a chief of police in Missouri, and a Missouri non-profit organization.

Plaintiff's voluminous Complaint is 240 pages and contains 1,227 paragraphs of allegations that amount to over sixty (60) "causes of action." Plaintiff's Complaint alleges violations under the United States Constitution, various Federal statutes, Wisconsin state law, New Mexico state law, Utah state law and Missouri State law. While it is difficult to discern exactly what grievances the Plaintiff is trying to resolve through this action, Plaintiff paints a complicated picture of various injuries he claims to have suffered, all as a result of a loan Plaintiff made to Defendant Sherry Salois ("Salois") and the events that occurred thereafter.

Between May 28, 2007 and November 11, 2008, Plaintiff loaned Salois approximately $10,462.00. Salois executed a promissory note securing these loans by a lien on a residence located on Toulon Drive in St. Louis, Missouri. On April 15, 2009 Plaintiff sent notice to Salois informing her Plaintiff would pursue court action for payment of the debt if arrangements were not made within 30 days. Thereafter, Salois filed for Chapter 7 bankruptcy relief in the United States Bankruptcy Court for the Eastern District of Missouri. According to Plaintiff, Salois did not inform the bankruptcy trustee of the entire amount of the loan from Plaintiff. Further, Salois incorrectly identified Plaintiff's debt as unsecured. Plaintiff further alleges Salois did not inform

---

[3] Unless otherwise specified, all facts included in this section were taken from the Amended Complaint, the memoranda and exhibits filed in conjunction with the Motions to Dismiss. The Court finds the Defendants have adequately summarized the Plaintiff's lengthy and at times convoluted arguments in their briefs. Therefore, the Court will only briefly summarize Plaintiff's Complaint in order to provide context for the issues presented herein. While to some degree this recitation of the facts may seem absurd or nonsensical, this Court feels it necessary to do so in support of the decision.

the trustee of her interest in the future estate of Defendant Berle Hopper and in her bankruptcy filings, Salois stated that she received a below-market-rate upkeep payment of $78.55 each month from her then-fiance Defendant Straussner for living in her home, and a loan from Straussner that made up the difference between her monthly expenses and income.

Plaintiff reviewed the bankruptcy petition and documents submitted to the Bankruptcy Court by Salois and hired a private detective to review and compare the bankruptcy and documents Salois filed as part of her divorce from Eric Salois in 2007. Plaintiff then reported his suspicions of discrepancies in Salois' filings both orally and in writing to the Assistant United States Trustee ("bankruptcy Trustee") and to other creditors in Salois' bankruptcy. However, on August 10, 2009, the Bankruptcy Court issued an order of discharge of debt and a final decree on October 10, 2009. Therefore, the debt owed to Plaintiff by Salois was discharged.

Before the bankruptcy discharge however, Plaintiff alleges Straussner spoke to Plaintiff via telephone while Plaintiff was driving in Texas and New Mexico on May 29, 2009. Plaintiff alleges Straussner identified himself as "George Jinkerson" and used racial slurs and threatened Plaintiff with physical violence. Plaintiff reported these threats to the bankruptcy Trustee and the St. Louis Police Department.

Plaintiff further alleges Salois and Strausnner sent him threatening and harassing emails, publicly posted false statements about Plaintiff on the Internet (including stating that Plaintiff was a "vulture," "child abuser," "stalk[er]," and criminal who "[m]aniplates and verbally abuses women"). According to Plaintiff, these emails and posts were sent using an internet account, and blog account profile in the name of George Jinkerson from the residence on Toulon Drive. Plaintiff also alleges Salois used profanity against Plaintiff, told Plaintiff that he "needed a

restraining order against him," and had to be restrained by Straussner from battering Plaintiff following a creditor's meeting on June 9, 2009.

Plaintiff further claims starting in June 2009, Salois also published false statements about Plaintiff on her personal blog, titled "Stop Stalking Me."[4] Plaintiff alleges "Salois combined, conspired and acted together with other members of the Racketeering Enterprise through the posts that appeared on this blog.[5] According to Plaintiff, the Salois Blog contained further misrepresentations and falsehoods concerning him,

> including but not limited to states: that Plaintiff was a stalker; that Plaintiff was a drunk; that Plaitniff had her fiancé served with a fake restraining order; that Plaintiff 'stalked [Defendant Salois] in real life through phone calls, emails and unannounced and uninvited visits,' that Defendant Salois 'fear[ed] for [her] life, [her] children's lives, and [Defendant Straussner's] life" directly due to the acts and conduct of Plaintiff; and photoshopping Plaintiff's name into a credit card statement of Defendant Salois (hereinafter, "Altered Card Statement.[6]

On July 13, 2009, Shirley Hopper called Plaintiff and told him Salois was mentally unstable and presented a likelihood of serious physical harm to herself. Plaintiff also claims Shirley Hopper posted threats against Plaintiff on Salois' blog. Plaintiff also alleges Defendant Peggy Pendleton ("Pendleton") who is the only Defendant that resides in Utah and maintains a blog titled "Deadly Women Write" and uses the screen name "Utah Savage" posted three comments on Plaintiff's blog that were threatening. One of the comments (Plaintiff does not enumerate all of the comments) made on Salois' blog by Pendleton advised Salois to arm herself with a firearm.

---

[4] Am. Compl. at ¶ 426.
[5] Id. at ¶ 426-430.
[6] Id. at ¶ 433.

### A. Protective Orders

On June 9, 2009, Plaintiff petitioned a Missouri state court for an Order of Protection against Straussner. This Protective Order was subsequently served on Staussner. On July 13, 2009, Plaintiff contends Salois also petitioned a Missouri state court for an Order of Protection against Plaintiff without any legitimate basis to do so. Plaintiff contends Salois omitted several relevant facts from her petition and misrepresented others. Salois requested an extension of an Ex Parte Order on July 30, 2009.

Plaintiff alleges Salois and Strausnner threatened a process server and avoided service related to an Order of Protection requested by Plaintiff. According to Plaintiff, Salois, through counsel later sought to set aside that Order of Protection, but the Order was instead extended, after which Plaintiff filed a second Order of Protection on November 17, 2010. Plaintiff then filed a memorandum of dismissal which was granted the following day.

On August 27, 2009, Plaintiff entered into a consent order in relation to unfounded claims by Salois. Upon leaving the Courthouse, Plaintiff alleges he was threatened by these Defendants. On the same day, Plaintiff reported these threats to Defendant Clayton, Missouri Police Department. When the police investigated, Plaintiff alleges that the Straussner, Howard and Berle Hopper gave the police false and misleading information.

Later, Salois was involved in a hearing on a motion for contempt in relation to the consent order to which Plaintiff had agreed. According to Plaintiff, Salois' testimony included a misrepresentation about the source of the altered credit card statement posted on her blog.

Plaintiff filed for a second Order of Protection against Straussner at which time Staussner verbally harassed Plaintiff. Plaintiff then discovered that Straussner, Douglas Howard and Berle

Hopper had a detective investigating and following him.  This detective was allegedly paid for by Berle Hopper for the purpose of harassing Plaintiff.

Straussner then filed for an Order of Protection against Plaintiff. The matter was heard on September 10, 2009.  At the hearing, Plaintiff alleges Straussner had altered his appearance by having his hair dyed and face shaved in order to claim mistaken identity.   Plaintiff alleges Straussner was twice declared by the courts to be engaged in the stalking of Plaintiff.   In one proceeding, Plaintiff presented testimony and evidence to a court that Straussner had committed witness intimidation by threat of bodily injury, interstate communications to extort, wire fraud, falsification of records in a bankruptcy, identity fraud, obstruction of justice, computer fraud and unlawful use of access codes, and other criminal activity in relation to a pending federal judicial proceeding.   Plaintiff states that the court responded that both parties "should just grow up."

Plaintiff filed multiple complaints against various Defendants with the Office of Chief Discplinary Counsel, the Missouri Attorney General's Office, and the Internal Revenue Service.  The court entered "a finding of stalking" related to an Order of Protection sought by Plaintiff based upon Plaintiff's claims for defamation, incitement, harassment, intimidation of a witness, imposture, abuse of process (malicious prosecution), and failure to comply with a previous order of protection.

Plaintiff applied to renew the Order on November 21, 2011.  At the hearing on December 20, 2011 for renewal of the Order, upon arrival in the courtroom, Plaintiff observed that Straussner and Salois had arrived early and were already in the courtroom.  According to Plaintiff they were with an unnamed Defendant and they had all, according to Plaintiff been talking with the judge.  Salois then testified that she did not know how Plaintiff obtained items which she had posted publicly on the Internet bearing her account code.

Plaintiff's claims against Defendants Legal Advocates for Abused Women ("LAAW") and Defendants Jennifer Doering (Secretary of Executive Committee of LAAW, hereinafter referred to as "Doering") and Cheryl Kelly (Vice President of the Executive Committee, hereinafter referred to as "Kelly") appear to be based upon Plaintiff's belief that these individuals acted improperly by providing legal counsel to represent Defendant Salois for purposes of obtaining an order of protection against Plaintiff in Missouri State Court. Plaintiff implicates LAAW in 9 counts alleging racketeering activity and alleges the following causes of action against Doering and Kelly: (i) Violation of 18 U.S.C. § 2511 (Inception and disclosure wire, oral, or electronic communications prohibited); (ii) Violation of 18 U.S.C. § 2701 (Stored Wire and Electronic Communications and Transactional Records Access); (iii) Conversion; (iv) Spoliation; (v) Malicious Prosecution; (vi) Abuse of Process; (vii) False Imprisonment; (viii) Assumption of Duty; (ix) Duress; (x) Tortious Interference; (xi) Assault; (xii) Stalking; and (xiii) Intentional Infliction of Emotional Distress.

Further, Plaintiff brings claims against various members of the St. Louis County Police Department, Family Court judges and volunteer attorneys, who participated in the law enforcement and judicial process relating to the previously mentioned Orders of Protection. Plaintiff has also named various other Defendants who he believes may have some nexus, however attenuated, to the various disputes with Salois and Staussner. The only Defendant that resides in Utah is Peggy Pendleton ("Pendleton") and the only actions Plaintiff's alleges to have taken place in Utah are three comments on Plaintiff's blog by Ms. Pendleton.

## ANALYSIS

At the outset, the Court notes Plaintiff is proceeding *pro se* in this case. Accordingly, the Court will construe his pleadings and other submissions liberally.[7] At the same time however, it is not "…the proper function of the district court to assume the role of advocate for the pro se litigant."[8]

The Court notes that Defendants through their Motions to Dismiss have made the same, if not very similar arguments for dismissal. Further, based upon the allegations made in the Complaint and the arguments contained within the Motions to Dismiss and supporting Memoranda, the threshold question that must be resolved is whether this Court has jurisdiction over the Plaintiff's claims and whether venue is proper. Accordingly, because of posture of this case in which Defendants all are making relatively the same arguments, the Court will address sufficiency of the Complaint and the issues with regard to jurisdiction and venue collectively rather than on a motion by motion and/or defendant by defendant basis.

### A. Personal Jurisdiction

Only one Defendant, Peggy Pendleton resides in the state of Utah. The remaining Defendants live elsewhere but mostly in Missouri or Wisconsin. Therefore the issue is whether under Rule 12(b)(2) jurisdiction properly lies in this Court as to the other Defendants who are not residents of the State of Utah.

"Federal Courts are courts of limited jurisdiction."[9] Thus, "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category

---

[7] See e.g., Ledbetter v. City of Topeka, 318 F.3d 1183, 1187 (10th Cir. 2003)(citing Haines v. Kerner, 404 U.S. 519, 520-21, (1972).
[8] Hall v. Bellman, 935 F.2d 1106, 1110 (10th Cir. 1991).
[9] Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994)(internal citations omitted).

of claim in suit (subject-matter) jurisdiction and the parties (personal jurisdiction)."[10] As to priority of jurisdictional issues, "there is no mandatory 'sequencing of jurisdictional issues'" and "[i]n appropriate circumstances…a court may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction."[11]

Plaintiff carries the burden of establishing personal jurisdiction over defendant.[12] However, in the preliminary stages of litigation, the plaintiff's burden is only to establish a prima facie case that jurisdiction exists.[13] "Where…there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of the affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists."[14] All factual disputes are resolved in favor of the plaintiff when determining the sufficiency of this showing.[15]

"Specific personal jurisdiction exists when a non-resident defendant purposefully establishes sufficient minimum contacts with the forum state, the cause of action arises out of these contacts, and jurisdiction is constitutionally reasonable."[16] Further, the Utah Supreme Court has stated that "specific jurisdiction gives a court power over a defendant only with respect to claims arising out of particular activities of the defendant in the forum state. For such jurisdiction to exist, the defendant must have certain minimum local contacts"[17] The evaluation of specific jurisdiction requires a three-part inquiry: (1) the defendant's acts or contacts must

---

[10] Sinochem Int'l Co, Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-431 (2007)(internal citations omitted).
[11] Id. (quoting Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999)).
[12] OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998); Kuenzle v. HTM SportUnd Freizeitgerate AG, 102 F.3d 453, 456 (10th Cir. 1996).
[13] Electronic Realty Assocs. v. Vaughan Real Estate, Inc., 897 F.Supp. 521, 522 (D. Kan. 1995).
[14] Id., see also Soma Medical Int'l v. Standard Chartered Bank, 196 F.3d 1292, 1295 (10th Cir. 1995).
[15] Wenz v. Memory Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).
[16] See iAccess, Inc. v. WEBcard Technologies, Inc. 182 F.Suppo.2d 1183, 1186 (D. Utah 2002)(citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-477 (1985).
[17] Arguello v. Industrial Woodworking Mach. Co., 838 P.2d 1120, 1122 (Utah 1992).

implicate Utah under the Utah long-arm statute; (2) a nexus must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) the application of the Utah long-arm statute must satisfy the requirements of federal due process.

The Utah legislature had declared that the long-arm statue be interpreted broadly "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the U.S. Constitution." Thus, it is if due process is satisfied, Utah's long arm statute will also be satisfied.[18] In order to determine whether due process is satisfied there is a two prong test. (1) Minimum Contacts and (2) Fair Play & Substantial Justice.

    i.    Minimum Contacts

Under due process standards, a court may exercise personal jurisdiction over a nonresident defendant so long as there are "minimum contacts" between the defendant and the forum state.[19] In order find this courts must look to (1) purposeful availment to the forum state by defendant and (2) the extent in which Plaintiff's claims arise out of Defendant's contact.

The "minimum" contacts necessary for specific jurisdiction are established 'if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities."[20] Further, "[t]he pertinent inquiry in personal jurisdiction analysis is whether Defendant, by its own actions, has

---

[18] SII MegaDiamond, Inc. v. American Superabrasives Corp., 969 P.2d 430, 433 (Utah 1998)(the Utah Supreme Court "frequently make[s] a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long arm statute.")
[19] World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980)(citations omitted).
[20] OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998)(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)); see also Rainy Day, at 1162 ("[i]n order to exercise specific jurisdiction, there must be 'some act by which the defendant purposefully availed itself of the privilege of conducting business in the forum state, thus invoking the benefits and protections of its laws.")(citing Hanson v. Denckla, 357 U.S. 235, 253 (1958).

purposefully availed itself of the privilege of conducting business in this jurisdiction so that it should reasonabl[y] anticipate being haled into this forum."[21]

Under the first prong of due process, the court should "examine the quantity and quality of [defendant's] contacts with Utah."[22]

When a plaintiff's cause of action does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state."[23]

ii. Fair Play & Substantial Justice

Even if a nonresident defendant's actions created sufficient minimum contacts with the forum state, a court may not exercise personal jurisdiction over defendant if to do so would offend traditional notions of fair play and substantial justice, i.e. if exercise would be unreasonable in light of circumstances surrounding case.[24]

In determining whether exercise of personal jurisdiction over nonresident defendant is so unreasonable as to violate fair play and substantial justice, a Court considers: (1) the burden on the defendant; (2) forum state's interest in resolving dispute; (3) plaintiff's interest in receiving convenient and effective relief; (4) interstate judicial system's interest in obtaining most efficient resolution controversies; and (5) shared interest of several states in furthering fundamental substantive social policies.[25]

Here, the Court finds that it only has personal jurisdiction over Pendleton because she is domiciled in the State of Utah. While Plaintiff does cite the correct statutes in asserting personal

---

[21] Rainy Day Books, at 1165.
[22] Id., Arguello v. Industrial Woodworking Mach. Co., 838 P.3d 1120, 1122 (Utah 1992).
[23] Rainy Day Books, Inc. v. Rainy Day Books & Café, LLC, 186 F.Supp.2d. 1158, 1161 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 414-416 (1984).
[24] Rainy Day Books, Inc. v. Rainy Day Books & Café, LLC, 186 F.Supp.2d 1158, 1161-1162 (D. Kansas 2002). .
[25] Id.

jurisdiction, Plaintiff's reasoning is fatally flawed. First, the Court finds that none of the Defendants have through their alleged actions "purposely availed themselves" nor directed their activities to the State of Utah. To the contrary, the events underlying this lawsuit occurred in states other than Utah, and mainly in Missouri. Further, many of the Defendants have never even visited Utah and if they have visited the state it has been unrelated to this lawsuit and not for extended periods of time. Therefore, the Court finds that Defendants other than Ms. Pendleton do not have sufficient "minimum contacts" in the State of Utah in order to be subject to personal jurisdiction here.

Second, it would upset the notions of fair play and substantial justice if the Court were to find that it had personal jurisdiction over these Defendants based upon the allegations in Plaintiff's Complaint. As mentioned many times, the only act that occurred in Utah was Defendant Pendleton's posting on Plaintiff's blog. Therefore, it would be fundamentally unfair and place a major burden on the Defendants if they had to litigate this case (assuming it has merit) in this Court. Travel costs, court fees and other expenses would create an enormous burden on the Defendants if forced to litigate in this District. Moreover, because the material events in this case took place elsewhere, Utah does not have an interest in resolving this suit, even it one of its citizens is involved. Although Plaintiff seems to want to have the case litigated here or in New Mexico "only if all of the parties waive objections to venue and personal jurisdiction in the District of New Mexico will Plaintiff agree to transfer venue to either Santa Fe or Roswell,"[26] the Court finds the Plaintiff's arguments unpersuasive.

Therefore, as to every Defendant other than Ms. Pendleton, this Court does not have personal jurisdiction over these defendants because to hale them into court in Utah would upset due process of law.

---

[26] Docket no. 36.

### B. Venue

Under the applicable venue statute, 28 U.S.C. §1391(b), a civil action may be brought in a judicial district where: (1) any defendant resides, if all defendants reside in the same State; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) any defendant may be found, if there is no district in which the action may otherwise be brought.[27]

In the instant case, subsections (1) and (3) do not apply. First, as to subsection (1) not all of the Defendants reside in the same state. Second, as to subsection (2), the Defendants in this case include two Missouri counties, the City of Clayton, Missouri, law enforcement officers employed by local government entities in Missouri, six Missouri state court judges. While it is unclear exactly where the loan between Plaintiff and Ms. Salois occurred, the material events giving rise to Plaintiff's alleged claims, Plaintiff's collection efforts on the loan, Salois' bankruptcy case, and proceedings for various protective orders all occurred in Missouri Courts. As mentioned above, the <u>only events</u> that took place in Utah were three blog posts by Defendant Pendleton that originated in Utah. Even if personal jurisdiction may be proper over Ms. Pendleton, her blog posts surely are not enough for venue to lie in this district. Her minor involvement in the events of this case is not substantial. Lastly as to subsection (3) there is no indication in the record that this action cannot be brought in another district. Thus, venue is improper in Utah.

---

[27] 28 U.S.C. § 1391(b).

C. **Rule 8 of the Federal Rules of Civil Procedure**

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[28] Thus, a pleading must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[29] This standard requires a pleading to contain more than "labels and conclusions or…naked assertion[s] devoid of further factual enhancement."[30] "Specific facts are not necessary; the statement need only give the defendant fair notice of what the…claim is and the grounds upon which it rests."[31] Accordingly, a court should grant a motion to dismiss where the "factual content" of the pleading does not "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[32] Determining whether a pleading meets this standard "requires the reviewing court to draw on its judicial experience and common sense."[33] "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[34]

Plaintiff's Complaint does not meet Rule 8's pleading standard. Rather, as argued by many of the Defendants, there is nothing "short or plain" about Plaintiff's Complaint. As Defendants Doering and Kelly point out, "the numbers alone evidence a violation of Rule 8: 60 counts, 1,227 paragraphs, 231 pages with a table of contents that is seven and a half pages long.[35]

---

[28] Fed.R.Civ.P. 8(a)(2).
[29] Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
[30] Id. at 678 (quoting Twombly, 550 U.S. at 555-57)(internal quotation marks omitted).
[31] Khalik v. United Air Lines, 671 F.3d 1188, 1191, (citing Twombly at 555)>
[32] Id. at 663 (citing *Twombly*, 550 U.S. at 556).
[33] Iqbal, at 679 (citation omitted).
[34] Id. (citing F.R.C.P. 8(a)(2)).
[35] Docket no. 37 at p. 14.

As has been eluded to above, the Plaintiff's Complaint presents a very convoluted and complicated set of facts in what amounts to in Plaintiff believes is a grandiose conspiracy against him. Plaintiff believes this conspiracy was a plot by a group of defendants, most of whom probably never have met each other or were not aware each other existed until the filing of this lawsuit. Moreover, the Court and the parties are left to guess and attempt parse out which claims relate to which individuals because Plaintiff regularly rotates between references to "Defendants" and "Individual Defendants" without making it clear which allegations are directed to which defendant or defendants. This is in clear violation of Rule 8. Lastly, based on the allegations contained within the Complaint as well as the Court's findings as to lack of personal jurisdiction and improper venue, the Court finds it would be futile to allow Plaintiff to amend his Complaint to cure these deficiencies.

## **CONCLUSION & ORDER**

For the foregoing reasons, the Court HEREBY ORDERS as follows:

1. Defendants Sherry Ann Salois, Timothy Strausnner, Shirley Hopper, Berle Hopper and Douglas Howards' Motion to Dismiss[36] is GRANTED.

2. Defendants Jennifer Doering and Cheryl A. Kelly's Motion to Dismiss[37] is GRANTED.

3. Defendants Victoria Mullen McKee, Thea A. Sherry and Ellen Levy Siwak's Motion to Dismiss[38] is GRANTED.

4. Defendants Rebecca Bealmear, Tim Fitch, FNU Hoots, Timothy Lachance, FNU O'Neill, Terry Roberds, St. Louis County, and FNU Willmering's Motion to Dismiss[39] is GRANTED.

---

[36] Docket no. 22. Defendant Peggy Pendleton has also been joined in this Motion.
[37] Docket no. 37.
[38] Docket no. 41.
[39] Docket no. 46.

5. Defendants Richard Anderson, Erik Holland and Platte County's Motion to Dismiss[40] is GRANTED.

6. Defendant Douglas R. Beach's Motion to Dismiss[41] is GRANTED.

7. Defendant Michael D. Burton's Motion to Dismiss[42] is GRANTED.

8. Defendants Legal Advocates for Abused Women and Aimee Nassif's Motion to Dismiss[43] is GRANTED.

9. Defendant James Van Amburg's Motion to Dismiss[44] is GRANTED.

10. Defendants Thomas J. Byrne, City of Clayton and Edward Hinrichs' Motion to Dismiss[45] is GRANTED.

11. All other outstanding motions[46] are HEREBY DEEMED MOOT.

12. The Clerk of Court is directed to close this case without costs awarded to the moving parties.

**IT IS SO ORDERED.**

DATED this 31 March 2014.

BY THE COURT:

_Dale A. Kimball_
Dale A. Kimball
United States District Judge

---

[40] Docket no. 51.
[41] Docket no. 71.
[42] Docket no. 73.
[43] Docket no. 74.
[44] Docket no. 76.
[45] Docket no. 80.
[46] Docket nos. 19, 20, 21, 42, 102, 103, 107, 109 & 122.